ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
BENNY C. GOODMAN III (211302)
DAVID W. MITCHELL (199706)
BRIAN O'MARA (229737)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
travisd@rgrdlaw.com
bennyg@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILLA ROSENBLOOM, Derivatively on Behalf of ALLERGAN, INC., <br><br>                    Plaintiff, <br><br>   vs. <br><br> DAVID E.I. PYOTT, et al. <br><br>                    Defendants, <br><br>   – and – <br><br> ALLERGAN, INC., a Delaware corporation, <br><br>                    Nominal Defendant. | Case No. SACV10-01352 DOC (MLGx) <br><br> MEMORANDUM OF LAW IN SUPPORT OF POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM AND WESTERN WASHINGTON LABORERS-EMPLOYERS PENSION TRUST'S MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL <br><br> DATE: November 1, 2010 <br> TIME: 8:30 a.m. <br> CTRM: 9D <br> JUDGE: Hon. David O. Carter |

[Caption continued on following page.]

| | | |
|---|---|---|
| DANIEL HIMMEL, Derivatively on Behalf of ALLERGAN, INC., | ) ) | Case No. SACV10-01417-DOC (MLGx) |
| Plaintiff, | ) ) | |
| vs. | ) | |
| DAVID E. I. PYOTT, et al., | ) ) | |
| Defendants, | ) | |
| – and – | ) ) | |
| ALLERGAN, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |
| POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM and WESTERN WASHINGTON LABORERS-EMPLOYERS PENSION TRUST, Derivatively on Behalf of ALLERGAN, INC., | ) ) ) ) ) ) ) | Case No. SACV10-01449 DOC (JEMx) |
| Plaintiffs, | ) | |
| vs. | ) | |
| DAVID E.I. PYOTT, et al., | ) ) | |
| Defendants, | ) | |
| – and – | ) ) | |
| ALLERGAN, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF THE FACTS | 1 |
| III. | ARGUMENT | 4 |
| | A. Consolidation of the Related Allergan Shareholder Actions Is Proper | 4 |
| | B. The Funds Are the Most Adequate Lead Plaintiffs | 5 |
| | C. Robbins Geller Is Uniquely Qualified to Serve as Lead Counsel | 7 |
| IV. | CONCLUSION | 10 |

## I. INTRODUCTION

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Pompano Beach Police & Firefighters' Retirement System ("Pompano Beach") and Western Washington Laborers-Employers Pension Trust ("Western Washington") (collectively, the "Funds") seek to consolidate all pending and subsequently filed related shareholder derivative actions involving nominal defendant Allergan, Inc. ("Allergan" or the "Company") in the Central District of California. The Funds also seek an order appointing them Lead Plaintiff and their counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.

Allergan has been damaged by defendants' wrongful conduct. The Company has been exposed to lengthy investigations that have proven costly, as evidenced by Allergan's payment of over $600 million thus far for illegally promoting certain of its drugs. ¶¶8, 31, 53.[1] Moreover, Allergan continues to face significant liability to both private litigants as well as regulatory agencies in connection with the conduct set forth in the Complaint.

By this Motion, the Funds seek an order: (i) consolidating the related shareholder derivative actions, and any subsequently filed related derivative actions; and (ii) appointing the Funds as Lead Plaintiff and their counsel Robbins Geller as Lead Counsel.

## II. SUMMARY OF THE FACTS

This is a shareholder derivative action on behalf of Allergan against its entire Board of Directors and certain of its top officers for breach of fiduciary duty and corporate waste. By this action, plaintiffs seek to recover damages and obtain other

---

[1] Unless otherwise noted, paragraph references ("¶__" or "¶¶__") are to the Verified Shareholder Derivative Complaint for Violation of the Federal Securities Laws, Breach of Fiduciary Duty, Abuse of Control, Gross Mismanagement and Corporate Waste, filed September 24, 2010 by the Funds, derivatively on behalf of Allergan (Case No. SACV10 01449 DOC (JEMx), Docket No. 1) (the "Complaint").

relief for the Company against defendants for illegally promoting Allergan's flagship product Botox® for uses not approved by the United States Food and Drug Administration ("FDA"). Defendants' actions are responsible for severely damaging Allergan's once-valuable corporate franchise by showing a pattern and practice of violating federal regulations and failing to comply with various FDA rules and regulations.

For the past several years, defendants caused Allergan to market and sell Botox, which was misbranded and lacked adequate directions for its use. Specifically, defendants caused Allergan to market and promote Botox for off-label uses, including treatments for headache, pain, spasticity and juvenile cerebral palsy – none of which had been approved by the FDA. ¶5. Notwithstanding, defendants were aware that their marketing and promotional practices were improper and violated applicable federal law. Indeed, defendants were notified of these improper practices on several occasions:

- On August 22, 2001, defendants received a letter informing them that the FDA had reviewed Allergan's Botox "promotional activities and materials and . . . concluded that they are misleading and lacking in fair balance within the meaning of 21 U.S.C. §352(a) of the Federal Food, Drug, and Cosmetic Act (the Act)." The letter referenced previous FDA objections "to these activities in Review Memoranda dated December 12, 1998 and September 25, 2000, and untitled letters dated November 7, 2000, February 14, 2001, and April 12, 2000." ¶6(a).

- On June 23, 2003, defendants received another FDA Warning Letter informing defendants that several of Allergan's "advertisements are false and/or misleading because they falsely identify [Botox] as a cosmetic treatment, fail to reveal material facts about the product's use, and minimize the risk information presented." The Warning Letter

referenced an earlier letter from the FDA dated September 5, 2002, which objected to Allergan's promotional materials. ¶6(b).

Despite these warnings, defendants continued their illegal and improper off-label sales and marketing practices. And it was only a matter of time until investigative authorities learned of defendants' ongoing scheme. It started with several "whistleblowers" filing *qui tam* actions:

- *United States ex rel. Lang v. Allergan, Inc.*, Case No. 07-cv-1288 (N.D. Ga., filed June 5, 2007), alleging violations of the False Claims Act, 31 U.S.C. §§3729-3733, and the federal Anti-Kickback Statute, 42 U.S.C. §1320a-7b. ¶52.

- *United States ex rel. Beilfuss v. Allergan, Inc.*, Case No. 08-cv-10305 (D. Mass., filed Feb. 22, 2008), alleging violations of the False Claims Act, 31 U.S.C. §3729 *et seq*. *Id*.

- *United States ex rel. Hallivis v. Allergan, Inc.*, Case No. 09-cv-2817 (D. Md., filed Oct. 26, 2009), alleging violations of the False Claims Act, 31 U.S.C. §§3729-3733. *Id*.

The U.S. Department of Justice ("DOJ") soon intervened in these actions, and on September 1, 2010, the DOJ filed a criminal information against Allergan in the United States District Court for the Northern District of Georgia. ¶8; *U.S.A. v. Allergan, Inc*., Case No. 10-CR-375 (N.D. Ga., filed Sept. 1, 2010). The DOJ accused the Company of violating federal false claims and anti-kickback laws, among others. To resolve these criminal and civil complaints, and as a result of defendants' misconduct, Allergan agreed to plead guilty and pay a fine of $600 million. ¶¶8, 53.

As a result of the foregoing, defendants violated the federal securities laws and breached their fiduciary duties of loyalty and good faith owed to Allergan and its shareholders. Allergan has expended, and will continue to expend, significant sums of

money reacting to defendants' illegal conduct and these actions have irreparably damaged Allergan's corporate image and goodwill.  By this action, plaintiffs seek to compensate Allergan for the harm caused to it by the conduct of the individuals responsible for the corporation's conduct – the directors and senior management – and to impose appropriate responsibility upon those individuals.

## III. ARGUMENT

### A. Consolidation of the Related Allergan Shareholder Actions Is Proper

Presently pending in this District are three related shareholder derivative actions (the "Related Actions"):

| Case Name | Case No. | Date Filed |
|---|---|---|
| *Rosenbloom v. Pyott, et al.* | SACV10-01352-DOC (MLGx) | 9/9/10 |
| *Himmel v. Pyott, et al.* | SACV10-01417 DOC (MLGx) | 9/17/10 |
| *Pompano Beach Police & Firefighters' Ret. Sys., et al. v. Pyott, et al.* | SACV10-01449 DOC (JEMx) | 9/24/10 |

Each of these actions currently pending in this District involves common questions of law and fact.  The off-label sales and marketing of Botox and the false and misleading proxy statements give rise to the state and federal violations of law.  Each of the Related Actions sets forth (albeit in varying degrees) these allegations.  Therefore, the Funds respectfully submit that the Related Actions should be consolidated for all purposes under Fed. R. Civ. P. 42(a).

The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Rule 42(a) provides:

Consolidation; Separate Trials

(a) Consolidation.  If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or

all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

A court has discretion to consolidate related cases which involve common questions of fact and law under Rule 42(a) "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

Consolidation of similar shareholder actions, in particular, can help alleviate "needless duplication of time, effort and expense on the part of the parties and the Court." *Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *6 (N.D. Ga. Oct. 1, 2004). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions).

**B.     The Funds Are the Most Adequate Lead Plaintiffs**

Courts have consistently held that the decision of which plaintiffs should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiffs will best serve the interests of the shareholder base as a whole. *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000). Courts have used the following objective criteria to determine who should control a shareholder derivative litigation:

- "First, this Court should consider the quality of the pleading[s] . . . ." *Id.*
- "Second, the Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit. This

factor, of course, is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation. Delaware courts have not formally adopted the federal model, and I am not suggesting that it should be mechanically applied in every case. But it seems appropriate, at least, to give recognition to large shareholders . . . who are willing to litigate vigorously on behalf of an entire class of shareholders . . . ." *Id.*

- "Finally, the Court should accord some weight in the analysis to whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants." *Id.* at *10-*11.

Application of these factors to this case strongly supports the appointment of the Funds as Lead Plaintiff in this action.

The Funds filed their action on behalf of Allergan seeking redress for the harm done to the Company by defendants' illegal conduct, doing so through its counsel's well-researched and comprehensive Complaint. The Complaint is 39 pages, consists of 121 paragraphs, and alleges six counts of violations of state and federal law. *See generally* Complaint. A reading of the Complaint makes clear that the Funds have filed pleadings of great "quality." *See TCW*, 2000 Del. Ch. LEXIS 147, at *10.

Additionally, the Funds are long-term shareholders with significant holdings, having held Allergan stock since 2003. *See* ¶10. The Court "should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit," *TCW*, 2000 Del. Ch. LEXIS 147, at *10, and suitable standing. The *TCW* court noted that this factor "is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation." *Id.*; *In re Guidant Corp. S'holders Derivative*

*Litig.*, No. 1:03-CV-00955-SEB-WTL, 2003 U.S. Dist. LEXIS 19880 (D.N.J. Nov. 5, 2003); *Horn*, 227 F.R.D. 1; *see also* Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (presumption that the most adequate plaintiff is the one with the "largest financial interest in the relief sought by the class").[2]

Accordingly, the Funds, as engaged long-term Allergan shareholders with large financial interests in the outcome of this litigation, should be appointed as Lead Plaintiff. This will not only ensure adequate supervision during all stages of this litigation, but also is a strategy designed to enhance the value of Allergan over the long term.

### C. Robbins Geller Is Uniquely Qualified to Serve as Lead Counsel

The Funds request that Robbins Geller be named Lead Counsel in this action. Put simply, Robbins Geller is the largest, most successful class action firm in the nation. Headquartered in Southern California, it is a national law firm of over 180 lawyers with extensive experience litigating complex shareholder derivative actions on behalf of injured companies.[3] The firm has been appointed as lead counsel in several landmark shareholder actions. Indeed, Robbins Geller's qualifications are

---

[2] Although this action is not a private securities class action, the rationale behind this provision of the PSLRA applies with equal force in shareholder derivative actions. As in class actions, investors with large financial stakes will have a strong incentive to: (a) participate in the derivative litigation; (b) adequately represent the interests of the corporation in seeking release against its wayward fiduciaries; (c) ensure vigorous prosecution of the action; and (d) exercise control over the selection and actions of plaintiffs' counsel. *See* Statement of Managers of the Reform Act, House Conference Report No. 104-369, 104th Cong. 1st Sess., at 34 (1995); Senate Report on Reform Act, Senate Report No. 104-98, 104th Cong. 1st Sess., at 11 (1995).

[3] *See* Declaration of Brian O. O'Mara in Support of Pompano Beach Police & Firefighters' Retirement System and Western Washington Laborers-Employers Pension Trust's Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel ("O'Mara Decl."), Ex. A (Robbins Geller's firm résumé) and firm's website at http://www.rgrdlaw.com.

superior, and its depth of resources is unmatched, as courts have noted. *See, e.g.*, *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006) (the matter settled for over $7 billion and the court stated that the firm is "comprised of probably the most prominent securities class action attorneys in the country"); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *36 (C.D. Cal. May 2, 2006) (noting that Robbins Geller attorneys have "extensive experience litigating [shareholder] actions . . . [and that] [t]here is no real dispute among the movants regarding [the firm's] qualifications to prosecute this action"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio. 2005) (finding that Robbins Geller attorneys "will represent deftly the class's interests"); *see also Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *16 (D.N.J. Nov. 16, 2000) ("This firm has experience in prosecuting complex securities actions, has been appointed lead counsel in numerous consolidated litigations, and is qualified to represent the Local 144 Group in the instant action.").[4]

In *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.), Robbins Geller represented the California Public Employees' Retirement System ("CalPERS"), the nation's largest pension fund, and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. There, despite these numerous legal hurdles, Robbins Geller obtained an $895 million recovery on behalf of UnitedHealth's shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. Mr. McGuire paid $30 million and returned stock options representing more than three million

---

[4]   *See also In re Versata, Inc.*, No. C 01-1439 (SI), 2001 U.S. Dist. LEXIS 24270, at *25 (N.D. Cal. Aug. 20, 2001) (Robbins Geller chosen based on its strong national reputation in handling large and complex securities class actions).

1  shares to the shareholders. The total recovery for the class was over $925 million, the
2  largest stock option backdating recovery ever. Moreover, in *UnitedHealth* Robbins
3  Geller obtained unprecedented corporate governance reforms, including election of a
4  shareholder-nominated member to the company's board of directors, a mandatory
5  holding period for shares acquired by executives via option exercise, and executive
6  compensation reforms which tie pay to performance.

7  In derivative actions, Robbins Geller has represented injured companies with
8  near unmatched success. For example, in addition to substantial corporate governance
9  reforms, the firm obtained $43 million for the company in *In re KLA-Tencor Corp.*
10 *S'holder Derivative Litig.*, No. C-06-03445 (N.D. Cal.); $55 million in *In re Marvell*
11 *Technology Group Ltd. Derivative Litig.*, No. C-06-03894 (N.D. Cal.); $31 million in
12 *In re KB Home S'holder Derivative Litig.*, No. 06-CV-05148 (C.D. Cal.); and
13 $30 million in *In re Affiliated Computer Servs. Derivative Litig.*, No. 06-CV-1110
14 (N.D. Tex.).

15 In *Royal Dutch Shell S'holder Litig.*, No. 04-CV-3603 (D.N.J.), Robbins Geller
16 attorneys successfully prosecuted and settled a shareholder derivative action on behalf
17 of the London-based Royal Dutch Shell plc ("Shell"), achieving valuable transatlantic
18 corporate governance reforms in light of misconduct by executives and board
19 members. To settle the derivative litigation, the complicit executives agreed to
20 improved governance standards, such as shareholder participation in the nomination of
21 board members. Other important governance changes were made regarding
22 solicitation of shareholder input on supervisory board nominees going forward, making
23 Shell corporate directors more accountable to shareholders in the governing process
24 and producing highly qualified candidates for election to the Shell board. In addition,
25 Shell agreed to a significant strengthening of the company's board independence
26 standards and a requirement that a majority of its board members qualify as
27 independent under those rigorous standards. The company also agreed to implement
28

enhanced director stock ownership standards and adopted a requirement that Shell's officers or directors hold stock options for two years before exercising them.

Robbins Geller lawyers also prosecuted a shareholder derivative action on behalf of Sprint Corporation which resulted in governance changes that were heralded by corporate governance expert Robert Monks, the founder of LENS Governance Advisors: "'There has never been an occasion in American corporate history when a company has agreed to so many groundbreaking corporate governance reforms in one fell swoop.'" *See Sprint Settlement Includes Groundbreaking Changes for Independent Directors*, 19 Andrews Corp. Officers & Directors Liab. Litig. Rep. 7 (Apr. 7, 2003) (O'Mara Decl., Ex. B). Mr. Monks further opined that the reforms enacted in the Sprint action "'should serve as a model for other corporations who want to reinstate investor confidence.'" *Id*.

## IV.   CONCLUSION

For all of the above reasons, the Funds respectfully request that their motion be granted. The Related Actions should be consolidated and the Funds and their chosen counsel Robbins Geller should be appointed Lead Plaintiff and Lead Counsel, respectively.

DATED:  September 29, 2010              Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        DARREN J. ROBBINS
                                        TRAVIS E. DOWNS III
                                        BENNY C. GOODMAN III
                                        DAVID W. MITCHELL
                                        BRIAN O. O'MARA


                                             s/ BRIAN O. O'MARA
                                            BRIAN O. O'MARA

|    |                                           |
|----|-------------------------------------------|
| 1  |                                           |
| 2  | 655 West Broadway, Suite 1900             |
|    | San Diego, CA  92101                      |
| 3  | Telephone:  619/231-1058                  |
|    | 619/231-7423 (fax)                        |
| 4  | [Proposed] Lead Counsel for Plaintiffs    |
| 5  | SUGARMAN & SUSSKIND                       |
|    | ROBERT SUGARMAN                           |
| 6  | PEDRO A. HERRERA                          |
|    | 100 Miracle Mile, Suite 300               |
| 7  | Coral Gables, FL  33134                   |
|    | Telephone:  305/529-2801                  |
| 8  | 305/447-8115 (fax)                        |
| 9  | Attorneys for Plaintiff                   |

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice Lists.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 29, 2010.

     s/ BRIAN O. O'MARA
BRIAN O. O'MARA

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: bomara@rgrdlaw.com

# Mailing Information for a Case 8:10-cv-01352-DOC -MLG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rusty E. Glenn**
  rusty@shumanlawfirm.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com

- **Kip B Shuman**
  kip@shumanlawfirm.com

- **Robert B Weiser**
  rw@weiserlawfirm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeffrey J. Ciarlanto
The Weiser Law Firm  PC
121 North Wayne Ave  Suite 100
Wayne, PA 19087

Debra S Goodman
Law Office of Debra S Goodman PC
1301 Skippack Pike  Suite 7A - 133
Blue Bell, PA 19422

Brett Steckler
The Weiser Law Firm PC
121 North Wayne Avenue
Suite 100
Wayne, PA 19087
```

# Mailing Information for a Case 8:10-cv-01417-DOC -MLG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arshan Amiri**
  aamiri@ruflaw.com

- **Felipe J Arroyo**
  farroyo@robbinsumeda.com,notice@robbinsumeda.com,mozaki@robbinsumeda.com

- **Brian J Robbins**
  notice@robbinsumeda.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
William C Wright
Leopold Kuvin P A
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
```

# Mailing Information for a Case 8:10-cv-01449-DOC -JEM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Travis E Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Benny C Goodman , III**
  bgoodman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian Oliver O'Mara**
  bomara@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Pedro A Herrera
Sugarman and Susskind
100 Miracle Mile Suite 300
Coral Gables, FL 33134

Robert Sugarman
Sugarman and Susskind
100 Miracle Mile Suite 300
Coral Gables, FL 33031
```

ALLERGAN DERIVATIVE SERVICE LIST
**Counsel for Plaintiffs**

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
PEDRO A. HERRERA
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Telephone:  305/529-2801
305/447-8115 (fax)

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT STECKER
JEFFREY CIARLANTO
121 North Wayne Avenue, Suite 100
Wayne, PA  19087
Telephone: 610/225-2616
619/225-2678 (fax)

LAW OFFICE OF DEBRA S. GOODMAN P.C.
DEBRA S. GOODMAN
1301 Skippack Pike
Suite 7A #133
Blue Bell, PA  19422
Telephone: 610/277-6057
484/231-1922 (fax)

LEOPOLD KUVIN, P.A.
WILLIAM C. WRIGHT
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
Telephone: 561/514-1400
561/514-1401 (fax)

THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
858-794-1450 (fax)

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY GLENN
885 Arapahoe Avenue
Boulder, CO  80302
Telephone: 303/861-3003
303/484-4886 (fax)

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
ARSHAN AMIRI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

ALLERGAN DERIVATIVE SERVICE LIST

**Counsel for Defendants**
GIBSON DUNN &CRUTCHER
JEFFREY H. REEVES
KRISTOPHER P. DIULIO
WAYNE W. SMITH
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949/451-3816
949/475-4658 (fax)

John C. Hueston
Glenn K. Vanzura
Lillie A. Werner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Telephone:  310/277-1010
310/203-7199 (fax)