THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 794-1441
Facsimile: (858) 794-1450
kah@weiserlawfirm.com

Attorneys for Plaintiff Willa Rosenbloom
and Proposed Lead Counsel

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILLA ROSENBLOOM, Derivatively on Behalf of ALLERGAN, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAVID PYOTT, HERBERT W. BOYWER, LOUIS J. LAVINGNE, JR., GAVIN S. HERBERT, STEPHEN J. RYAN, M.D., LEONARD D. SCHAEFFER, MICHAEL R. GALLAGHER, ROBERT A. INGRAM, TREVOR M. JONES, PH.D., DAWN E. HUDSON, RUSSELL T. RAY, and DEBORAH DUNSIRE, M.D., <br><br> Defendants, <br><br> – and – <br><br> ALLERGAN, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. SACV10-01352 DOC(MLGx) <br><br> PLAINTIFF ROSENBLOOM'S OPPOSITION TO MOTION BY POMPANO BEACH & FIREFIGHTERS' RETIREMENT SYSTEM AND WESTERN WASHINGTON LABORERS-EMPLOYEE PENSION TRUST ("FUNDS") FOR APPOINTMENT OF THE FUNDS AS LEAD PLAINTIFFS AND FOR THE APPOINTMENT OF ROBBINS GELLER RUDMAN & DOWD LLP AS LEAD COUNSEL; PLAINTIFF ROSENBLOOM'S STATEMENT OF NON-OPPOSITION TO CONSOLIDATION OF ACTIONS <br><br> DATE:   November 1, 2010 <br> TIME:   8:30 a.m. <br> CTRM:   9D <br><br> JUDGE: Hon. David O. Carter <br><br> DATE ACTION FILED: 9/9/10 |

| | |
|---|---|
| DANIEL HIMMEL, Derivatively on Behalf of ALLERGAN, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAVID E.I. PYOTT, HERBERT W. BOYWER, GAVIN S. HERBERT, LEONARD D. SCHAEFFER, MICHAEL R. GALLAGHER, STEPHEN J. RYAN, RUSSELL T. RAY, TREVOR M. JONES, ROBERT A. INGRAM, LOUIS J. LAVINGNE, JR., DEBORAH DUNSIRE, DAWN E. HUDSON, HANDEL E. EVANS, RONALD M. CRESSWELL, LOUIS T. ROSSO, KAREN R. OSAR, and ANTHONY H. WILD, <br><br> Defendants, <br><br> – and – <br><br> ALLERGAN, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. SACV10-01417 DOC (MLGx) <br><br><br><br><br><br><br><br> JUDGE: Hon. David O. Carter <br><br> DATE ACTION FILED: 9/17/10 |

| | | |
|---|---|---|
| 1 | POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM and WESTERN WASHINGTON LABORERS-EMPLOYERS PENSION TRUST, derivatively on behalf of ALLERGAN, INC., | Case No. SACV10-01449-DOC (MLGx) |
| | Plaintiffs, | |
| | vs. | JUDGE: Hon. David O. Carter |
| | DAVID PYOTT, DEBORAH DUNSIRE, LEONARD D. SCHAEFFER, RUSSELL T. RAY, HERBERT W. BOYWER, ROBERT A. INGRAM, TREVOR M. JONES, DAWN E. HUDSON, GAVIN S. HERBERT, LOUIS J. LAVINGNE, JR., MICHALE R. GALLAGHER, STEPHEN J. RYAN, | DATE ACTION FILED: 9/24/10 |
| | Defendants, | |
| | – and – | |
| | ALLERGAN, INC., a Delaware corporation, | |
| | Nominal Defendant. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 4

    A. There Is Doubt That the Funds and Himmel Can Fairly and Adequately Represent the Interests of Allergan and Its Stockholders as Lead Plaintiffs .............................................................. 4

    B. The Funds and Himmel Lack Requisite Standing ............................... 5

    C. The Funds' Status as Institutional Investors Is Irrelevant .................... 8

III. THE WEISER FIRM SHOULD BE APPOINTED LEAD COUNSEL ........ 9

IV. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................................................11

*Bacas v. Way*,
    Civil Action No. 4:07-CV-00456 (S.D. Tex.) ................................................................3, 12

*Barry v. Cotsakos*
    No. CIV419084 (Cal. Super. Ct., San Mateo County) ...........................................................11

*Bensen v. American Ultramar Ltd.*,
    No. 92 CIV 4420 (KMW), 1996 WL 48601 (S.D.N.Y. Feb. 6, 1996) ......................................5

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949) ...............................................................5

*Conrad v. Blank*,
    940 A.2d 28 (Del. Ch. 2007) ..........................................................................................7

*David v. Wolfen, et al.*,
    No. 01-CC-03930 (Cal. Super. Ct., Orange County) ............................................................10

*Gebhardt v. Allumbaugh, et al.*,
    No. 2002-13602 (Tex. Dist. Ct., Harris County) ....................................................................10

*Gregory v. Tuchman, et al.*,
    C.A. No. 3925-CC (Del. Ch. ) ........................................................................................11

*Gunther v. Tomasetta*,
    Case No. 2:06-cv-02529-R(CTx) (C.D. Cal.) ..................................................................3, 12

*In re Affiliated Computer Services Derivative Litig.*,
    Case No. 3:06-cv-1110-O (N.D. Tex.) ..................................................................................3

*In re Asyst Technologies, Inc. Derivative Litig.*,
    No. C-06-04669 EDL, 2008 WL 2169021 (N.D. Cal. May 23, 2008) .....................................5

*In re Bank of New York Derivative Litig.*,
    320 F.2d 291 (3d Cir. 2003) ..........................................................................................4

*In re Blue Coat Systems, Inc. Derivative Litigation*,
    Master File No. C-06-4809-JF (RS) (N.D. Cal.) ..................................................................3

*In re Cardinal Health Derivative Litigation*,
    No. 02-CVG-11-639 (Ohio Ct. C.P.-Del. County Dec. 17, 2007) ..........................................9

*In re Dell Derivative Litig.*, Cause
  No. 07-691-C26 (Williamson County, TX) ..........................................................................3, 12

*In re Family Dollar, Inc., Shareholder Derivative Litigation*,
  06-CV-00510(W) (W.D.N.C.) ...............................................................................................11

*In re Home Depot Inc.*, *Derivative Litigation*,
  07-CV-0356-RLV (N.D. Ga.) .................................................................................................11

*In re KB Home S'Holder Derivative Litig.*
  ,Case No. 2:06-cv-05148-FMC-CTx (C.D. Cal.) ...............................................................3, 12

*In re KB Home Shareholder Derivative Litigation*,
  CV-06-05148-FMC(CTx) (C.D. Cal.) ...................................................................................11

*In re Maxim Integrated Products Inc.*, *Derivative Litig.*,
  No. C06-334JW, 2007 WL 2745805 (N.D. Cal. Jul. 25, 2007) ................................................5

*In re Oracle Corp. Derivative Litig.*,
  824 A.2d 917 (Del. Ch. 2003) ............................................................................................8, 10

*In re Sagent Tech., Inc. Derivative Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ....................................................................................5

*In re Seeburg-Commonwealth United Litig.*,
  No. 69 Civ. 5736, 1975 WL 350 (S.D.N.Y. Jan. 24, 1975) ......................................................5

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ....................................................................................5

*Karstedt v. Isenberg*,
  Case No. 4:07-cv-00509 (S.D. Tex.) ................................................................................3, 12

*Klotz v. Parfet, et al.*
  ("*CMS Energy*"), No. 03-06483-CK (Mich. Cir. Ct., Jackson County) ................................10

*Lewis v. Curtis*,
  671 F.2d 779 (3d Cir. 1982) ......................................................................................................8

*Marshall v. Spang & Co.*,
  321 F. Supp. 1310 (W.D. Pa. 1971) ..........................................................................................8

*Ryan v. Gifford*,
  918 A.2d 341 (Del. Ch. 2007) ...................................................................................................7

*Sanders v. Wang*,
  No. 16640, 2001 WL 1131353 (Del. Ch. Sept. 18, 2001) ........................................................8

*Schneider v. Austin*,
  94 F.R.D. 44 (S.D.N.Y. 1982) ..................................................................................9

*Subin v. Goldsmith*,
  224 F.2d 753 (2d Cir. 1955)......................................................................................8

*Taylor v. Holliman*,
  Cause No. 09SL-CC01848 ..................................................................................3, 12

*Travis v. Mittelstaedt*,
  No. CV06-2341 LEW GGH, 2008 WL 755842 (E.D. Cal. Mar. 19, 2008) ..............5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78n(a) .......................................................................................................................2

Federal Rules of Civil Procedure
  Rule 23.1 .......................................................................................................2, 4, 5, 9
  Rule 23.1(a).................................................................................................................4
  Rule 23.1(b)(1)............................................................................................................4

**SECONDARY AUTHORITIES**

Bruce Meyerson, *Shareholder Suits Means More Money For Lawyers, But Bring Governance Gains* ........................................................................................................10

Suzanne Craig, *How One Firm Uses Strict Governacne To Fix Its Troubles*, Aug. 21, 2003 Wall St. J.................................................................................................................11

## I. INTRODUCTION

Plaintiff Willa Rosenbloom ("Rosenbloom"), by and through her undersigned attorneys, hereby respectfully submits this memorandum of law in response to Pompano Beach Police & Firefighters' Retirement System's and Western Washington Laborers-Employers Pension Trust's (collectively the "Funds") Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel (the "Funds' Motion").[1]  Rosenbloom does not oppose the Funds' Motion to the extent it seeks the consolidation of the above-captioned shareholder derivative actions (the "Actions") filed on behalf of Allergan, Inc. ("Allergan" or the "Company"), but *opposes* that portion of the Funds' Motion seeking to appoint the Funds as Lead Plaintiffs and the Funds' counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.[2]

As detailed herein, the Actions seek to recover derivatively on behalf of Allergan for breaches of fiduciary duty and other misconduct by the Defendants[3]

---

[1] On October 9, 2010, Plaintiff Daniel Himmel ("Himmel") filed a brief supporting consolidation and the appointment of Himmel's counsel, Robbins Umeda LLP ("Robbins Umeda") as Co-Lead Counsel with Robbins Geller. *See* Memorandum of Law in Support of Daniel Himmel's Response to Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel of Pompano Beach & Firefighters' Retirement System And Western Washington Laborers-Employee Pension Trust ("Himmel Brief"). The Himmel Brief reveals for the first time that Himmel has only owned Allergan stock since 2004. *See* Himmel Brief, n.2. As detailed herein, both Himmel's and the Funds' legal "standing" to assert the claims asserted on behalf of Allergan in the Actions is insufficient.

[2] Where as here, there are only three actions involved, the appointment of a lead plaintiff is not necessary. Indeed, The Weiser Law Firm, P.C. ("The Weiser Firm") remains committed to working jointly with plaintiffs' counsel in the other two actions, but due to the Funds' counsel's unwillingness to work together equally, Rosenbloom determined that it was necessary to oppose the Funds' Motion in light of the fact that she is the only plaintiff with the required standing to prosecute ***all claims*** brought derivatively on behalf of Allergan.

[3] As used herein, "Defendants" includes David E.I. Pyott, Louis J. Lavigne, Jr., Herbert W. Boyer, Deborah Dunsire, Michael H. Gallagher, Gavin S. Herbert, Dawn E. Hudson, Robert A. Ingram, Trevor M. Jones, Russell T. Ray, Stephen J. Ryan, Handel E. Evans, Ronald M. Cresswell, Louis T. Rosso, Karen R. Osar, Anthony H. Wild and Leonard D. Schaeffer.

dating back to at least 2000. Not only does Rosenbloom define the "Relevant Period" for Defendants' misconduct as 2000 to present (*see* Rosenbloom Complaint[4] at 1), but even the Funds allege that "for the last ten years, defendants caused Allergan to market and sell Botox, which was misbranded and lacked adequate directions for its use." *See* Funds Complaint, at ¶5.[5]

Rosenbloom is the ***only*** plaintiff in the Actions with unassailable standing to prosecute all of the derivative claims asserted in the Actions because she has continuously held Allergan stock since 1989. *See* Rosenbloom Complaint, at ¶8. In contrast, the Funds have only held Allergan common stock since September 2003 and the only other plaintiff, Daniel Himmel, reportedly has held Allergan stock since only 2004. Accordingly, Rosenbloom is best suited to serve as Lead Plaintiff and her choice of counsel, The Weiser Firm, a highly respected firm that specializes in stockholder derivative litigation, is well-suited to serve as Lead Counsel.[6] Accordingly, while the Funds seemingly tout their self-professed "institutional investor" status and claim that they are "long-term shareholders," there is serious doubt as to whether they can "fairly and adequately" serve as Lead Plaintiffs in the Actions under Fed. R. Civ. P. 23.1 given their lack of adequate standing. Because the misconduct at issue commenced as early as 2000, and the Funds did not hold Allergan stock prior to September 2003, the Funds clearly suffer from potential deficiencies regarding their standing to assert the claims alleged on behalf of Allergan in the

---

[4] "Rosenbloom Complaint" refers to the Verified Shareholder Derivative Complaint for Violations of Section 14(a) Of The Exchange Act, Breach Of Fiduciary Duty, And Unjust Enrichment filed on September 9, 2010 by Rosenbloom.

[5] "Funds Complaint" refers to the Verified Shareholder Derivative Complaint For Violation of the Federal Securities Laws, Breach of Fiduciary Duty, Abuse of Control. Gross Mismanagement and Corporate Waste filed September 24, 2010 by the Funds.

[6] The Weiser Firm Resume is attached as Exhibit A to the Declaration of Kathleen A. Herkenhoff filed in support of this Opposition ("Herkenhoff Decl.").

2

Actions. Rosenbloom, meanwhile, has held Allergan stock since 1989 and has no such potential infirmity.[7]

Moreover, Rosenbloom's choice for Lead Counsel, The Weiser Firm, has an impeccable track record of prosecuting cases similar to the instant Actions, as detailed herein. Indeed, in the Funds' Motion, the Funds did not challenge The Weiser Firm's adequacy to lead the Actions, nor could they.[8] As The Weiser Firm has vigorously prosecuted the first-filed of the Actions and is clearly well-qualified to lead the Actions upon consolidation, the Funds' Motion should be denied, Rosenbloom should be appointed Lead Plaintiff, and The Weiser Firm should be appointed Lead Counsel.

---

[7] Indeed, it is Rosenbloom who first filed derivative claims on behalf of Allergan in this Court. As detailed in the Funds' Motion, the Funds filed their Complaint on September 24, 2010, more than two weeks after Rosenbloom initiated suit. Similarly, Himmel filed on September 17, 2010, more than a week after Rosenbloom filed her action. *See* Verified Shareholder Derivative Complaint For Violations Of Federal Securities Laws, Breach Of Fiduciary Duty, Waste Of Corporate Assets, And Unjust Enrichment filed by Himmel on September 17, 2010 ("Himmel Complaint").

[8] In fact, The Weiser Firm (and/or its principals) has successfully prosecuted several derivative actions with both the Funds' and Himmel's counsel. *See* Herkenhoff Decl, at ¶3 (citing *In re Affiliated Computer Services Derivative Litig.*, Case No. 3:06-cv-1110-O (N.D. Tex.) ("*ACS*"); *Bacas v. Way,* Civil Action No. 4:07-CV-00456 (S.D. Tex.) ("*HCC*"); *In re Dell Derivative Litig.*, Cause No. 07-691-C26 (Williamson County, TX)("*Dell*"); *Taylor v. Holliman,* Cause No. 09SL-CC01848 (Circuit Court for St. Louis County, MO) ("*Furniture Brands*"); *In re KB Home S'Holder Derivative Litig.*, Case No. 2:06-cv-05148-FMC-CTx (C.D. Cal.) ("*KB Home*"); *Karstedt v. Isenberg,* Case No. 4:07-cv-00509 (S.D. Tex.) ("*Nabors*"); and *Gunther v. Tomasetta,* Case No. 2:06-cv-02529-R(CTx) (C.D. Cal.) ("*Vitesse*")). Indeed, presently pending for preliminary approval in the Northern District of California is an excellent derivative settlement in the action entitled, *In re Blue Coat Systems, Inc. Derivative Litigation*, Master File No. C-06-4809-JF (RS) (N.D. Cal.) ("*Blue Coat*"), which action was litigated by The Weiser Firm and Robbins Umeda as Co-Lead Counsel. *See* Herkenhoff Decl., Ex. B (Stipulation of Settlement). The proposed *Blue Coat* settlement also resolves certain derivative claims commenced in the Superior Court of California for the County of Santa Clara by plaintiffs represented by Robbins Geller. *See id.* Similarly, The Weiser Law Firm and Robbins Umeda also were involved in the global settlement of state and federal derivative litigation on behalf of Sequenom, Inc. *See* Herkenhoff Decl, at Exs. C&D.

3

## II. ARGUMENT

### A. There Is Doubt That the Funds and Himmel Can Fairly and Adequately Represent the Interests of Allergan and Its Stockholders as Lead Plaintiffs

Pursuant to Fed. R. Civ. P. 23.1, a derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). Any derivative complaint filed must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1(b)(1). This second concept is generally referred to as "standing." *See In re Bank of New York Derivative Litig.*, 320 F.2d 291, 297 (3d Cir. 2003) ("Federal Rule of Civil Procedure 23.1, entitled 'Derivative Actions by Shareholder,' states that a plaintiff does not have standing to bring a derivative suit unless 'the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains.'"). Thus, any prospective derivative plaintiff must meet these two criteria (at minimum) in order to "maintain" a derivative suit under Fed. R. Civ. P. 23.1.

As the Funds concede (*see* Funds' Motion at 7 n.2), there is no specific statutory framework for the appointment of a lead plaintiff and lead counsel in shareholder derivative actions.[9] *See also* Himmel Brief at 5. A stockholder who leads

---

[9] In the absence of a statutory framework, the Funds' Motion, in part, is based upon the page length, the number of paragraphs, and the number of counts in the Funds' Complaint. *See* Funds' Motion at 6. In claiming that the Funds have filed a pleading "of great quality," the Funds are plainly trying to imply that by filing a 39 page, 121 paragraph, 6 count complaint, that it is somehow a pleading of "greater quality" than Rosenbloom's 26 page, 96 paragraph, 5 count complaint. First, this "argument" is a red herring because the Funds' Motion never explains how their Complaint's allegedly superior level of detail expands the scope of the claims, or the nature of the relief sought. Second, it is hardly surprising that the Funds were able to cosmetically heighten the level of detail in their pleading, having had the benefit of the Rosenbloom Complaint for more than two weeks before they filed.

a shareholder derivative suit (perhaps because of the statutory requirement that a stockholder must "fairly and adequately" represent the corporation's interests) occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S. Ct. 1221, 1227, 93 L.Ed. 1528 (1949); *see also In re Seeburg-Commonwealth United Litig.*, No. 69 Civ. 5736, 1975 WL 350, *4-*5 (S.D.N.Y. Jan. 24, 1975). For the reasons stated herein, there is doubt as to whether the Funds can "fairly and adequately" represent the interests of Allergan and its stockholders because of unique defenses to which they are subject.

### B. The Funds and Himmel Lack Requisite Standing

It is well-settled that in order to maintain a shareholder derivative suit, a plaintiff must allege that "the plaintiff was a shareholder at the time of the transaction which the plaintiff's lawsuit challenges." *Bensen v. American Ultramar Ltd.*, No. 92 CIV 4420 (KMW), 1996 WL 48601, at *5 (S.D.N.Y. Feb. 6, 1996). Further, a plaintiff must allege that he has continuously held the stock from the time of purchase up through the present date. *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007). Conclusory allegations in this regard are insufficient under Fed. R. Civ. P. 23.1. Rather, a complaint must indicate "when Plaintiffs bought stock." *In re Maxim Integrated Products Inc., Derivative Litig.*, No. C06-334JW, 2007 WL 2745805, at *3 (N.D. Cal. Jul. 25, 2007) (citing *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003)).[10]

---

[10] *See also In re Asyst Technologies, Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 2169021, at *1 (N.D. Cal. May 23, 2008), *citing Verisign*, 531 F. Supp. 2d at 1173, (holding that the plaintiffs failed to adequately allege standing by continuous stock ownership where the complaint alleged only that the plaintiffs "have owned Verisign stock during the relevant period...and continue to own the Company's common stock," and stating that the plaintiffs must "unambiguously indicate…the dates they purchased Verisign stock, and whether they have continuously owned Verisign stock from the time of purchase up to the present."); *Travis v. Mittelstaedt*,

5

Despite the requirement of a verified complaint detailing the standing of the derivative plaintiff, Himmel fails to allege when he first acquired Allergan stock. *See* Himmel Complaint, at ¶12. Rather, Himmel only belatedly asserts in a footnote in the Himmel Brief that he has been a shareholder of Allergan since 2004. *See* Himmel Brief at 6 n 2. Moreover, while the Funds allege when they acquired Allergan stock (September 2003 and 2004), the Funds are careful to avoid defining a "relevant period" for their action, despite acknowledging that defendants' conduct has been ongoing for 10 years (*i.e.*, back to 2000), and that in 2001, the Company received a letter concerning ongoing violations of the Federal Food, Drug and Cosmetic Act ("FDCA") (including issues dating back to 1998). *See* Funds Complaint, at ¶¶5, 6.

Indeed, at paragraph 8 of the Funds Complaint, the Funds cite to one of the pivotal factual underpinnings of **each** of the Actions: the September 1, 2010 Information filed against Allergan by the U.S. Department of Justice ("DOJ") in the United States District Court for the Northern District of Georgia (the "Criminal Action"). *See* Funds Complaint, at ¶8. *See also* Rosenbloom Complaint, at ¶4; Himmel Complaint, at ¶2. On October 4, 2010, Allergan filed the Memorandum Of Defendant Allergan, Inc. In Support Of Recommended Sentence ("Allergan Criminal Memorandum") in the Criminal Action, wherein Allergan admits to violations of the FDCA with regard to conduct involving off-label marketing of Botox during the period from 2000 through 2005. *See* Herkenhoff Decl., Ex. E (excerpts of the Allergan Criminal Memorandum) at 6. Allergan takes issue, however, with contentions by the DOJ that off-label marketing occurred after the "2000-2005 timeframe." *See* Herkenhoff Decl, Ex. E at 14. Therefore, it is abundantly clear that

---

No. CV06-2341 LEW GGH, 2008 WL 755842 (E.D. Cal. Mar. 19, 2008) ("Delaware law precludes Plaintiffs from bringing a shareholder derivative complaint without specific pleadings regarding when they purchased WCI stock and how long they have held it."). Allergan is a Delaware corporation. *See* Rosenbloom Complaint at ¶9; Funds Complaint at ¶11.

6

for much of the conduct at issue in the Actions, Allergan and Defendants will strongly assert that the Funds and Himmel have no standing. Rosenbloom does not face such attacks, and therefore Rosenbloom is the only logical choice for Lead Plaintiff in the Actions.

Moreover, the Funds' and Himmel's vague allegations and failure to clearly seek to define the "relevant period" of misconduct are in direct contrast to Rosenbloom's Complaint, which specifically defines the Relevant Period of alleged wrongdoing as being from 2000 to the present. With a full understanding and appreciation of the pivotal factual allegations in the Actions, the reason for the failure by the Funds and Himmel to be forthcoming with the Court as to the "Relevant Period" is obvious: their standing is faulty and they simply do not wish to paint a bulls' eye target on the problem. In contrast, Rosenbloom is ready to vigorously and fully prosecute the Actions, given not only her initiation of the Actions, but her continuous ownership of Allergan stock since long before the start of the Relevant Period – 1989. *See* Rosenbloom Complaint, at 1 and ¶8.

Accordingly, even if the Court finds that the Funds or Himmel may properly assert claims here, the Funds and Himmel nonetheless have insufficient standing to fully pursue ***all*** relevant claims on behalf of Allergan. *See, e.g., Ryan v. Gifford,* 918 A.2d 341, 358-359 (Del. Ch. 2007) (where plaintiff acquired stock in April 2001, plaintiff only had standing to challenge conduct which occurred from April 2001 and thereafter, and could not challenge conduct dating from 1998 until April 2001); *Conrad v. Blank,* 940 A.2d 28, 41-43 (Del. Ch. 2007) (plaintiff did not have standing to challenge misconduct alleged to have occurred from 1994 to 1997, because plaintiff acquired stock in 1998, and Delaware Chancery Court specifically directed parties to provide information about the possibility of another stockholder who held stock longer than the plaintiff, so that stockholders would not be denied the opportunity to rectify the corporate violations alleged). Rosenbloom, on the other hand, has

unassailable standing and has properly alleged same, and thus should be appointed Lead Plaintiff if the Court deems it appropriate to appoint a Lead Plaintiff.

### C. The Funds' Status as Institutional Investors Is Irrelevant

Unlike in cases filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and contrary to the Funds' assertions, the size of a plaintiff's investment in derivative cases is entirely irrelevant.[11] *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982) (citing *Marshall v. Spang & Co.*, 321 F. Supp. 1310, 1312 (W.D. Pa. 1971)); *see also Subin v. Goldsmith*, 224 F.2d 753, 761 (2d Cir. 1955). The Funds' argument rests on the faulty proposition that because they are institutional investors, they have a greater financial stake in the Actions (and thus, presumably, are well-motivated to vigorously prosecute the Actions). *See* Funds' Motion at 6-7.

As the Actions are brought in the name of the Company and damages are not measured in terms of loss of an individual investor on a particular date in time, the Funds' argument is a red herring. Further, the Funds' argument disregards the reality that the allegiance of a pension fund is to its pensioners. Here there has also been no assurance that the Funds will continue to hold the shares through the pendency of the Actions. Moreover, in derivative actions, there is no empirical data which even suggests that institutional investors maximize the recovery for corporations. In fact, individual stockholders have produced some of the largest derivative recoveries in history for corporations. *See, e.g.*, *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003) ("Oracle") (individual investors produced $100 million derivative settlement);[12] *Sanders v. Wang*, No. 16640, 2001 WL 1131353 (Del. Ch. Sept. 18,

---

[11] This is particularly true, where, as here, the institutional investor does not have standing to prosecute the claims asserted.

[12] Robert B. Weiser ("Robert Weiser"), a principal of The Weiser Firm, served as co-lead counsel for the plaintiffs in the seminal Oracle litigation (*see e.g. In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003)) prior to founding The Weiser Firm.

8

2001) (individual investors obtained recovery of 4.5 million shares of stock to corporation from defendants, valued at over $225 million). Indeed, *In re Cardinal Health Derivative Litigation*, No. 02-CVG-11-639 (Ohio Ct. C.P.-Del. County Dec. 17, 2007), cited in the Himmel Brief at 7, was litigated by individual stockholders and resulted in a recovery of over $70 million. *See* Herkenhoff Decl., Ex. F (excerpts of Form 10-K for the period ended June 30, 2008 filed by Cardinal Health, Inc. describing settlement).

Notably, the differences in the requirements for plaintiff representatives in derivative litigation and class actions have been recognized. *See*, *e.g.*, *Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y. 1982) (holder of 200 shares who demonstrated conscientious prosecution of derivative action was deemed adequate representative and court noted "[d]ifferences between derivative and class actions, however, make clear that some factors used to evaluate class representatives are irrelevant when shareholders litigate for a corporation's benefit"). Accordingly, even though the Funds may have a larger investment than Rosenbloom (which is not yet established), that does not make the Funds a more adequate representative of Allergan or its stockholders. Indeed, the pivotal issue in shareholder derivative actions pursuant to Fed. R. Civ. P. Rule 23.1 is standing – a fatal issue for the Funds given that the Defendants' alleged misconduct goes back to 2000, and the earliest date one of the Funds acquired Allergan stock was September 2003. Accordingly, the Funds should not be appointed Lead Plaintiff, and indeed, the Funds' Motion should be denied.

### III. THE WEISER FIRM SHOULD BE APPOINTED LEAD COUNSEL

The Funds' Motion also argues for the appointment of Robbins Geller as Lead Counsel. If the Court is to select a Lead Counsel, The Weiser Firm should be appointed Lead Counsel because of the superior standing of its client to prosecute this action on behalf of Allergan, but also because of the firm's excellent reputation in stockholder derivative litigation. Indeed, Robert Weiser, the founder of The Weiser

9

Firm, has been involved in some of the most successful shareholder derivative actions in history. *See* Herkenhoff Decl., Ex. A (The Weiser Firm Resume).

Robert Weiser has personally been involved in many ground-breaking shareholder derivative actions, including the well-known *Oracle*, 824 A.2d 917 (one of the largest derivative settlements ever at the time it was agreed to);[13] *David v. Wolfen, et al.* ("*Broadcom*"), No. 01-CC-03930 (Cal. Super. Ct., Orange County);[14] *Gebhardt v. Allumbaugh, et al.* ("*El Paso*"), No. 2002-13602 (Tex. Dist. Ct., Harris County),[15] *Klotz v. Parfet, et al.* ("*CMS Energy*"), No. 03-06483-CK (Mich. Cir. Ct.,

---

[13] In *Oracle*, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's senior officers, including founder Larry Ellison. Oracle's Board of Directors appointed a special litigation committee ("SLC") to investigate plaintiffs' claims, and after a lengthy investigation, the SLC moved to dismiss the case, having concluded that the claims lacked merit. Among other things, plaintiffs challenged the independence of the SLC members, their good faith, and their ultimate conclusions. The Delaware Chancery Court denied the SLC's motion, allowing the action to proceed to trial. The *Oracle* decision is one of only four reported Delaware cases where a SLC's motion to dismiss was denied by a Delaware chancellor, and many commentators view the *Oracle* case as a landmark decision for shareholders. For example, the *Wall Street Journal* called the seminal *Oracle* decision "one of the most far-reaching ever on corporate governance." The *Oracle* case eventually settled for $100 million, making it one of the largest derivative settlements in history at the time it was entered into. *Oracle*, and its impact on corporate governance matters nationwide, is the subject of numerous scholarly articles and treatises.

[14] Like *Oracle*, *Broadcom* produced a groundbreaking settlement. In connection with the eventual settlement of *Broadcom*, plaintiffs were able to compel Broadcom to make sweeping, substantial changes to its corporate governance practices which included a provision which allows Broadcom's shareholders to nominate directors to Broadcom's Board. In particular, the shareholder-nominated director provision was thought to be a highly significant and unusual achievement for Broadcom's shareholders. As the *Associated Press* reported in commenting on the settlement: "[i]n contrast to the Broadcom settlement] the Securities and Exchange Commission has met fierce resistance to a proposal just to allow shareholder nominations under very limited circumstances." Bruce Meyerson, *Shareholder Suits Means More Money For Lawyers, But Bring Governance Gains*, Associated Press, July 27, 2004. This type of corporate governance relief has only been achieved in a handful of shareholder derivative actions.

[15] This shareholder derivative action centered on the corporation's alleged anti-competitive conduct in California during the energy crisis of 2001-2002. In addition to sweeping changes to the Board's structure and the company's corporate governance practices, a $16.75 million recovery was achieved for the Company. The *El Paso* settlement is one of the largest derivative settlements in Texas history.

10

Jackson County), and *Barry v. Cotsakos* ("*E\*Trade*"), No. CIV419084 (Cal. Super. Ct., San Mateo County).[16]

In addition to the foregoing, since 2006, The Weiser Firm has been at the forefront of the national investigation and prosecution of "stock option backdating cases." *See* Herkenhoff Decl., Ex. A. In connection therewith, The Weiser Firm was appointed lead or co-lead counsel in scores of cases, and has been partially responsible for the recovery of over $100 million in settlements for the subject corporations. *See e.g. In re Home Depot Inc.*, *Derivative Litigation*, 07-CV-0356-RLV (N.D. Ga.); *In re KB Home Shareholder Derivative Litigation*, CV-06-05148-FMC(CTx) (C.D. Cal.) ("*KB Home*"); *In re Family Dollar, Inc., Shareholder Derivative Litigation*, 06-CV-00510(W) (W.D.N.C.).[17] In short, the combination of stellar legal talent and a client

---

[16] In the *E\*trade* derivative litigation, the plaintiff challenged the payment of alleged excessive compensation awarded to E\*trade's then-current CEO. This case was fraught with substantial difficulties from the start – challenging executive compensation awarded at a public corporation has proved to be near-impossible since the Delaware Supreme Court's decision in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) – due to the historical protections afforded directors under the business judgment rule. Nonetheless, Plaintiff was able to achieve a remarkable settlement which included , the CEO returning approximately $25 million in value to the Company, along with sweeping changes to the company's corporate governance practices and the structure of its Board. These measures, and the resulting change in the public's perception of E\*trade, were profiled in a *Wall Street Journal* article. See Suzanne Craig, *How One Firm Uses Strict Governacne To Fix Its Troubles*, Wall St. J., Aug. 21, 2003 at A1, A6. Since the time of the *E\*trade* settlement, E\*trade has added independent directors to its Board, who subsequently forced out the Company's CEO. In response to these changes, the Company's stock increased more than 300% in the 18 months following the settlement and the "new E\*trade" became the subject of several positive media reports.

[17] Recently, The Weiser Firm obtained $6.5 million on behalf of TeleTech Holdings, Inc., as well as a comprehensive set of corporate governance reforms, in a shareholder derivative action brought in the Delaware Chancery Court entitled, *Gregory v. Tuchman,et al.,* C.A. No. 3925-CC (Del. Ch. )("*TeleTech*"). *See* Herkenhoff Decl., Ex. G (Stipulation of Settlement) at Section V(2)(A). During the hearing in which the settlement was finally approved, Chancellor Chandler cited the *TeleTech* case as involving a "very generous" settlement which was "highly beneficial" to TeleTech and its stockholders. *See* Herkenhoff Decl., Ex. H (excerpts from Transcript of January 5, 2010 Settlement Hearing) at 26-27; Ex. I (Final Judgment Approving Settlement And Order Of Dismissal). Chancellor Chandler also specifically complimented plaintiff's counsel for their efforts. *Id.* Currently, The Weiser Firm is serving as co-lead or sole lead counsel in several stockholder

11

with long-term standing in Allergan stock to pursue all claims on behalf of the Company for the broadest period possible, dictates that The Weiser Firm be selected as Lead Counsel for this action.[18]

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Funds' Motion insofar as it seeks the appointment of the Funds as Lead Plaintiffs and Robbins Geller as Lead Counsel. Similarly, the request to appoint Himmel as a Co-Lead Plaintiff and Robbins Umeda as Co-Lead Counsel with Robbins Geller should be denied. To the extent that the Court deems it necessary to appoint a Lead Plaintiff, Rosenbloom should be appointed and The Weiser Firm should be appointed as Lead Counsel.

DATED:  October 11, 2010                     Respectfully submitted,

THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
(168562)


      s/KATHLEEN A. HERKENHOFF
       KATHLEEN A. HERKENHOFF

12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 794-1441
Facsimile: (858) 794-1450
kah@weiserlawfirm.com

---

derivative actions that could have a significant impact on corporate governance issues nationwide. One such case is *In re KeyCorp Deriv. Litig.*, Lead Case No. 1:10-cv-01786-DAP (N.D. Ohio 2010), where The Weiser Firm is serving as lead counsel in a derivative action based on allegations of misconduct arising from the failure of the KeyCorp Board of Directors to amend the executive compensation awarded for 2009, even though a majority of KeyCorp's voting stockholders rejected such compensation in a "say on pay" vote. *See* Herkenhoff Decl., Ex. J (Stipulation Consolidating Actions, Appointing Lead Counsel and Related Matters And Order Thereon).

[18]   Of course, The Weiser Firm and Robert Weiser have worked cooperatively and quite successfully with Robbins Geller and Robbins Umeda many times in the past including the aforementioned cases: *E*trade*, *ACS*, *HCC*, *Dell, Nabors, Furniture Brands, KB Home,* and *Vitesse*, among many others. In fact, The Weiser Firm is currently working with Robbins Geller or Robbins Umeda as co-lead counsel in numerous cases pending in courts across the country right now.

12

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2677
Facsimile: (610) 225-2678

Attorneys for Plaintiff Willa Rosenbloom
And Proposed Lead Counsel

THE SHUMAN LAW FIRM
Kip B. Shuman
Rusty E. Glenn
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

LAW OFFICE OF DEBRA S. GOODMAN, P.C.
DEBRA S. GOODMAN
1301 Skippack Pike
Suite 7A, #133
Blue Bell, PA 19422
Telephone: (610) 277-6057

Attorneys for Plaintiff Willa Rosenbloom