ROBBINS UMEDA LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsumeda.com
FELIPE J. ARROYO (163803)
farroyo@robbinsumeda.com
ARSHAN AMIRI (246874)
aamiri@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

[Additional counsel on signature page]

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
OCT 12 2010
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

RECEIVED BUT NOT FILED
OCT 12 2010
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

10:58 AM.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILLA ROSENBLOOM, derivatively on behalf of ALLERGAN, INC.,<br>Plaintiff,<br>v.<br>DAVID E. I. PYOTT, et al.,<br>Defendants,<br>-and-<br>ALLERGAN, INC., a Delaware corporation,<br>Nominal Defendant. | Case No. 8:10-cv-01352-DOC-MLG<br><br>MEMORANDUM OF LAW IN SUPPORT OF DANIEL HIMMEL'S RESPONSE TO MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL OF POMPANO BEACH & FIREFIGHTERS' RETIREMENT SYSTEM AND WESTERN WASHINGTON LABORERS-EMPLOYEE PENSION TRUST<br><br>DATE: November 1, 2010<br>TIME: 8:30 a.m.<br>COURTROOM: 9D<br>JUDGE: Honorable David O. Carter<br>ACTION FILED: Sept. 9, 2010 |

| | |
|---|---|
| DANIEL HIMMEL, Derivatively on Behalf of ALLERGAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DAVID E. I. PYOTT, , et al.,<br><br>Defendants,<br><br>-and-<br><br>ALLERGAN, INC., a Delaware corporation,<br><br>Nominal Defendant. | Case No. 8:10-01417-DOC-MLG<br><br>JUDGE: Honorable David O. Carter<br>ACTION FILED: Sept. 17, 2010 |
| POMPANO BEACH POLICE & FIREFIGHTER'S RETIREMENT SYSTEM and WESTERN WASHINGTON LABORERS-EMPLOYERS PENSION TRUST, Derivatively on Behalf of ALLERGAN, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID E. I. PYOTT, , et al.,<br><br>Defendants,<br><br>-and-<br><br>ALLERGAN, INC., a Delaware corporation,<br><br>Nominal Defendant. | Case No. 8:10-cv-01449-DOC-MLG<br><br>JUDGE: Honorable David O. Carter<br>ACTION FILED: Sept. 24, 2010 |

MEMORANDUM OF LAW ISO DANIEL HIMMEL'S RESPONSE TO MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

Plaintiff Daniel Himmel ("Himmel"), derivatively on behalf of Allergan, Inc. ("Allergan" or the "Company"), through his counsel, respectfully submits this Memorandum of Law in Support of Daniel Himmel's Response to Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel of Pompano Beach & Firefighters' Retirement System and Western Washington Laborers-Employee Pension Trust ("Response").

## I. INTRODUCTION

There are currently three related shareholder derivative actions (the "Actions") pending in this Court, alleging various breaches of fiduciary duty by current and former officers and directors of Allergan and violations of federal law in connection with their illegal scheme to promote and market the drug Botox for off-label uses.

On September 29, 2010, plaintiffs Pompano Beach Police & Firefighters' Retirement System and Western Washington Laborers-Employers Pension Trust (collectively, the "Funds") moved for consolidation of the related Actions, to serve as Lead Plaintiff, and to appoint their counsel, Robbins Gellar Rudman & Dowd LLP ("Robbins Gellar"), Lead Counsel for the related Actions (the "Motion").

Plaintiff Himmel supports consolidation of the Actions and, by and through this Response, moves to serve in a leadership role as Co-Lead Plaintiff and to have his chosen counsel, Robbins Umeda LLP ("Robbins Umeda"), appointed as Co-Lead Counsel. For all the reasons stated herein, the Court should grant Himmel's proposed leadership structure as stated in the [Proposed] Order submitted with this Response.

## II. BACKGROUND

Allergan is a Delaware corporation based in Irvine, California. ¶¶13, 48.[1] The Company specializes in manufacturing and marketing specialty pharmaceuticals

---

[1] All paragraph references ("¶__" or "¶¶__") are to Plaintiff Himmel's Verified Shareholder Derivative Complaint for Federal Securities Laws, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment ("Complaint") filed on September 17, 2010.

(primarily eye care, skin care, and neuromodulators) and medical devices (primarily breast implants, gastric bands for obesity surgery, and injectable dermal fillers used on facial wrinkles). *Id.*

Botox is a prescription-only medical product that contains tiny amounts of highly purified botulinum toxin protein relined from the bacterium, *Clostridium botulinum*. ¶49. Allergan markets and sells the toxin under two distinct trade names, "Botox" and "Botox Cosmetic," although these products are exactly the same. *Id.*

Allergan's core business rests upon the marketing of its drugs, not only to consumers, but also to doctors. ¶57. Allergan's business is the focus of extensive regulation and regulatory oversight by the U.S. Food and Drug Administration (the "FDA"). ¶¶6, 51, 66. The U.S. Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §301 *et seq.*, (the "FDCA") regulates the development, manufacturing, and distribution of all drugs in the United States, including those of Allergan. ¶51.

Under the FDCA, drug companies are not allowed to market a drug until the drug has been approved by the FDA. ¶53. Even once approved, the marketing of the drug must be confined to the approved use and dosage, as described on the drug's label. *Id.* Drug companies may not engage in marketing or promoting unapproved or "off -label" uses or dosages, i.e, uses or dosages for which the drug has not been approved by the FDA and that are not on the label, because such off-label uses or dosages have not been proven safe and effective. ¶¶4, 53.

On September 1, 2010, the U.S. Department of Justice (the "DOJ") announced a $600 million settlement of civil and criminal claims against Allergan concerning the Company's promotion of Botox for unapproved use. ¶¶2, 57. *See* Press Release, Department of Justice, Allergan Agrees to Plead Guilty and Pay $600 Million to Resolve Allegations of Off-Label Promotion of Botox (Sept. 1, 2010) attached as Exhibit A to the Declaration of Arshan Amiri in Support of the Response ("Amiri Decl.") filed concurrently herewith. As pointed out by the DOJ's press release

- 2 -

MEMORANDUM OF LAW ISO DANIEL HIMMEL'S RESPONSE TO MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

announcing the $600 million settlement, "'Allergan made it a top corporate priority to maximize sales [of Botox for] far more lucrative off-label uses.'" ¶¶6, 57, 86, 87; Amiri Decl.; Exhibit A. In order to accomplish this task, the individual defendants have caused and permitted Allergan to openly violate and evade the legal marketing restrictions applicable to its products. ¶57.

Currently the following Actions are pending before the Court:

| **Abbreviated Case Name** | **Case Number** | **Date Filed** |
|---|---|---|
| *Rosenbloom v. Pyott, et al.* | 8:10-cv-01352-DOC-MLG | 9/9/10 |
| *Himmel v. Pyott, et al.* | 8:10-01417-DOC-MLG | 9/17/10 |
| *Pompano Beach Police & Firefighters' Retirement System and Western Washington Laborers-Employers Pension Trust v. Pyott, et al.* | 8:10-cv-01449-DOC-MLG | 9/24/10 |

The Actions are brought as shareholder derivative actions against certain members of Allergan's Board of Directors (the "Board") and executive officers. Further, the Actions arise out of the same transactions and occurrences and involve the same or substantially similar issues of law and fact.

## III. ARGUMENT

### A. Plaintiff Himmel Agrees that Consolidation Is Appropriate

Plaintiff Himmel agrees that consolidation of the related Actions is appropriate. "The District Court has broad discretionary authority under Federal Rule of Civil Procedure 42(a) to consolidate cases." *Millman ex rel. Friedman's, Inc. v. Brinkley*, No. 1:03-CV-3831-WSD, 2004 WL 2284505, at *2 (N.D. Ga. Oct. 1, 2004); *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (a "district court's decision under Rule 42(a) is purely discretionary"); *see also In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977) ("trial court has managerial power ... 'to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants'") (citation omitted). Specifically, Rule 42(a) provides:

> If actions before the court involve a common question of law or fact the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue or any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

The primary purpose of consolidating actions is to promote convenience and judicial economy. *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1943). Thus, as here, where the Actions raise the same or similar questions of law and fact, and consolidation would avoid unnecessary costs and delay, it is within this Court's discretionary power to order consolidation. *See Millman*, 2004 WL 2284505, at *2 ("Consolidating actions ... can help avoid needless duplication of time, effort and expense on the part of the parties and the Court ...."); *Hendrix*, 776 F.2d at 1495 ("We have encouraged trial judges to 'make good use of Rule 42(a) ... in order to expedite the trial and eliminate unnecessary repetition and confusion.'") (citation omitted).

### B. Plaintiff Himmel Agrees that the Court Should Appoint a Leadership Structure

In complex cases such as this one, it is well established that the court may and should appoint a leadership structure to coordinate the prosecution of complex litigation. *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988) ("In complex cases, it is well established that the district judge may create a Plaintiffs' Lead Counsel Committee."); *Manual for Complex Litigation* §20.22 (3d ed. 1995). Likewise, the utility in appointing lead counsel in complex actions such as this one is well recognized. Indeed, the "'orderly and economical prosecution of the action necessitates the designation of a general counsel to conduct the litigation on behalf of all the stockholders.'" *Millman*, 2004 WL 2284505, at *2 (citation omitted). As stated by one court:

> The benefits achieved by consolidation and the appointment of general counsel, i.e. elimination of duplication and repetition and in

> effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.

*MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958).

**1. Plaintiff Himmel Should Be Appointed Co-Lead Plaintiff**

As the United States Supreme Court recognized in *Cohen v. Beneficial Industrial Loan Corp.*, a plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." 337 U.S. 541, 549 (1949). Although "[n]o statutory authority exists for the appointment of lead plaintiff in shareholder derivative actions," (*In re Doral Fin. Corp. Sec. Litig.*, No. 05 MDL 1706 RO, 2006 WL 1120491, at *1 (S.D.N.Y. Apr. 27, 2006)), federal courts generally look to which litigant will best serve the interests of the nominal defendant corporation and its shareholders. *Millman*, 2004 WL 2284505, at *3; *Dollens v. Zionts*, No. 01 C 5931, 2001 WL 1543524, at *4 (N.D. Ill. Dec. 4, 2001).

Factors a court may consider in appointing a lead derivative plaintiff include the quality of the pleadings, the economic interest of the plaintiff, and the vigor with which the plaintiff has pursued the action. *Dollens*, 2001 WL 1543524, at *5-*6; *In re Foundry Networks, Inc. Derivative Litig.*, No. C-06-05598, 2007 WL 485974, at *1 (N.D. Cal. Feb. 12, 2007). *See TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000).

On balance, these factors support appointing Plaintiff Himmel as Co-Lead Plaintiff along with the Funds. Plaintiff Himmel filed a comprehensive 119-paragraph Complaint detailing Allergan's directors and officers' illicit scheme to promote and market Botox for improper off-label uses, and brings four causes of action for violations of both federal and state law. Plaintiff Himmel has demonstrated his deep commitment to litigating this case diligently and without delays by filing his extensive

and detailed derivative Complaint expeditiously after public announcement of the $600 million DOJ settlement. Plaintiff Himmel's Complaint reflects a diligent investigation into the facts and circumstances that led to the DOJ settlement and that gave rise to the instant derivative litigation.[2] While the Funds bring institutional experience, Plaintiff Himmel brings the experience of an individual shareholder and will lend a unique perspective to that of the Funds.

**2. Plaintiff Himmel's Counsel Should Be Appointed Co-Lead Counsel**

The "'guiding principle'" when selecting a lead counsel is, who will "'best serve the interest of the plaintiffs.'" *Millman*, 2004 WL 2284505, at *3 (citation omitted); *see also Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005). The criteria for selecting lead counsel include the work counsel has done in identifying or investigating potential claims in the action, the experience counsel has in handling complex litigation and the types of claims asserted in the action, the knowledge counsel has of the applicable law, and the resources counsel will commit to representing the class. *Bernhard v. TD Bank, N.A.*, Civ. No. 08-4392, 2009 WL 3233541, at *5 (D.N.J. Oct. 5, 2009); *see also Millman*, 2004 WL 2284505, at *3 (criteria includes "'experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged'") (citation omitted). Each of these factors weighs strongly in favor of appointing Robbins Umeda as Co-Lead Counsel here, along with Robbins Gellar.

As a firm that concentrates primarily on shareholder derivative lawsuits, Robbins Umeda has been at the forefront of many recent notable shareholder derivative actions and has achieved excellent results here in California, as well as across the nation. Attorneys for Robbins Umeda served as the lead negotiators for the

---

[2] Plaintiff Himmel's commitment to the case and Company is further underscored by the fact that his long-time shareholdings date back to 2004.

consortium of derivative plaintiffs in *In re Tenet Healthcare Corp. Derivative Litigation*, where they obtained a $51.5 million payment to the nationwide health care services and hospital operating company, as well as sweeping corporate governance and other remedial measures designed to ensure the independence and effectiveness of the Board's operational oversight. No. 01098905 (Cal. Super. Ct.-Santa Barbara County May 5, 2006) *aff'd*, No. B192252 (Cal. App. Sept. 20, 2007). Amiri Decl., ¶5. *See also* Robbins Umeda Resume at 1, attached as Exhibit B to Amiri Decl. Robbins Umeda also achieved significant benefits as sole lead counsel in *In re OM Group Derivative Litigation*, Case No. 1:03CV0020 (N.D. Ohio 2006). *See* Amiri Decl., ¶4, Ex. B at 1-2. In that case, the plaintiffs alleged that defendants breached their fiduciary duties by perpetrating a massive accounting fraud and orchestrating a cover-up through the issuance of misleading statements to the public. *Id.* Robbins Umeda secured $29 million for the company, the termination of the company's long term chief executive officer, the addition of two shareholder nominated directors, and a number of other targeted corporate governance reforms. *Id.*

As lead counsel, Robbins Umeda played a central role in securing $70 million and comprehensive corporate governance reforms on behalf of Cardinal Health, Inc. ("Cardinal Health"), among the largest monetary recoveries ever in a shareholder derivative action. *In re Cardinal Health Derivative Litig.*, No. 02-CVG-11-639 (Ohio Ct. C.P.-Del. County Dec. 17, 2007). *See* Amiri Decl., ¶3, Ex. B at 5. As part of the settlement, Cardinal Health implemented significant corporate governance reforms and internal accounting controls to improve the oversight and accountability of Cardinal Health's senior management to prevent the recurrence of the drug wholesalers' accounting manipulations. *Id.*

Additionally, Robbins Umeda has been co-lead counsel and worked extensively with the Funds' counsel, Robbins Gellar, on numerous occasions. For example, in *In re KB Home Shareholder Derivative Litigation*, Robbins Umeda and Robbins Gellar

- 7 -
MEMORANDUM OF LAW ISO DANIEL HIMMEL'S RESPONSE TO MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

worked together in a shareholder derivative suit to secure more than $20 million in recovery for KB Home. Case No. 2:06-CV-05148-FCC (C.D. Cal.). *See* Amiri Decl., ¶7. In a class case, *In re Titan, Inc. Securities Litigation*, the firms worked together to secure a $61.5 million settlement on behalf of the shareholder class. Case No. 3:04-CV-00676-LAB (S.D. Cal.). *See* Amiri Decl., ¶6, Ex. B at 1, 3. This recovery constituted approximately half of the estimated damages the class suffered. *Id.* These achievements highlight the benefits of appointing Robbins Umeda and Robbins Gellar as Co-Lead Counsel.

The experience and prior success of Robbins Umeda unquestionably demonstrates the firm's competence to lead this litigation, along with Robbins Gellar. *See, e.g., In re Terazosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (the "most persuasive" factor in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Robbins Umeda possesses both the financial resources and substantive expertise necessary to litigate these Actions vigorously and effectively on behalf of Allergan and its shareholders.

## IV. CONCLUSION

For all the reasons stated above, Plaintiff Himmel respectfully requests that this Court order consolidation of the Actions and appoint Himmel as Co-Lead Plaintiff, and his counsel, Robbins Umeda, as Co-Lead Counsel, consistent with the [Proposed] Order submitted herewith.

DATED: October 8, 2010

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
ARSHAN AMIRI

/S/ARSHAN AMIRI
ARSHAN AMIRI

600 B Street, Suite 1900
San Diego, CA 92010
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsumeda.com

farroyo@robbinsumeda.com
aamiri@robbinsumeda.com

[Proposed] Co-Lead Counsel and Counsel for plaintiff Daniel Himmel

LEOPOLD KUVIN, P.A.
WILLIAM C. WRIGHT
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 514-1400
Facsimile: (561) 514-1401
wwright@leopoldkuvin.com

Counsel for plaintiff Daniel Himmel

- 9 -

MEMORANDUM OF LAW ISO DANIEL HIMMEL'S RESPONSE TO MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2010, I caused the foregoing to be mailed on October 12, 2010, to the participants indicated on the attached service list via the U. S. Mail in a sealed envelope with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 12, 2010, at San Diego, California.

/S/ ARSHAN AMIRI
ARSHAN AMIRI

ROBBINS UMEDA LLP
600 B Street, Suite 1900
San Diego, CA 92010
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

E-mail: aamiri@robbinsumeda.com

**COUNSEL FOR PLAINTIFFS**

***Himmel v. Pyott, et al.*, Case No. 8:10-1417-JVS (MLG)**

ROBBINS UMEDA LLP
BRIAN J. ROBBINS (190264)
FELIPE J. ARROYO (163803)
ARSHAN AMIRI (246874)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

LEOPOLD KUVIN, P.A.
WILLIAM C. WRIGHT
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 514-1400
Facsimile: (561) 514-1401

***Rosenbloom v. Pyott, et al.*, Case No. 8:10-cv-01352-DOC (MLG)**

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT STECKLER
JEFFREY CIARLANTO
121 North Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2616
Facsimile: (610) 225-2678

THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 794-1441
Facsimile: (858) 794-1450

LAW OFFICE OF DEBRA S. GOODMAN P.C.
DEBRA S. GOODMAN
1301 Skippack Pike, Suite 7A #133
Blue Bell, PA 19422
Telephone: (610) 277-6057
Facsimile: (484) 231-1922

LAW OFFICE OF DEBRA S. GOODMAN P.C.
DEBRA S. GOODMAN
1301 Skippack Pike, Suite 7A #133
Blue Bell, PA 19422
Telephone: (610) 277-6057
Facsimile: (484) 231-1922

***Pompano Beach Police & Firefighters' Ret. Sys. v. Pyott, et al.,***
**8:10-cv-01449-DOC-MLG**

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
PEDRO A. HERRERA
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: (305) 529-2801
Facsimile: (305) 447-8115

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
TRAVIS E. DOWNS
BENNY C. GOODMAN
DAVID W. MITCHELL
BRIAN O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

**COUNSEL FOR DEFENDANTS**

GIBSON, DUNN & CRUTCHER LLP
WAYNE W. SMITH
JEFFREY H. REEVES
3161 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-4108
Facsimile: (949) 475-4709

IRELL & MANELLA LLP
JOHN C. HUESTON
GLENN K. VANZURA
LILLIE A. WERNER
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 227-1010
Facsimile: (310) 203-7199