1       128.   The Defendants knew of the unlawful off-labeling practices taking place

2  at the Company.  Nevertheless, they chose to continue the off market labeling practices

3  despite the risk of loss to the Company arising from such unlawful sales practices.

4       129.   Plaintiffs were shareholders of Allergan at the time of the continuing

5  wrong of which they complain.   Since becoming shareholders, plaintiffs have

6  continuously been Allergan shareholders.

7       130.   Plaintiffs have not made a demand on the present Board to institute this

8  action because such a demand would have been a futile, wasteful, and useless act.

9       131.   The current Board of Allergan consists of the following twelve

10  individuals: defendants Boyer, Dunsire, Gallagher, Herbert, Hudson, Ingram, Jones,

11  Lavigne, Pyott, Ray, Ryan, and Schaeffer.

## Demand Is Excused Because the Director Defendants' Conduct Is Not a Valid Exercise of Business Judgment

14       132.   The Director Defendants' challenged misconduct at the heart of this case

15  constitutes the direct facilitation of violations of federal law, including knowingly and

16  consciously presiding over the Company's systematic violations of the FDCA, as well

17  as actively covering up this misconduct through certain of the Director Defendants'

18  participation in the materially misleading proxy statements.  As the ultimate decision-

19  making body of the Company, the Board affirmatively adopted, implemented, and

20  condoned a business strategy based on deliberate and widespread violations of

21  applicable law.  Breaking the law is not a legally protected business decision and such

22  conduct can in no way be considered a valid exercise of business judgment.

23  Accordingly, demand on the Board is excused.

24       133.   This action does not arise from a single incident, but numerous civil and

25  criminal violations which involved hundreds of millions of dollars and were common

26  knowledge throughout the Company.  Serious violations of applicable law occurred

27  systematically and at every level of the Company as a direct result of the Board's

28  decision to embrace a policy of calculated legal violations as the Company's deliberate

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1  business strategy.  There is no legitimate "business judgment" involved in devising or

2  carrying out such an unlawful policy.  Accordingly, demand on the Board is excused.

3       134.  A typical corporate board might plausibly claim ignorance concerning

4  compliance failures in general.  In this case, however, the Board was repeatedly made

5  aware of the improper conduct occurring at the Company through the FDA warning

6  letters.  Further, the length of time and the scope of the wrongdoing occurring at the

7  Company concerning its illegal off-label marketing practices makes it implausible to

8  suggest that the Board would not be aware of the wrongdoing if its members were

9  fulfilling their fiduciary duties.  The Board's tacit or express approval of the illegal

10  actions occurring at the Company could not have been the result of a fully informed

11  business decision taken with the requisite due care.  Therefore demand is excused.

12  **Demand Is Excused Because a Majority of the Board Face a Substantial**

13  **Likelihood of Liability and Are Not Disinterested and Independent**

14       135.  Even if knowingly presiding over multiple violations of applicable law

15  could somehow fall within the ambit of the business judgment rule (which it does not),

16  demand is also futile and excused because a majority of the Board is not disinterested.

17       136.  Each of the Director Defendants were members of Allergan's Board of

18  Directors during some or all of the misconduct alleged herein.  As set forth herein, and

19  by virtue of: (i) the long-running nature of the wrongdoing; (ii) defendants' respective

20  tenures on the Board and Committees which were designed to monitor and ensure

21  Allergan's compliance with federal laws and regulations; and (iii) defendants' signing

22  of Company filings (including Annual Reports on Form 10-K) that acknowledged

23  extensive and lengthy investigations into business practices across different products,

24  defendants were aware of the illegal Botox off-label sales and marketing scheme.  In

25  fact, as alleged in the DOJ's criminal complaint, the several *qui tam* actions, and

26  consistent with strategic plans generally implemented by boards of public companies,

27  the Company's off-label sales and marketing scheme was a Board-reviewed and

28  approved decision.  As a result of Defendants' conduct, Allergan has been forced to

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1   admit that the wrongful scheme occurred, at a minimum, during the period from 2000

2   through 2005.

3       137.   Each of the Director Defendants were aware of, participated in, and

4   approved the wrongs alleged herein.  Thus, they have knowingly chosen not to exercise

5   the fiduciary duties of loyalty, good faith, independence, and candor owed to the

6   Company, and not to protect Allergan or to rectify the illegal practices complained of

7   herein.  Each of the Director Defendants have therefore approved of and continue to

8   participate in a course of corporate misconduct that includes approving and/or

9   condoning the illegal conduct and practices described herein.  Each of the Director

10  Defendants had the ability and/or opportunity to prevent these practices.  As members

11  of the Board, the Director Defendants are responsible for overseeing the Company's

12  compliance with legal requirements and, therefore, all of the Director Defendants are

13  liable for not ensuring that the officers and employees of the Company did not expose

14  the Company to unnecessary risk.  Because the Director Defendants are liable for

15  approving and directing the illegal conduct described herein, demand would be futile.

16      138.   Defendants Boyer, Dunsire, Gallagher, Herbert, Hudson, Ingram, Jones,

17  Lavigne, Pyott, Ray, Ryan, and Schaeffer cannot impartially consider a demand

18  because they face a substantial likelihood of liability.  All of the members of the Board

19  have served since at least 2006, and thus, during the time period, covered by the

20  Company's settlement.  Of these directors, only two, Dunsire and Hudson, began their

21  service after 2005.  Therefore, defendants Pyott, Lavigne, Boyer, Gallagher, Herbert,

22  Ingram, Jones, Ray, Ryan, and Schaeffer all served on the Board during the height of

23  the wrongdoing alleged herein.  As explained herein, and pointed out by the DOJ, the

24  decision to engage in the illegal sales was a "top corporate priority."  The scope and

25  length of the wrongdoing is overwhelming.  As explain herein, these defendants were

26  awash in red flags alerting them to the Company's illegal marketing activities.  The

27  Director Defendants were required to act upon this information that came to them

28  about the illegal off-label marketing practices to protect the Company from continued

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1  legal violations being committed in its names. Rather than doing so, the Director
2  Defendants, in violation of their legal obligations, consciously ignored the information
3  presented to them and about which they were otherwise made aware concerning the
4  Company's extensive legal violations. As a result, Boyer, Dunsire, Gallagher, Herbert,
5  Hudson, Ingram, Jones, Lavigne, Pyott, Ray, Ryan, and Schaeffer face a substantial
6  likelihood of liability for their conduct and demand is, therefore, excused.

7      139.  Defendants Boyer, Ingram, Dunsire, Jones, and Schaeffer each served on
8  the Corporate Governance Committee at the time of the wrongdoing complained of
9  herein.   The Corporate Governance Committee Charter charges these Director
10  Defendants with reviewing reports from management regarding compliance related
11  matters affecting the Company and providing general oversight of Allergan.   In
12  particular, the Corporate Governance Committee Charter states, that the members of
13  the committee "regularly receive[] comprehensive reports from management regarding
14  compliance-related matters affecting the Corporation and provide general compliance
15  oversight to the Corporation."   Defendants Boyer, Ingram, Dunsire, Jones, and
16  Schaeffer's failure to act in accordance with these duties in good faith is a breach of
17  their duty of loyalty and subjects them to a substantial likelihood of liability.
18  Accordingly, demand is excused on defendants Boyer, Ingram, Dunsire, Jones, and
19  Schaeffer. The Director Defendants serving on the Corporate Governance Committee
20  are therefore incapable of impartially responding to a demand.

21      140.  Defendants Lavigne, Gallagher, Ray, Hudson, and Ryan all served on the
22  Audit and Finance Committee at the time of the wrongdoing complained of herein. As
23  members of the Audit and Finance Committee, these directors had heightened duties to
24  ensure the Company's compliance with applicable laws and regulations, and implement
25  effective internal controls. Because Lavigne, Gallagher, Ray, Hudson, and Ryan had
26  an affirmative duty to ensure that the Company maintained adequate internal controls
27  over financial reporting and the integrity of the Company's financial statements and
28  failed to do so, they breached their fiduciary obligations due the Company.  These

- 52 -

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1    breaches subject them to a substantial likelihood of liability.  Therefore, demand on
2    Director Defendants Lavigne, Gallagher, Ray, Hudson, and Ryan is excused as futile
3    because these defendants on the Audit and Finance Committee are incapable of
4    impartially responding to a demand.

5         141.   At all relevant time, the Company maintained robust internal controls and
6    financial reporting systems.   Indeed, Defendants never reported any failure or
7    deficiency in these controls and reporting system.   On the contrary, the controls
8    functioned as designed and the board of directors timely received information
9    concerning allergens financial performance, sales and earnings, projected the actual
10   results, and actual and contingent risk facing allergens business, including the off label
11   marketing of Botox.

12        142.   Defendant Pyott is the Company's current CEO and has been since 1998,
13   the entire time the off-label marketing scheme has occurred at Allergan.  As CEO of
14   the Company, Pyott runs the daily operations of Allergan.  The DOJ pointed out that it
15   was one of the Company's top priorities to expand the use of Botox and to use off-label
16   marketing as a tool to accomplish that expansion.   The Company could not have
17   created this top priority without the approval of its CEO, Pyott.  Therefore, Pyott is
18   responsible for the Company's lack of adequate internal controls and violations of
19   applicable law.  Therefore, Pyott faces a substantial likelihood of liability, raising a
20   reasonable doubt about whether he could impartially consider a demand.  Moreover,
21   the revenues derived from the off-label marketing of Botox increased the total
22   revenues and thereby increased the compensation of defendant Pyott as CEO of the
23   Company.  Because the increased revenue resulted in his increased compensation of
24   Pyott, which he would be required to disgorge, Pyott cannot impartially consider a
25   demand.

26        143.   According to the Organization and Compensation Committee's
27   ("Compensation Committee") Charter, the Compensation Committee is responsible for
28   approving the CEO's compensation.  In 2009, Pyott received over $1.3 million in base

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1   salary from Allergan – placing him in the 98th percentile in salary amongst peer
2   executives.   The Compensation Committee is comprised of Gallagher, Hudson,
3   Schaeffer, Ingram and Ray.   As the members of the Compensation Committee
4   singularly control approval of Pyott's compensation, Pyott will not institute nor support
5   an action against defendants Gallagher, Hudson, Schaeffer, Ingram and Ray.  Pyott is
6   dependent on the conflicted directors referenced herein for his substantial
7   remuneration, and to institute or support an action against them would jeopardize his
8   own compensation.   Thus, demand on Pyott is futile.   Furthermore, because the
9   Compensation Committee members (Gallagher, Hudson, Schaeffer, Ingram and Ray)
10  approved the exhorbitant salary to Pyott when they knew or should have known of the
11  illegal conduct in which the Individual Defendants were collectively causing Allergan
12  to engage, the Compensation Committee members are incapable of impartially
13  considering a demand.

14      144.  Additionally, Pyott became Chairman of the Board in 2001 and also
15  served as President from January 1998 until February 2006. Thus, Pyott is well versed
16  on the applicable laws and regulations distinguishing between lawful sales and
17  marketing practices and illegal off-label promotions.  It was on his watch that Allergan
18  engaged in the long-running illegal scheme detailed herein.  Thus, a reasonable doubt
19  is raised that defendant Pyott is disinterested and independent, rendering him incapable
20  of impartially considering a demand to commence and vigorously prosecute this action.

21      145.  Similarly, defendant Herbert is interested and lacks independence.
22  Herbert is a founder of Allergan, served as the Company's Chief Executive Officer for
23  thirty years, and has served Chairman of Allergan's Board of Directors continuously
24  since 1977.  Thus, a reasonable doubt is raised that defendant Herbert is disinterested
25  and independent, rendering him incapable of impartially considering a demand to
26  commence and vigorously prosecute this action.

27      146.  Defendant Lavigne and Boyer are also interested and lack independence.
28  Lavigne and Boyer each worked together at Genetech, Inc.  Lavigne, a member of

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1  Allergan's Board since 2005, served as Genentech's Executive Vice President and CFO
2  from March 1997 through March 2005. Similarly, Boyer is a founder of Genentech
3  and served as a company director from 1976 through 2009. Thus, a reasonable doubt
4  exists that defendants Boyer and Lavigne are disinterested and independent of each
5  other, rendering them incapable of impartially considering a demand to commence and
6  vigorously prosecute this action.

7      147.  All the Director Defendants, including each member of the Board, bear a
8  substantial likelihood of liability arising from their violation of the federal securities
9  laws in connection with their issuance of the Proxy Statements. The Proxy Statements
10 constituted solicitations by the Director Defendants, as applicable, for which they may
11 be held personally liable under the federal securities laws. As set forth herein, the
12 Proxy Statements were materially inaccurate and incomplete, which caused significant
13 harm to the Company. As a result, the Director Defendants each bear a substantial
14 likelihood of liability for their violations of the federal securities laws, are hopelessly
15 conflicted and not disinterested with respect to such claims, and are, fundamentally
16 disabled from impartially considering a demand to impose liability on themselves for
17 violating their own statutory disclosure obligations.

18     148.  The Director Defendants are likewise conflicted from and unable to
19 pursue the Company's claims against the Officer Defendant (*i.e.* Pyott). Any effort to
20 directly prosecute such claims against the Officer Defendant for his direct role in the
21 violations of applicable law carried out in Allergan's name would necessarily expose
22 the Board's own culpability for the very same conduct. In other words, given that the
23 Board was required to be regularly informed concerning the Company's compliance or
24 non-compliance with applicable laws and the consent decree, any effort by the Director
25 Defendants to hold the Officer Defendant liable would lead the Officer Defendant to
26 defend on the ground that his own conduct was consistent with corporate policy and
27 practice, as established and by and known to the Board.

28

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

149.   Moreover, the acts complained of constitute violations of the fiduciary duties owed by Allergan's officers and directors and these acts are incapable of ratification.  Despite having knowledge of the claims and causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover on behalf of Allergan for any of the wrongdoing alleged by plaintiffs herein.

150.   Each of the Director Defendants authorized and/or permitted the improper statements disseminated by Allergan directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the improper statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if such suit was instituted by them.

151.   Further, upon information and belief, each of the Director Defendants authorized the filing by Allergan on October 1, 2009 of a civil action in the United States District Court for the District of Columbia captioned *Allergan, Inc. v. United States of America, et al.*, Case No. 09-1879 (D.D.C. Oct. 1, 2009) (the "*Allergan Declaratory Relief Action*").  The *Allergan Declaratory Relief Action* sought a declaratory judgment and injunctive relief against the United States of America, the United States Food & Drug Administration, Dr. Margaret Hamburg (Commissioner of the United States Food & Drug Administration) and Kathleen Sebelius (Secretary of the United States Department of Health & Human Services) (collectively the "*Allergan Declaratory Relief Action Defendants*"), alleging that the regulatory scheme of the FDCA, as enforced by the FDA (and the remaining *Allergan Declaratory Relief Action Defendants)* violates Allergan's First Amendment rights.  In addition to filing the *Allergan Declaratory Relief Action*, Allergan litigated the action by filing a Motion for Preliminary Injunction on October 1, 2009 ("*PI Motion*") and on January 15, 2010, filed a Cross-Motion For Summary Judgment And Opposition To Motion To Dismiss Or For Summary Judgment ("*Cross SJ Motion*").  As a condition of the Civil and Criminal Settlements, Allergan was required to dismiss the *Allergan Declaratory*

1  *Relief Action* with prejudice.  However, the filing of the *Allergan Declaratory Relief*

2  *Action*, the active litigation of the action via the *PI Motion* and the *Cross SJ Motion*

3  establishes that the Director Defendants are hostile to the claims that Allergan's

4  conduct in engaging in off-label marketing of Botox was a violation of the FDCA and

5  applicable law.  Indeed, in the October 4, 2010 Memorandum Of Defendant Allergan,

6  Inc. In Support Of Recommended Sentence (filed in the Criminal Action), Allergan

7  (via the Individual Defendants) affirmatively states its continuing and adverse position

8  that it "believes the declaratory action [i.e. the *Allergan Declaratory Relief Action*] had

9  merit . . . ."  Accordingly, the Director Defendants have evidenced their hostility to the

10 allegations that off-label marketing of Botox (or any other pharmaceutical product) is a

11 violation of the FDCA and other applicable law.  As such, each of the Director

12 Defendants is incapable of impartially considering a demand to institute this action on

13 Allergan's behalf.

14      152.   In addition, plaintiff has not made any demand on the shareholders of

15 Allergan to institute this action since such demand would be a futile and useless act for

16 at least the following reasons:

17            (a)    Allergan is a publicly held company with over 307 million

18 shares outstanding and thousands of shareholders;

19            (b)    making demand on such a number of shareholders would be

20 impossible because plaintiffs have no way of finding out the names, addresses, or

21 phone numbers of shareholders; and

22            (c)    making demand on all shareholders would force plaintiffs to

23 incur excessive expenses, assuming all shareholders could be individually identified.

24      153.   Allergan's public investors had no reason to know of the Individual

25 Defendants' breaches of their fiduciary duties until at least September 1, 2010, when

26 the DOJ announced the Civil and Criminal Settlements.  Prior to this time, Allergan

27 suffered no damage from the unlawful off-label marketing of Botox because it enjoyed

28 the benefits of the unlawful sales.

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

154.   Finally, as fiduciaries of Allergan and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Allergan's public shareholders the facts that give rise to the claims asserted herein.

## COUNT I
### Against All Defendants for Violation of Section 29(b) of the Exchange Act

155.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as through fully stated herein.

156.   The employment and compensation contracts identified herein, including the 2008 Incentive Award Plan, and all stock and options contracts entered by the Company, were entered in violation of the Exchange Act and rules prescribed thereunder, including Rule 10b-5. The employment and compensation contracts were authorized by defendants pursuant to the false and misleading Proxy Statements, and other materially false statements, omissions, and/or schemes or practices that acted as a fraud upon Allergan. There is contractual privity between Allergan and the recipients of the employment and compensation contracts. Allergan and its public investors are in the class of persons the Exchange Act was designed to protect.

157.   Accordingly, defendants' employment and compensation contracts, including the benefits received via the 2008 Incentive Award Plan, must be rescinded and the remaining option contracts and restricted stock units issued pursuant to the 2008 Incentive Award Plan deemed void.

## COUNT II
### Against the Individual Defendants for Breach Of Fiduciary Duty and/or Aiding and Abetting Breach Of Fiduciary Duty

158.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

159.   The wrongful conduct alleged herein (including the Covered Conduct and Criminal Conduct) was continuous, connected, and was on-going throughout the

- 58 -

1  relevant time period.  The wrongful conduct resulted in continuous, connected, and on-

2  going harm to the Company.

3       160.   As alleged in detail herein, the Individual Defendants, by reason of their

4  positions as officers and directors of Allergan and because of their ability to control the

5  business and corporate affairs of Allergan, owed Allergan fiduciary obligations of

6  good faith and loyalty, and were and are required to use their utmost ability to control

7  and manage Allergan in a fair, just, honest, and equitable manner.

8       161.   The Individual Defendants violated their fiduciary duties of loyalty and

9  good faith by failing in their enumerated duties which caused the violations of federal

10  law (including the Covered Conduct and Criminal Conduct) that led to the Civil and

11  Criminal Settlements of $600 million.

12       162.   The Individual Defendants further violated their fiduciary duty of loyalty

13  by permitting a Company-wide business strategy which involved various violations of

14  federal laws, including the Covered Conduct and the Criminal Conduct.

15       163.   As a direct and proximate result of the Individual Defendants' foregoing

16  breaches of fiduciary duties, the Company has suffered significant damages, as alleged

17  herein.

18       164.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

19                          **COUNT III**

20       **Against All Defendants for Waste of Corporate Assets**

21       165.   Plaintiffs incorporate by reference and reallege each and every allegation

22  contained above, as though fully set forth herein.

23       166.   The wrongful conduct alleged herein (including the Covered Conduct and

24  Criminal Conduct) was continuous, connected, and was on-going throughout the

25  relevant time period.  The wrongful conduct resulted in continuous, connected, and on-

26  going harm to the Company.

27       167.   As a result of the misconduct described above, the Individual Defendants

28  wasted corporate assets: (i) by failing to maintain sufficient internal controls over the

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1  Company's marketing and sales process; (ii) by failing to properly consider the

2  interests of the Company and its public shareholders; (iii) by failing to conduct proper

3  supervision; (iv) by paying undeserved incentive compensation to certain of its

4  executive officers; and (v) by incurring hundreds of millions of dollars of legal liability

5  and/or legal costs to defend defendants' unlawful actions.

6      168.  As a result of the waste of corporate assets, the Individual Defendants are

7  liable to the Company.

8      169.  Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

9                          **COUNT IV**

10        **Against All Defendants for Unjust Enrichment**

11      170.  Plaintiffs incorporate by reference and reallege each and every allegation

12  set forth above, as though fully set forth herein.

13      171.  The wrongful conduct alleged herein (including the Covered Conduct and

14  Criminal Conduct) was continuous, connected, and was on-going throughout the

15  applicable time period. The wrongful conduct resulted in continuous, connected, and

16  on-going harm to the Company.

17      172.  By their wrongful acts and omissions, the Individual Defendants were

18  unjustly enriched at the expense of and to the detriment of Allergan. The Individual

19  Defendants were unjustly enriched as a result of the compensation and director

20  remuneration they received while breaching fiduciary duties owed to Allergan.

21      173.  Plaintiffs, as shareholders and representatives of Allergan, seek restitution

22  from these defendants, and each of them, and seek an order of this Court disgorging all

23  profits, benefits, and other compensation obtained by these defendants, and each of

24  them, from their wrongful conduct and fiduciary breaches.

25      174.  Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

**COUNT V**

**Against the Insider Selling Defendants for Violations of California
Corporations Code §§ 25402/25502.5**

175.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

176.   At the time the Insider Selling Defendants sold their Allergan common stock as set forth herein, by reason of their high executive and/or directorship positions with Allergan, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts concerning the Covered Conduct in which the Individual Defendants caused Allergan to engage.  The Insider Selling Defendants collectively sold more than $____ worth of their personally held Allergan stock while in possession of these materially adverse, non-public facts.

177.   At the time of the Insider Selling Defendants' stock sales, the materially adverse facts detailed herein the Covered Conduct was information not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Allergan shares at that time.

178.   The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse, non-public information concerning the Covered Conduct and thus sold their Allergan common stock in California in violation of California Corporations Code Section 25402.

179.   Pursuant to California Corporations Code Section 25502.5, the Insider Selling Defendants, and each of them, are liable to Allergan for damages in an amount up to three times the difference between the price at which Allergan common stock was sold by the Insider Selling Defendants, and each of them, and the market value which that Allergan common stock would have had at the time of the sale if the information (i.e. the Covered Conduct) known to the Insider Selling Defendants, and

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1  each of them, had been publicly disseminated prior to that time and a reasonable time
2  had elapsed for the market to absorb the information.

3      180.  At all relevant times, Allergan's common stock has been held by more
4  than 500 shareholders of record.  Allergan has assets in excess of $7 million.

5      181.  Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

6                                    **COUNT VI**
7  **Against the Insider Selling Defendants for Breach of Fiduciary Duties for
   Insider Selling and Misappropriation of Information**
8
9      182.  Plaintiffs incorporate by reference and reallege each and every allegation
   set forth above, as though fully set forth herein.
10
11     183.  At the time of the stock sales set forth herein, the Insider Selling
12  Defendants knew the adverse, non-public information about the Covered Conduct, as
   described above, and sold Allergan common stock on the basis of such information.
13
14     184.  The adverse, non-public information about the Covered Conduct
15  described above was proprietary non-public information concerning Allergan's
   compliance with legal and regulatory requirements, its fiscal condition and future
16
   business prospects.  Such information was a proprietary asset belonging to the
17
   Company, which the Insider Selling Defendants used for their own benefit when the
18
   sold their Allergan common stock as set forth herein.
19
20     185.  At the time of the Allergan stock sales alleged herein, the Insider Selling
21  Defendants knew that they were causing Allergan to engage in the Covered Conduct.
   The Insider Selling Defendants sales of their personal Allergan stock while in
22
   possession and control of this material, non-public adverse information was a breach of
23
   their fiduciary duties of good faith, honesty and loyalty.
24
25     186.  Due to the fact that the use of the Company's proprietary information for
26  their own gain constitutes a breach of the fiduciary duties owed to Allergan and its
   shareholders by the Insider Selling Defendants, the Company is entitled to the
27

28
                                    - 62 -

imposition of a constructive trust on any profits obtained by the Insider Selling Defendants as a result of their stock sales.

187.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

### COUNT VII
**Against the Defendants for Breach of Fiduciary Duty in violation of California Corporations Code §309**

188.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

189.   The wrongful conduct alleged herein (including the Covered Conduct and Criminal Conduct) was continuous, connected, and was on-going throughout the relevant time period. The wrongful conduct resulted in continuous, connected, and on-going harm to the Company.

190.   As alleged in detail herein, the Defendants, by reason of their positions as officers and directors of Allergan and because of their ability to control the business and corporate affairs of Allergan, owed Allergan fiduciary obligations of good faith and loyalty, and were and are required to use their utmost ability to control and manage Allergan in a fair, just, honest, and equitable manner.

191.   The Defendants violated their fiduciary duties of loyalty and good faith by failing in their enumerated duties which caused the violations of federal law (including the Covered Conduct and Criminal Conduct) that led to the Civil and Criminal Settlements of $600 million.

192.   The Defendants further violated their fiduciary duty of loyalty by permitting a Company-wide business strategy which involved various violations of federal laws, including the Covered Conduct and the Criminal Conduct.

193.   As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

194.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

## COUNT VIII
### Against the Proxy Defendants for Violations of Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 Promulgated Thereunder, Based Upon Material Misstatements in and Omissions from Allergan's Proxy Statements

195.   Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

196.   The Proxy Defendants caused Allergan to issue the Proxy Statements to solicit shareholder votes for the election of directors and, with respect to the 2008 Proxy Statement, for approval of the 2008 Incentive Award Plan.

197.   As alleged in detail above, these Proxy Statements contained materially inaccurate and incomplete disclosures, including by omitting to disclose:

(i)   the extent to which the Company's financial results depended on the Company's off-label marketing of Botox, which exposed the Company and its shareholders to tremendous regulatory, reputational, and financial risk;

(ii)   the nature of the Board's performance of their duties under the charters of the Board's various committees, including the reason for the then-current directors' decision to allow continued off-label and otherwise improper marketing despite the risks to the Company, its shareholders, or its patients;

(iii)   the numerous instances in which the Board was informed of legal compliance violations, including the Covered Conduct and Criminal Conduct, concerning the unlawful marketing of Allergan drugs; and

(iv)   the numerous instances in which the Board was informed of legal compliance violations, including the Covered Conduct and Criminal Conduct, concerning the unlawful marketing of Allergan drugs.

198.   The inaccuracies and omissions in each of the Proxy Statements concerned matters of material importance to the Company and were material to shareholders in response to the solicitations embodied in each Proxy Statement. The Proxy Statements were an essential link in defendants' conscious disregard for

- 64 -

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

1   Allergan's known illegal sales and promotion practices, as disclosure to the

2   shareholders of the truth would have brought an end to shareholders' endorsement of

3   the Proxy Defendants as fiduciaries and termination of the Company's compensation

4   policies.

5       199.   The Proxy Defendants' failure to include these material facts in the Proxy

6   Statements rendered the Proxy Statements materially inaccurate and incomplete, in

7   violation of Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9

8   thereunder.

9       200.   As a direct and proximate result of the issuance of the materially

10  inaccurate and incomplete Proxy Statements, Allergan suffered direct and significant

11  damages in the form of, *inter alia*, the perpetuation of the widespread misconduct (i.e.

12  the Covered Conduct and Criminal Conduct) committed in the Company's name,

13  substantial fines and penalties inflicted on the Company for this misconduct, and

14  substantial additional liabilities related to the Civil Qui Tam Actions, the Criminal

15  Action, and other lawsuits and investigations, as well as significant expenses related

16  thereto.   The Company was also directly damaged by the enactment of the 2008

17  Incentive Award Plan, which enactment was likewise solicited by the materially

18  inaccurate and incomplete 2008 Proxy Statement.   Accordingly, the harm to the

19  Company includes:

20      (a)   The $600 million (plus any applicable interest) paid in

21  connection with the Civil and Criminal Settlements;

22      (b)   Damages and the costs of legal expenses to defend against

23  the widespread illegal conduct in which the Defendants caused Allergan to engage,

24  including the conduct giving rise to the Civil Qui Tam Actions, the Criminal Action,

25  and other suits and investigations relating to the Covered Conduct and Criminal

26  Conduct; and

27      (c)   Loss of Allergan's market value due to its loss of reputation

28  and goodwill.

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

201. In connection with the improper acts alleged under this count, the Proxy Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, or the facilities of a national securities exchange.

202. This count is only alleged against the Proxy Defendants as to those proxies that were issued during their terms as directors on the Board.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand for a judgment as follows:

A. Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B. Directing Allergan to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Allergan and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Allergan to nominate at least three candidates for election to the Board;

3. proposal to ensure the accuracy of the qualifications of Allergan's directors, executives, and other employees; and

4. a proposal to strengthen Allergan's internal controls over its marketing and sales processes;

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

C.     An Order invalidating the election of directors to the Board approved based on the misleading Proxy Statements;

D.     An order invalidating the authorization of the 2008 Incentive Award Plan approved based on the misleading 2008 Proxy Statement;

E.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting defendants' assets so as to assure that plaintiffs on behalf of Allergan has an effective remedy;

F.     Awarding to Allergan restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.     Awarding to plaintiffs reasonable attorneys' fees, consultant and expert fees, costs, and expenses; and

H.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: November 1, 2010

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
ARSHAN AMIRI .

BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92010
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991
brobbins@robbinsumeda.com
farroyo@robbinsumeda.com
aamiri@robbinsumeda.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS

- 67 -

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

TRAVIS E. DOWNS III
DAVID W. MITCHELL
BENNY C. GOODMAN III
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
darrenr@rgrdlaw.com
travisd@rgrdlaw.com
davidm@rgrdlaw.com
bennyg@rgrdlaw.com
bomara@rgrdlaw.com

THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 794-1441
Facsimile: (858) 794-1450
kah@weiserlawfirm.com

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2677
Facsimile: (610) 225-2678
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jjc@weiserlawfirm.com

Lead Counsel for Plaintiffs

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY GLENN
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

LAW OFFICE OF DEBRA S.
GOODMAN P.C.
DEBRA S. GOODMAN
1301 Skippack Pike
Suite 7A #133
Blue Bell, PA 19422
Telephone: (610) 277-6057
Facsimile: (484) 231-1922

Additional Counsel for Plaintiff Willa
Rosenbloom

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

LEPOLD KUVIN, P.A.
WILLIAM C. WRIGHT
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 514-1400
Facsimile: (561) 514-1401
wwright@leopoldkuvin.com

Additional Counsel for Plaintiff Daniel
Himmel

SUGERMAN & SUSSKIND
ROBERT SUGARMAN
PEDRO A. HERRERA
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: (305) 529-2801
Facsimile: (305) 447-8115

Additional Counsel for Plaintiffs
Pompano Beach Police & Firefighters'
Retirement System and Western
Washington Laborers-Employers
Pension Trust

543616_9

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice Lists.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 1, 2010.

BRIAN J. ROBBINS

VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT

## VERIFICATION OF ROBERT B. WEISER

I, Robert B. Weiser, hereby verify that I am a principal of The Weiser Law Firm, P.C., counsel for plaintiff Willa Rosenbloom in this action, that I have read the foregoing Verified Shareholder Derivative Consolidated Complaint, that to the best of my knowledge, information and belief, the allegations contained therein are true, and that I am authorized to submit this verification on behalf of Willa Rosenbloom. This verification is made by me as plaintiff Willa Rosenbloom's counsel rather than by plaintiff Willa Rosenbloom, because Willa Rosenbloom is currently out-of-state. As soon as possible, a verification personally made by Willa Rosenbloom will be submitted to the Court.

Date: 11/1/10

**ROBERT B. WEISER**

<u>VERIFICATION</u>

I, Brian J. Robbins, hereby declare as follows:

I am a member of the law firm of Robbins Umeda LLP, counsel for plaintiff in the Allergan Inc. action. I have read the foregoing Verified Shareholder Derivative Consolidated Complaint for Violations of Federal Securities Laws, Violations of California Corporations Code, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this November 1, 2010, at San Diego, California

BRIAN J. ROBBINS

## VERIFICATION

I hereby declare the following:

1.      I am one of the attorneys for plaintiff Pompano Beach Police & Firefighters' Retirement System in this action.  This Verification is based upon my personal knowledge and I would competently testify to the statements contained herein if called upon as a witness.

2.      I have knowledge of the facts stated in the Complaint and such facts are true and correct.  I also have information respecting all other facts stated, and with respect to all such facts, I believe them to be true and they are true to the best of my information and belief.

3.      I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Verification on November 1, 2010, at San Diego, California.

DATED:   11/1/10

BENNY C. GOODMAN III

384812_1

## VERIFICATION

I hereby declare the following:

1.      I am one of the attorneys for plaintiff Western Washington Laborers – Employers Pension Trust in this action.  This Verification is based upon my personal knowledge and I would competently testify to the statements contained herein if called upon as a witness.

2.      I have knowledge of the facts stated in the Complaint and such facts are true and correct.  I also have information respecting all other facts stated, and with respect to all such facts, I believe them to be true and they are true to the best of my information and belief.

3.      I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Verification on November 1, 2010, at San Diego, California.

DATED: 11/1/10

BENNY C. GOODMAN III

384812_1

CM/ECF - California Central District-
Case 8:10-cv-01352-DOC -MLG   Document 39-2   Filed 11/01/10  Page 27 of 31   Page ID
#:672

Page 1 of 1

# Mailing Information for a Case 8:10-cv-01352-DOC -MLG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arshan Amiri**
  aamiri@ruflaw.com

- **Felipe J Arroyo**
  farroyo@robbinsumeda.com,notice@robbinsumeda.com,mozaki@robbinsumeda.com

- **Kristopher Price Diulio**
  kdiulio@gibsondunn.com,dfkennedy@gibsondunn.com,crussell@gibsondunn.com

- **Rusty E. Glenn**
  rusty@shumanlawfirm.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com

- **Brian J Robbins**
  notice@robbinsumeda.com

- **Kip B Shuman**
  kip@shumanlawfirm.com

- **Robert B Weiser**
  rw@weiserlawfirm.com

- **Lillie A Werner**
  lwerner@irell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeffrey J. Ciarlanto
The Weiser Law Firm  PC
121 North Wayne Ave  Suite 100
Wayne, PA 19087

Debra S Goodman
Law Office of Debra S Goodman PC
1301 Skippack Pike  Suite 7A - 133
Blue Bell, PA 19422

Brett Steckler
The Weiser Law Firm PC
121 North Wayne Avenue
Suite 100
Wayne, PA 19087
```

CM/ECF - California Central District-          Page 1 of 1
Case 8:10-cv-01352-DOC -MLG   Document 39-2   Filed 11/01/10   Page 28 of 31   Page ID
#:673

# Mailing Information for a Case 8:10-cv-01417-DOC -MLG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arshan Amiri**
  aamiri@ruflaw.com

- **Felipe J Arroyo**
  farroyo@robbinsumeda.com,notice@robbinsumeda.com,mozaki@robbinsumeda.com

- **Kristopher Price Diulio**
  kdiulio@gibsondunn.com,dfkennedy@gibsondunn.com,crussell@gibsondunn.com

- **Brian J Robbins**
  notice@robbinsumeda.com

- **Lillie A Werner**
  lwerner@irell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
William C Wright
Leopold Kuvin, P A
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
```

# Mailing Information for a Case 8:10-cv-01449-DOC -MLG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arshan Amiri**
  aamiri@ruflaw.com

- **Felipe J Arroyo**
  farroyo@robbinsumeda.com,notice@robbinsumeda.com,mozaki@robbinsumeda.com

- **Kristopher Price Diulio**
  kdiulio@gibsondunn.com,dfkennedy@gibsondunn.com,crussell@gibsondunn.com

- **Travis E Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Benny C Goodman , III**
  bgoodman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian Oliver O'Mara**
  bomara@rgrdlaw.com

- **Brian J Robbins**
  notice@robbinsumeda.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Lillie A Werner**
  lwerner@irell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Pedro A Herrera
Sugarman and Susskind
100 Miracle Mile Suite 300
Coral Gables, FL 33134

Robert Sugarman
Sugarman and Susskind
100 Miracle Mile Suite 300
Coral Gables, FL 33031
```

ALLERGEN DERIVATIVE
Service List - 10/20/2010  (10-0184)
Page 1 of  2

**Counsel For Defendant(s)**

John C. Hueston
Glenn K. Vanzura
Lillie A. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
   310/277-1010
   310/203-7199 (Fax)

**Counsel For Plaintiff(s)**

Debra S. Goodman
Law Office of Debra S. Goodman P.C.
1301 Skippack Pike, Suite 7A #133
Blue Bell, PA  19422
   610/277-6057
   484/231-1922 (Fax)

William C. Wright
Leopold Kuvin P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
   561/515-1400
   561/515-1401 (Fax)

Travis E. Downs III
David W. Mitchell
Benny C. Goodman III
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
   619/231-1058
   619/231-7423 (Fax)

Brian J. Robbins
Felipe J. Arroyo
Arshan Amiri
Robbins Umeda LLP
600 B Street, Suite 1900
San Diego, CA  92101
   619/525-3990
   619/525-3991 (Fax)

Robert Sugarman
Pedro A. Herrera
Sugarman & Susskind
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
   305/529-2801
   305/447-8115 (Fax)

Kip B. Shuman
Rusty E. Glenn
The Shuman Law Firm
885 Arapahoe Avenue
Boulder, CO  80302
   303/861-3003
   303/484-4886 (Fax)

ALLERGEN DERIVATIVE
Service List - 10/20/2010   (10-0184)
Page 2 of 2

Kathleen A. Herkenhoff
The Weiser Law Firm, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA  92130
  858/794-1441
  858/794-1450 (Fax)

Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
The Weiser Law Firm, P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA  19087
  610/225-2677
  610/225-2678 (Fax)

**Courtesy Copy**

Jeffrey H. Reeves
Kristopher P. Diulio
Wayne W. Smith
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612-4412
  949/451-3800
  949/451-4220 (Fax)