1 | IRELL & MANELLA LLP
2 | John C. Hueston (164921)
jhueston@irell.com
3 | Daniel P. Lefler (151253)
dlefler@irell.com
4 | Lillie A. Werner (261250)
lwerner@irell.com
5 | 1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
6 | Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

7 | Attorneys for Nominal Defendant Allergan, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SOUTHERN DIVISION

| In re ALLERGAN, INC. SHAREHOLDER DERIVATIVE LITIGATION | Master File No. SACV10-01352-DOC (MLGx) |
| --- | --- |
| | **NOMINAL DEFENDANT ALLERGAN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** |
| This Document Relates To: | |
| ALL ACTIONS | Date:   February 28, 2011 |
| | Time:   8:30 a.m. |
| | Ctrm:   9D |
| | Judge:   Hon. David O. Carter |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ..................................................................................3

      A.   General Background ................................................................3

      B.   Consolidated Complaint..........................................................6

III.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE PARTICULARIZED FACTS DEMONSTRATING THE BOARD WOULD BE INCAPABLE OF IMPARTIALLY EVALUATING A DEMAND ...................................9

      A.   The Complaint Does Not Allege Particularized Facts Showing That the Directors Face a Substantial Likelihood of Liability for Off-Label Marketing ..................................................12

           1.   Profits From Legal Off-Label Sales Do Not Impute Board Knowledge of Illegal Off-Label Marketing..................18

           2.   Unrelated FDA Communications Do Not Impute Knowledge of Illegal Off-Label Marketing to the Entire Board ......................................................................19

      B.   The Complaint Also Does Not Allege Particularized Facts Showing That Allergan's Directors Face a Substantial Likelihood of Liability Sufficient to Excuse Demand on Other Claims ..................................................................................21

      C.   Plaintiffs' Generic Allegations of Director Interest and Non-Independence Are Insufficient to Excuse Demand ...................24

           1.   Plaintiffs Fail to Allege Any Alleged Conflict Affected a Majority of the Board ............................................25

           2.   Plaintiffs' Allegations About the CEO Do Not Excuse Demand .......................................................................25

           3.   Plaintiffs' Allegations About the Board Members' Business Connections Do Not Excuse Demand.......................26

           4.   Plaintiffs' Allegations About the Company's Litigation Positions Do Not Excuse Demand..........................26

IV.   CONCLUSION ..................................................................................27

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- i -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Allison v. Gen. Motors Corp.*,
604 F. Supp. 1106 (D. Del. 1985) ......................................................... 26, 27

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ....................................................................... passim

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ............................................................................ 10

*Baca ex rel. Nominal Defendant Insight Enters., Inc. v. Crown*,
No. 09-1283, 2010 WL 2812712 (D. Ariz. July 12, 2010) .............. 10, 19, 25

*Blasband v. Rales*,
971 F.2d 1034 (3d Cir. 1992) ................................................................ 13

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ...................................................................... 16, 25

*Decker v. Clausen*,
15 Del. J. Corp. L. 1022, 1989 WL 133617 (Del. Ch. Nov. 6,
1989) ....................................................................................................... 27

*Fagin v. Gilmartin*,
432 F.3d 276 (3d Cir. 2005) .................................................................. 26

*Gagliardi v. TriFoods Int'l, Inc.*,
683 A.2d 1049 (Del. Ch. 1996) ............................................................. 23

*Gebhart v. SEC*,
595 F.3d 1034 (9th Cir. 2010) ............................................................... 10

*Graham v. Allis-Chalmers Mfg. Co.*,
188 A.2d 125 (Del. 1963) ...................................................................... 14, 15, 20

*Grobow v. Perot*,
539 A.2d 180 (Del. 1988) ...................................................................... 25

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003) ............................................................... 12, 16

*Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*,
No. 06-6935, 2007 WL 5255035 (C.D. Cal. Aug. 23, 2007) ................ 10

In re *Accuray, Inc. S'Holder Deriv. Litig.*,
No. 09-5580, 2010 WL 3447615 (N.D. Cal. Aug. 31, 2010) ................ 16

In re *Caremark Int'l Inc. Deriv. Litig.*,
698 A.2d 959 (Del. Ch. 1996) ......................................................... 14, 15, 16, 17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- ii -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

                                                                                          Page(s)

In re *CNET Networks*,
    483 F. Supp. 2d 947 (N.D. Cal. 2007) ...................................................... 19

In re *Computer Scis. Corp. Deriv. Litig.*,
    244 F.R.D. 580 (C.D. Cal. 2007) .......................................................9, 13, 20

In re *Computer Scis. Corp. Deriv. Litig.*,
    No. 06-5288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007)........................22

In re *Dow Chem. Co. Deriv. Litig.*,
    No. 4349, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ...................................26

In re *E.F. Hutton Banking Practices Litig.*,
    634 F. Supp. 265 (S.D.N.Y. 1986).............................................................18

In re *Finisar Corp. Deriv. Litig.*,
    542 F. Supp. 2d 980 (N.D. Cal. 2008) ......................................................21

In re *Finisar Corp. Deriv. Litig.*,
    No. 06-7660, 2009 WL 3072882 (N.D. Cal. Sept. 22, 2009) ................23, 24

In re *Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. Ch. 2008) ..................................................................23

In re *Sagent Tech., Inc., Deriv. Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...............................................11, 24

In re *Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999).............................................................10, 11, 13

In re *Teledyne Defense Contracting Deriv. Litig.*,
    849 F. Supp. 1369 (C.D. Cal. 1993)............................................................21

In re *Verisign, Inc., Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......................................................26

In re *W. Nat'l Corp. S'holders Litig.*,
    No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ............................24

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
    503 F. Supp. 2d 1325 (D. Ariz. 2007)....................................................18, 25

*King v. Baldino*,
    648 F. Supp. 2d 609 (D. Del. 2009) .....................................................passim

*Laborers Int'l Union of N. Am. v. Bailey*,
    310 F. App'x. 128 (9th Cir. 2009) ...............................................................9

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993)......................................................................passim

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- iii -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

Page(s)

*Scimeca v. Kim,*
    No. 06-0562, 2007 WL 7087065 (D. Ariz. Aug. 29, 2007)..........................25

*Spiegel v. Buntrock,*
    571 A.2d 767 (Del. 1990)................................................................9

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
    911 A.2d 362 (Del. 2006)..............................................................14

*United States v. Dotterweich,*
    320 U.S. 277 (1943) ....................................................................14

*Wood v. Baum,*
    953 A.2d 136 (Del. 2008)..............................................................22

## Statutes

DEL. CODE ANN. tit. 8, § 102(b)(7) (2010) ...................................13, 15, 16

DEL. CODE ANN. tit. 8, § 141(a) (2010) ................................................9

## Rules

Del. Ch. Ct. R. 23.1(a) ..................................................................10

Fed. R. Civ. P. 23.1.......................................................................9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- iv -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**      **INTRODUCTION**[1]

3       The four shareholders of Allergan, Inc. ("Allergan" or the "Company") who

4 filed this consolidated lawsuit ("Plaintiffs") cannot usurp the decision-making

5 authority of the Company's board of directors with the conclusory, boilerplate

6 allegations of demand futility in their Consolidated Complaint ("Complaint").  The

7 derivative claims asserted in this case belong to Allergan, not to Plaintiffs.  Before

8 filing this case, Plaintiffs did not ask that the board investigate or pursue these

9 claims.  Having eschewed a pre-suit demand, Plaintiffs assumed the heavy burden of

10 pleading that such a demand would have been futile because a majority of Allergan's

11 current twelve-member board has conflicts of interest that would prevent the board

12 from exercising disinterested and independent business judgment in evaluating the

13 Company's claims.  The Complaint does not come close to meeting this standard,

14 and this case should therefore be dismissed.

15       This case stems from two recent settlements that Allergan entered into with

16 the federal government concerning alleged "off-label" marketing of Allergan's

17 product Botox®.  In the first settlement, Allergan pled guilty to a strict liability

18 regulatory offense that occurred from 2000 to 2005 and paid a fine of approximately

19 $375 million.  In the second settlement, the Company paid $225 million to resolve

20 civil claims that it received improper reimbursement from federal health care

21 programs for Botox®, including Medicare and Medicaid.  Notably, neither

22 settlement involved claims against Allergan's board members.  Neither settlement

23

24 _____

25       [1] As detailed in its concurrently filed motion to stay, Allergan is requesting, pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800

26 (1976), that the Court stay this consolidated federal action in its entirety in favor of the earlier-filed and substantially similar action currently pending in the Delaware

27 Chancery Court.  As a result, the Court need only address Allergan's motion to

28 dismiss at this time in the event it denies Allergan's motion to stay.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1 contained any findings that the individual directors engaged in any wrongdoing, nor
2 did the government take action against any of Allergan's board members personally.

3    Nevertheless, in this case Plaintiffs argue that a pre-suit demand would have
4 been futile because a majority of the current board has a significant risk of personal
5 liability stemming from the "off-label" marketing issues.  Plaintiffs do not support
6 this sweeping claim with specific allegations, director by director, showing any
7 personal involvement with any of the challenged marketing practices.  Instead,
8 Plaintiffs' demand futility claim is based on two general points:  First, that the
9 Allergan board knew that a large portion of Botox® sales were for off-label uses.
10 Second, that several unrelated letters received from the FDA somehow render the
11 directors personally liable for off-label marketing problems.  Neither of these points
12 is sufficient to establish demand futility.

13    The mere fact that a large portion of Allergan's Botox® sales were for off-
14 label *uses* does not come close to establishing that Allergan's board members have a
15 serious threat of personal liability for alleged off-label *marketing*.  As Plaintiffs
16 acknowledge, doctors are free to prescribe drugs for off-label uses, and drug
17 companies are equally free to make off-label sales.  While federal law proscribes
18 off-label *marketing*, the Complaint never alleges that any Allergan director was
19 personally involved in any prohibited activities.  Instead, the Complaint rests on the
20 sweeping conclusion that the mere fact of Allergan's off-label sales must mean that
21 the board members have personal liability for proscribed marketing activities.
22 Conclusions, however, are insufficient as a matter of law to establish demand
23 futility, which requires particularized allegations of supposed wrongdoing by
24 directors personally.

25    Nor do the four unrelated FDA letters give rise to a threat of personal liability
26 to Allergan's directors.  First and foremost, these letters simply do not refer to
27 alleged off-label marketing activities, and there is therefore no basis for any
28 inference that these letters somehow alerted the board members to supposed off-

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 2 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

label marketing problems for Botox®.  Furthermore, Plaintiffs never allege whether or how the letters reached the board, which of the current board members received notice of these letters (many of them were not even at the Company when the letters arrived), or what the board did in response.  As a result, the mere fact of the FDA letters is also insufficient to put the directors on notice of off-label Botox® marketing or to otherwise give rise to any claim for breach of duty.

In short, the Complaint is little more than a dressed up attempt at bootstrapping personal liability of the individual Allergan board members from the recent settlement with the government.  It is well-settled, however, that such hollow claims of personal liability are insufficient as a matter of law to establish demand futility.  Corporate law protects the interests of *all* shareholders by preserving for the shareholder-elected board of directors the power to determine whether corporate litigation against individuals is warranted when alleged problems develop within companies.  These questions of business judgment cannot be usurped by litigious individual shareholders (and their lawyers) absent specific allegations of wrongdoing by the directors personally.  Because the Complaint is devoid of any such allegations, this case must be dismissed.

## II.   BACKGROUND

### A.   General Background

Allergan is a global health care company renowned for its specialty pharmaceuticals.  (Consolidated Compl. ¶ 26(a).)  Allergan maintains executive offices in Irvine, California and is incorporated under the state laws of Delaware. (*Id.* ¶ 26.)  Allergan's drugs, Botox® (onabotulinum toxin A) and Botox® Cosmetic (onabotulinum toxin A), have been two of the Company's top-selling products for nearly a decade, and have comprised a major source of revenue for the Company. (*Id.* ¶ 65.)  Though Botox® is widely known for its cosmetic use, it is FDA-approved for several therapeutic indications and sales of Botox® therapeutic have constituted a significant portion of Allergan's Botox® sales.  (*Id.* ¶¶ 63, 67.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 3 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

During the years 2000 to 2009, Allergan's total net sales of Botox® were approximately $240 million, $310 million, $440 million, $564 million, $705 million, $831 million, $982 million, $1.21 billion, $1.3 billion, and $1.31 billion, respectively, or between 24%-36% of the Company's total net sales across all product lines.  (*Id.*)  Botox® therapeutic represented 60% of the Company's total Botox® sales from 2002 to 2003, and a majority of those sales were for treatment indications that had not been formally approved by the FDA.  (*Id.* ¶¶ 67-68.)  In addition to the approved indications, Allergan filed applications with the FDA for other uses.  (*See id.* at ¶ 63.)

Although the FDA approves drugs for particular uses, doctors are permitted to make prescriptions for uses the FDA has not approved, or "off-label" uses.  (*Id.* ¶ 4.)  Thus, "off-label" uses are not illegal and pharmaceutical companies are permitted to grow revenue based on "off-label" prescriptions.  (*Id.*)  Nevertheless, the Food, Drug, and Cosmetics Act ("FDCA") prohibits companies from promoting or marketing off-label uses.  The Act authorizes criminal and civil penalties, monetary fines, and regulatory sanctions for violations.  (*Id.* ¶¶ 4-5.)

Allergan was "keenly aware of the prohibitions in the FDCA and other applicable law concerning promoting and marketing a drug or biologic in interstate commerce for off-label uses," and developed internal systems to address this regulatory balance.  (*Id.* ¶ 75.)  Allergan expended significant time and financial resources to put into place compliance mechanisms.  (*Id.* ¶ 78.)  Allergan's Code of Business Conduct and Ethics committed the Company to the ethical and legal sales of its products.  (*Id.* ¶ 50.)  Allergan enacted written standards and procedures for regulatory compliance, which addressed product labeling and marketing, and employed twelve full-time employees in its Compliance Department.  (*Id.* ¶¶ 75-76.)  Allergan also discussed the promotional ban on off-label marketing and its related business risks in the Company's SEC filings.  (*Id.* ¶ 77.)  The Company warned that "[if] our promotional activities fail to comply with the FDA's . . . regulations or

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 4 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

guidelines, we may be subject to warnings from, or enforcement action by, the FDA or another enforcement agency."  ((*Id.*) (citing Allergan Form 10-K, December 31, 2004 (*see* Declaration of Lillie A. Werner, ¶ 5, Exhibit 4 at 102) and noting similar language appears in the Company's subsequent annual reports).)

Notwithstanding its compliance efforts, Allergan came under investigation for its marketing of Botox® therapeutic.  (*See* Consolidated Compl. at ¶ 112.)  On September 1, 2010, the U.S. Department of Justice (the "DOJ") announced a $600 million settlement (the "Settlement Agreement") to resolve civil and criminal claims against Allergan concerning the Company's alleged promotion of Botox® for unapproved uses.  (*Id.* ¶ 2.)  Allergan resolved the criminal claims by pleading guilty to a strict-liability misdemeanor for misbranding Botox® in violation of the FDCA from January 1, 2000 to December 31, 2005, and paying a $375 million fine. (*Id.* at ¶ 14.)  Without admitting wrongdoing, the Company resolved the civil claims of improper government reimbursement for a payment of $225 million.  (*See* Declaration of Lillie A. Werner, ¶ 2,  Exhibit 1 at 10.) ("Neither this Agreement, its execution, nor the performance of any payment, nor the fact of any settlement, is intended to be, or shall be construed as an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute by Allergan.")  Allergan also entered into a five year corporate integrity agreement with the Department of Health and Human Services' Office of the Inspector General (the "OIG"), whereby the Company agreed to submit compliance reports to the OIG and undertake additional compliance related activities, such as additional monitoring, auditing, and training. (*See* Consolidated Compl. ¶¶ 12-13.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 5 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

The Settlement Agreement contains no findings that any of the board members personally engaged in any wrongdoing, nor did the government take any action against any Allergan director personally.[2]

### B.   Consolidated Complaint

The Complaint asserts claims on behalf of Allergan against current and former members of the board of directors for failing to prevent or stop the alleged off-label marketing violations that resulted in the Settlement Agreement.  (*See* Consolidated Compl. ¶¶ 22-25, 27-43.)

Drawing from the Criminal Information and a government brief in support of the settlement (Declaration of Lillie A. Werner, ¶¶ 3-4, Exhibits 2-3), the body of the Complaint repeats the allegations of corporate misconduct recited in the settlement:  "Allergan targeted off-label specialties," "Allergan promoted Botox when the efficacy of the drug had not been demonstrated," "Allergan coached and encouraged doctors to diagnose headache and pain as 'symptoms' of cervical dystonia [an FDA approved use]," "Allergan used a variety of tactics to carry out its unlawful, off-label marketing scheme," and "Allergan's unlawful marketing campaign drove the tremendous growth of off-label uses of Botox."  (Consolidated Compl. Headings (emphasis added).)

Given that Plaintiffs assert claims against Allergan's board members personally, the Complaint is most notable for what it does not allege.  Plaintiffs do not allege any facts showing that any of the current twelve board members personally engaged in any wrongdoing.  For example, Plaintiffs do not allege that the board ever approved of an off-label marketing campaign or that it was told of illegal marketing activities and looked the other way.  Indeed, the Complaint does not specify any particular act by the board at any particular point in time that

---

[2] Notably, after entry of the Settlement Agreement, Allergan secured FDA approval for migraine headaches, one of the most notable, formerly "off-label" uses of Botox® therapeutic.  (*See* Declaration of Lillie A. Werner, ¶ 7, Exhibit 6 at 118.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047                                      - 6 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1  constituted improper off-label marketing conduct.  This is important because
2  different directors joined the board at different times – indeed, four of the current
3  directors joined the board in 2005 or later.  (*See id.* ¶¶ 35-38 (directors Dunsire,
4  Hudson, Ingram and Lavigne).)

5       The Complaint's off-label marketing allegations concern the Company's – not
6  individual director's – conduct.  Similarly, Plaintiffs do not allege that the
7  Settlement Agreement contains any references to any supposed wrongdoing by
8  individual directors personally.  Nor do Plaintiffs allege that the board failed to
9  establish adequate controls.  (*See id.* ¶¶ 75-76, 141 (admitting the Company had
10  numerous systems and internal departments, written policies, and "robust internal
11  controls" to address off-label marketing and regulatory guidelines).)  Indeed, the
12  government specifically noted that its "investigation revealed that Allergan had been
13  working (and at times succeeding) to improve its compliance culture and
14  compliance plan." (Declaration of Lillie A. Werner, ¶ 4, Exhibit 3 at 85.)  Plaintiffs
15  further acknowledge that the Company disclosed to shareholders that FDCA
16  compliance was an important business risk.  (*See* Consolidated Compl. ¶ 77 ("[T]he
17  FDA does restrict a manufacturer's communications on the subject of off-label use.
18  Companies cannot actively promote FDA-approved pharmaceutical, biologic or
19  medical device products for off-label uses . . . .[if] our promotional activities fail to
20  comply with the FDA's . . . regulations or guidelines, we may be subject to warnings
21  from, or enforcement action by, the FDA or another enforcement agency.").)

22       Plaintiffs admit that they did not make a demand on the board prior to
23  initiating this litigation, choosing instead to argue that a pre-suit demand would have
24  been futile.  (*Id.* ¶¶ 126-54.)  Plaintiffs' principal argument is that the board cannot
25  impartially consider a demand because the board members themselves face a
26  substantial likelihood of liability.  (*Id.*)  Unable to allege specific facts
27  demonstrating wrongdoing by the directors personally, Plaintiffs allege that such
28  wrongdoing should be inferred for two main reasons.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 7 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

First, Plaintiffs claim the board members had constructive knowledge of the Company's illegal marketing activities because "Botox had only four FDA approved indications during this timeframe, all of which are rare or rarely require Botox treatment, [so] it was impossible for the Company to hit [sales] numbers without significant off-label sales." (*Id.* ¶ 103.)  Off-label sales, however, cannot be confused with off-label marketing.  While the board – not to mention Allergan investors – was presumably aware that Allergan made substantial Botox® sales for off-label uses, the Complaint is silent about any wrongful activity by the board members personally regarding impermissible marketing.

Second, Plaintiffs allege that Allergan received five letters from the FDA over the years.  Only two of these letters, however, even related to Botox®.  Nearly ten years ago, in 2001, and nearly eight years ago, in 2003, Allergan received letters claiming that its Botox® marketing materials were misleading.  (*Id.* ¶¶ 79-80.) These letters did not accuse Allergan of impermissible off-label marketing – the subject of the 2010 Settlement Agreement.  The other two letters, written in 2005 and 2009, also did not alert the Allergan board to off-label marketing problems pertaining to Botox® therapeutic, as they concern entirely different products, Lumigan® and ACZONE®.  (*Id.* ¶ 106.)  Indeed, the Complaint does not link these letters to any particular allegation that any Allergan board member knew of off-label marketing violations at Allergan.  Indeed, the Complaint does not even address whether the board members personally received notice of these letters, let alone how or when, or what they did in response.  (*See id.*)

In addition to their claim that Allergan directors can be held personally liable for off-label Botox® marketing, Plaintiffs also allege in conclusory fashion that the board members are personally liable: (i) under Section 14(a) of the Securities and Exchange Act because the Company's proxy statements did not disclose improper off-label marketing, and (ii) for waste because employees who engaged in practices that were later found to be improper were paid salaries in exchange for their

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 8 -

NOMINAL DEFENDANT ALLERGAN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

services.  In addition, Plaintiffs offer a handful of generic allegations of director interest.  (*See id.* ¶¶ 142-46 (one board member's position and compensation as a Company officer and three board members' former positions and business relationships); ¶ 151 (arguments the Company advanced in a 2009 civil declaratory relief action show board interestedness).)  None of these allegations is sufficient to establish demand futility because they are not based on particularized factual allegations of wrongdoing by the directors personally.  Accordingly, this case should be dismissed.

## III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE PARTICULARIZED FACTS DEMONSTRATING THE BOARD WOULD BE INCAPABLE OF IMPARTIALLY EVALUATING A DEMAND

Derivative claims belong to the corporation, not its shareholders.  It is "[a] cardinal precept … that directors, rather than shareholders, manage the business and affairs of the corporation."  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); DEL. CODE ANN. tit. 8, § 141(a) (2010).  "[I]n a derivative case like this one, a board of directors is entitled to a presumption that they can and should be allowed to manage the business affairs of a corporation, including the decision of whether and how to investigate errors like these and whether ultimately to bring claims on the corporation's behalf."  In re *Computer Scis. Corp. Deriv. Litig.*, 244 F.R.D. 580, 591 (C.D. Cal. 2007), *aff'd sub nom. Laborers Int'l Union of N. Am. v. Bailey*, 310 F. App'x. 128 (9th Cir. 2009) (citing *Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990)).  The shareholder-elected board of directors, not self-selected shareholders and their lawyers, generally maintains the power to decide whether the corporation's interests are best served by the pursuit of corporate claims.

Individual shareholders may seize control of corporate claims only by following the procedures set forth in Federal Rule of Civil Procedure 23.1 and under

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 9 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

state law, known as the pre-suit demand requirement.[3]  This requires that a shareholder first bring its demand to the board so that the board may exercise its right to evaluate whether prosecution of the alleged wrongdoing is in the corporation's best interest.  If the board wrongfully refuses to honor a demand, a shareholder may petition the court to pursue claims on the corporation's behalf.  If, as here, the shareholder refused to make the pre-suit demand in the first place, he or she must plead with particularity why a demand would have been futile.  *Id.*; Del. Ch. Ct. R. 23.1(a).

To survive a demand futility motion, a shareholder must allege "particularized" facts demonstrating that a demand would have been futile.  "The requirement of particularized facts means that a plaintiff's pleading burden in the demand excused context is more onerous than that required to withstand a Rule 12(b)(6) motion."  *Baca ex rel. Nominal Defendant Insight Enters., Inc. v. Crown*, No. 09-1283, 2010 WL 2812712, at *5 (D. Ariz. July 12, 2010) (internal punctuation omitted).  While all reasonable inferences from the complaint's allegations are drawn in favor of the plaintiff, only well-pled allegations of fact must be accepted as true, and conclusory allegations of law and unwarranted inferences are disregarded.  *Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*, No. 06-6935, 2007 WL 5255035, at *2 (C.D. Cal. Aug. 23, 2007).  *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) (asserting that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements").

---

[3] The substantive standards for shareholder demands are governed by the law of a company's state of incorporation.  In re *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999), *abrogation on other grounds recognized by Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) (holding that Delaware law applies in demand futility analysis when the company is incorporated in Delaware).  Because Allergan is a Delaware corporation (Consolidated Compl. ¶ 26), Delaware law applies here.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 10 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

To meet the heightened pleading requirements for demand futility, plaintiffs must allege particularized facts showing that a majority of the board members have a conflict that would render them unable to exercise independent judgment in responding to a demand.  *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (plaintiffs need to show facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand").  The board members who are relevant to the demand futility analysis are those who were on the board at the time the suit was filed.  In re *Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1095 (N.D. Cal. 2003) ("[T]he focus is on whether the board as constituted at the time of the filing of the complaint could consider the demand based on the merits of the claim, without improper forces holding sway.").

Generally speaking, the *Rales* test applies when plaintiffs do not challenge a particular action taken by the board, but rather the board's failure to take action. Under *Rales*, the shareholder must plead facts demonstrating a "substantial likelihood" of liability; "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors."  634 A.2d at 936.  The *Aronson* test applies when derivative litigation challenges particular decisions by the board (*e.g.*, refusal of a takeover offer, adoption of a poison pill, etc.), and the shareholder must allege particularized facts demonstrating director interest or raising a reasonable doubt as to whether the directors exercised proper business judgment in approving the challenged transaction.  *See* 473 A.2d at 814; *see also* In re *Silicon Graphics*, 183 F.3d 970, 989-90 (9th Cir. 1999) (affirming dismissal of derivative complaint that failed to allege demand futility with sufficient particularity).  Under either test, the Court's main inquiry is simply whether the directors face a substantial likelihood of liability – whether for their inactions under the rigorous *Caremark* standards or for their alleged actions protected by the business judgment rule.  *See Aronson*, 473

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 11 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

A.2d at 815 (holding that only in "rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists"); *see also Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) (observing that *Rales* and *Aronson* tests involve the same inquiries and concerns).

In this case, the *Rales* test applies because the thrust of Plaintiffs' case is that the board members face personal liability for failing to detect and prevent Allergan's alleged off-label marketing problems concerning Botox®.  (Consolidated Compl. at ¶¶ 126, 132, 135.)  *See also King v. Baldino*, 648 F. Supp. 2d 609, 617 (D. Del. 2009) (applying the *Rales* test to allegations that a board breached its fiduciary duties after the company entered into a settlement agreement to resolve off-label marketing charges where the majority of the allegations concerned the board's failure to prevent the illegal conduct).  Plaintiffs' theory is that the current Allergan board cannot objectively decide whether to pursue litigation following the Settlement Agreement because the directors themselves are personally liable for the Company's illegal off-label marketing.  Plaintiffs also argue the majority of the board faces personal liability for proxy disclosure violations and waste resulting from approval of the CEO's compensation.  Finally, Plaintiffs offer boilerplate allegations of director interest, which are insufficient to excuse demand futility as a matter of law.  Accordingly, the Court should dismiss the Complaint.

## A.   The Complaint Does Not Allege Particularized Facts Showing That the Directors Face a Substantial Likelihood of Liability for Off-Label Marketing

Plaintiffs fail to allege particularized facts that a majority of the individual members on the current board face a substantial likelihood of personal liability so as to render the board interested in the litigation and unable to impartially evaluate the shareholder demand.  Plaintiffs only offer allegations about the Company's – not individual director's – conduct that resulted in the Settlement Agreement.  Plaintiffs

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 12 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

point to no facts showing the directors had notice of the alleged wrongdoing or were personally involved, let alone that they face a substantial threat of personal liability.

The "substantial" likelihood of liability is a key element of the test.  If a plaintiff could defeat the demand requirement merely by naming directors as defendants – and then arguing that the fact that they are defendants renders them interested in the litigation – there would effectively be no demand requirement.  *See Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir. 1992) (holding that, under Delaware law, a plaintiff may not "bootstrap allegations of futility" by pleading merely that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves").  It is well-established that "mere threats" of personal liability are insufficient to excuse demand.  *See, e.g.*, In re *Silicon Graphics*, 183 F.3d at 990 (("'[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors.'") (quoting *Aronson*, 473 A.2d at 815)).  Consequently, "a plaintiff cannot show that a director, or a whole board, is interested under the *Rales* test simply because the board approved of the transactions of which the plaintiff complains or failed to oversee subordinates who engaged in the questioned transaction."  In re *Computer Scis. Corp.*, 244 F.R.D. at 590 (citing *Rales*, 634 A.2d at 934 n.9).

Moreover, Delaware law permits corporations to adopt charter provisions that eliminate director liability for breach of the fiduciary duty of care.  *See* DEL. CODE ANN. tit. 8, § 102(b)(7) (2010).  Allergan has adopted such a provision.  (*See* Declaration of Lillie A. Werner, ¶ 6, Exhibit 5 at 110.)  Accordingly, for Allergan's board members to have a risk of personal liability, Plaintiffs would need to allege specific facts showing a breach of the duty of loyalty – generally some benefit received by a director personally, but not by the corporation – resulting from the alleged off-label Botox® marketing.  The Complaint contains no such allegations.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 13 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1    Furthermore, under long-standing Delaware law, directors will only face

2    personal liability for their company's misconduct where they affirmatively

3    authorized the conduct in bad faith or consciously failed to prevent the wrongdoing.

4    *See Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 129-30 (Del. 1963)

5    (recognizing that directors will not be held personally liable for every unfortunate

6    outcome, nor every illegal act, that occurs inside a Delaware corporation).  With no

7    allegations of actual participation, here Plaintiffs rest on a premise that has been

8    repeatedly discredited by the courts:  because the Company entered into a criminal

9    and civil settlement agreement, the individual board members must have done

10   something wrong.  (*See, e.g.*, Consolidated Compl. ¶ 133.)  *See also King*, 648 F.

11   Supp. 2d at 625-26 (rejecting demand futility allegations that the board faced

12   liability for the company's criminal settlement for off-label marketing); *Stone ex rel.*

13   *AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 373 (Del. 2006) (rejecting

14   demand futility where "plaintiffs' complaint seeks to equate a bad outcome with bad

15   faith").  This inference is especially unwarranted where, as here, the Company pled

16   guilty to a strict-liability offense that does not entail any deliberate wrongdoing.  *Cf.*

17   *United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943) (holding that FDCA

18   violations are strict-liability offenses that do not turn on awareness of or intent to

19   commit wrongdoing).

20   Plaintiffs, therefore, seek to hold the board liable for their alleged failure to

21   prevent the wrongdoing under a "failure of oversight" theory, or "*Caremark* claim,"

22   which is often described as "possibly the most difficult theory in corporation law

23   upon which a plaintiff might hope to win a judgment."  In re *Caremark Int'l Inc.*

24   *Deriv. Litig.*, 698 A.2d 959, 967, 971 (Del. Ch. 1996).  However, Plaintiffs cannot

25   plead actionable claims for oversight liability with conclusory allegations about

26   imputed knowledge of illegal misconduct simply by virtue of the Company's

27   subsequent criminal liability.  In *Caremark* itself, the Court was asked to evaluate

28   the propriety of a proposed settlement agreement resulting from claims the board

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 14 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

knowingly violated a statute or failed to monitor the company prior to the company's felony indictment and $250 million plea agreement for illegal health care practices. *Id.* at 960-61, 971.  Following well-established Delaware law, the Court refused to permit an inference of board liability by virtue of the plea agreement alone.  *See id.* at 972 ("[T]he fact that it resulted from a violation of criminal law alone does not create a breach of fiduciary duty by directors"); *see also Graham*, 188 A.2d at 130-31 (finding no board liability following the company's criminal conviction on the basis of the board's alleged failure "to ferret out wrongdoing which they have no reason to suspect exists").  The *Caremark* Court also rejected that the Board "should have known" about the illegal misconduct when the record demonstrated the company had functioning internal controls and lacked evidence that the board knew about the activities.  698 A.2d at 971-72 (holding that imputing board knowledge of all company activities "is inconsistent with the scale and scope of efficient organization size in this technological age").  Accordingly, the Court held that the fiduciary claims alleged were "extremely weak" to demonstrate the board faced liability and that "those claims find no substantial evidentiary support in the record and quite likely were susceptible to a motion to dismiss."  *Id.* at 971 (approving the "modest" settlement and reducing proposed attorneys' fees in light of the weak claims).

     *King v. Baldino* is an instructive application of *Caremark* to a set of facts very similar to those alleged in the instant action.  In *King*, the Court rejected that plaintiff had pled demand futility with the requisite particularity where, following the company's criminal plea for off-label marketing, plaintiff alleged that the company's board breached its fiduciary duties by "choosing to implement a marketing scheme that completely ignored FDA mandates" and failing to oversee the company's sales and marketing practices.  *See* 648 F. Supp. 2d at 623-24.  The company had an exculpatory clause pursuant to Delaware Code Section 102(b)(7), so plaintiff had to plead a non-exculpated breach of the duty of loyalty to state a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 15 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

claim for relief.  *See id.* at 620 n.50.  While plaintiff attempted to allege affirmative
board conduct in implementing the illegal marketing plan with bad faith sufficient to
constitute a violation of the duty of loyalty, the Court searched the complaint for
particularized allegations of director conduct and held that "[a] significant problem
with plaintiff's complaint is the failure to identify which individual director
defendants breached his or her fiduciary duties, and when those fiduciary duties
were breached."  *Id.* at 623.  Accordingly, the Court characterized the allegations as
trying to plead a claim for director inaction, which required the plaintiff to
"demonstrate that the directors ignored 'red flags' indicating misconduct in defiance
of their duties."  *Id.* at 621.  In *King*, as here, plaintiff failed to offer particularized
factual allegations that any red flags reached the board or how the flags warned of
the conduct at issue.  *See id.* at 623-24 (dismissing complaint).

Like the pharmaceutical company in *King*, Allergan has eliminated director
liability for breaches of the duty of care pursuant to Del. Corp. Code. § 102(b)(7).
(Declaration of Lillie A. Werner, ¶ 6, Exhibit 5 at 110.)  Thus, Allergan's directors
have liability only for breaches of the duty of loyalty or actions that are made in bad
faith.  In re *Accuray, Inc. S'Holder Deriv. Litig.*, No. 09-5580, 2010 WL 3447615, at
*6 (N.D. Cal. Aug. 31, 2010) (citing *Guttman*, 823 A.2d at 501).  Plaintiffs here do
not allege the board received any personal benefits as a result of approving the off-
label marketing plan, such as a "sweetheart" deal upon the completion of a merger, a
self-dealing contract for an interested director's company, or other breaches of the
duty of loyalty.  *Cf. Caremark*, 698 A.2d at 967 (distinguishing the plaintiff's
oversight liability claims from "either director self-dealing or the more difficult
loyalty-type problems arising from cases of suspect director motivation, such as
entrenchment or sale of control contexts").  Plaintiffs must, therefore, rebut the
presumption that the directors acted in good faith, on an informed basis and in the
belief that they were serving the best interests of the company.  *See Aronson*, 473
A.2d at 812; *see also Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 16 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

(explaining that the purpose of this presumption is to prevent shareholders from asking courts to substitute their own hindsight notion of sound judgment for that of the corporation's board).  Plaintiffs can only rebut the presumption with particularized facts showing the board consciously disregarded their duties of oversight or affirmatively acted in bad faith.

Here, however, like in *King*, both sets of allegations are missing from the complaint.  Similar to the *King* plaintiff's allegation that the board "ch[ose] to implement a marketing scheme that violated the law," 648 F. Supp. 2d at 623, Plaintiffs here allege that "the Board affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread violations of applicable law."  (Consolidated Compl. ¶ 132.)  But missing from both complaints are "facts supporting the conclusory statement that the *defendants* chose to implement the new marketing scheme."  *King*, 648 F. Supp. 2d at 623 (emphasis in original).  Also missing are particularized allegations showing that red flags reached the board members and alerted them to the wrongdoing at issue and that the board failed to take any action.  Accordingly, Plaintiffs cannot establish a substantial likelihood of liability sufficient to excuse demand.

Plaintiffs' attempt to evade *Caremark* by alleging that the Board in fact had knowledge of the relevant bad facts (and therefore had oversight responsibility) fails because the Complaint does not demonstrate how the alleged red flags alerted the board of the wrongdoing at issue.  Plaintiffs rely on two sets of allegations: first that the directors "could not help but know" about the off-label marketing due to strong Botox® therapeutic profits (Consolidated Compl. ¶ 103), and second, that the Company received warning letters from the FDA on certain unrelated topics.  Neither of these logically imputes notice to the Board of Directors.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2350047

- 17 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1.   <u>Profits From Legal Off-Label Sales Do Not Impute Board</u>
     <u>Knowledge of Illegal Off-Label Marketing</u>

Plaintiffs argue that, because Botox® therapeutic was only approved for limited, rare indications, "it was impossible for the Company to hit these numbers without significant off-label sales," and the board members had imputed knowledge that the Company was engaging in off-label marketing. (*Id.* ¶ 103.)  This reasoning ignores the fact that off-label uses in and of themselves are legal.  (*See id.* ¶ 4.)[4]  In *King*, the court rejected that an increase in off-label sales was a red flag alerting the board to the underlying off-label marketing because the fact of off-label sales alone does not demonstrate off-label marketing by the company.  *See* 648 F. Supp. 2d at 624; *see also* In re *E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 268, 271 (S.D.N.Y. 1986) (rejecting demand futility allegations that the board "knew or should have known of the existence of the [] scheme due to their receipt of monthly summaries of operation which reflected profits too high to have been legitimate").  Thus, there is no support for the inference that legal off-label sales were necessarily the product of illegal off-label marketing, let alone that the board participated in the off-label marketing.  Nor is it sufficient to allege the board should have had knowledge of off-label marketing because Botox® was part of Allergan's core business or a top corporate priority.  (*See* Consolidated Compl. ¶¶ 15, 138.)  In derivative actions, courts "have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's 'core' business."  *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F.

---

[4] Moreover, this reasoning ignores Botox® sales outside the United States. (*See* Consolidated Compl. ¶ 26(a) (noting that Allergan is a global health care company); Declaration of Lillie A. Werner, ¶ 5, Exhibit 4 at 100 (disclosing that 30.9% of Allergan sales were international in 2004).)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 18 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1   Supp. 2d 1325, 1337 (D. Ariz. 2007) (internal citations omitted).  But, such facts are

2   missing here.[5]

3                2.    Unrelated FDA Communications Do Not Impute Knowledge of

4                      Illegal Off-Label Marketing to the Entire Board

5          Plaintiffs' other purported red flags – "FDA warning letters" that "repeatedly

6   made [the Board] aware of the improper conduct occurring at the company

7   (Consolidated Compl. ¶ 134) – were in fact Company communications with the

8   FDA that did not concern off-label marketing of Botox® therapeutic and, thus, did

9   not touch on any of the activities leading to the Settlement Agreement.  Not only do

10  plaintiffs fail to explain how these unrelated letters served as warnings about off-

11  label marketing of Botox® therapeutic, they fail to allege which and when board

12  members had notice of the letters.  For example, Plaintiffs refer to a 2001 letter

13  addressed to Allergan employee David Garbe that concerns misleading

14  representations in promotional activities for Botox®.  (*Id.* ¶ 79.)  Plaintiffs do not

15  allege that a majority of the current board members had notice of this letter.  (*See

16  id.*)  Nor could they.  Seven members of the current twelve member board were not

17  yet with the Company at that time.  (*See id.* at ¶¶ 27-38 (listing dates of board

18  member service).)  Plaintiffs then reference an FDA warning letter in 2003

19  concerning allegedly misleading advertisements – not off-label marketing – for

20  Botox® cosmetic (*see id.* ¶ 80), and again fail to identify which directors had notice

21  of this letter or what they allegedly did in response.  Plaintiffs also reference 2005

22  _____

23        [5] Similarly, director knowledge cannot be imputed through board members'

24  positions on committees.  (*See* Consolidated Compl. ¶¶ 139-40.)  Mere participation
    on a board committee overseeing the purported wrongdoing does not establish an

25  inability to evaluate demand.  In re *CNET Networks*, 483 F. Supp. 2d 947, 965 (N.D.
    Cal. 2007) (concluding that simply alleging that directors were members of a

26  committee or "'approved the underlying transaction'" did not excuse failure to make

27  a demand; *see also Baca*, 2010 WL 2812712, at *7 (rejecting allegations of liability
    for backdated stock option grants by virtue of membership on compensation

28  committee that approved the grants).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1  and 2009 FDA warning letters sent to CEO and board member David Pyott

2  concerning potential misbranding of other Allergan products (*see id.* ¶ 106), but

3  Plaintiffs do not allege this information reached other board members, let alone

4  when or how, or what the board did in response.  Without facts supporting that the

5  board had notice of the alleged red flags relating to illegal, off-label marketing of

6  Botox® therapeutic, the Complaint fails to plead a claim for oversight liability.  *See*

7  *Graham*, 188 A.2d at 129-30.

8      Absent particularized factual allegations suggesting the board received "red

9  flags" and failed to take appropriate action in bad faith, the Complaint does not

10 show that the directors face a substantial likelihood of liability for oversight claims

11 sufficient to render the members too interested to impartially evaluate a pre-suit

12 demand.

13     In addition to their failure of oversight allegations, Plaintiffs argue in wholly

14 conclusory fashion that Allergan's directors engaged in personal misconduct

15 regarding off-label Botox® marketing, which implicates the *Aronson* test.  These

16 allegations fail because the Complaint does not aver specific facts showing personal

17 participation by the directors in off-label marketing.  Instead, it relies solely on

18 conclusory allegations that could be made about any board of directors of any

19 company.  (*See, e.g.*, Consolidated Compl. ¶ 132 ("As the ultimate decision-making

20 body of the Company, the board affirmatively adopted, implemented, and condoned

21 a business strategy based on deliberate and widespread violations of applicable

22 law."); ¶ 137 ("Each of the Director Defendants were aware of, participated in, and

23 approved the wrongs alleged herein.").)  As in *King*, Plaintiffs fail to establish the

24 bad faith necessary to plead a non-exculpated claim or to rebut the business

25 judgment rule absent particularized facts showing what the directors actually knew

26 and, armed with such knowledge, affirmatively did.  648 F. Supp. 2d at 623; *see*

27 *also* In re *Computer Scis. Corp.*, 244 F.R.D. at 590 (granting motion to dismiss

28 where plaintiffs failed to allege with particularity:  "1) what exact errors occurred;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 20 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

2) to whom, specifically, are these errors attributable, whether by commission, omission, knowledge or concealment thereof; and 3) are these errors the product of wrongdoing constituting a breach of duty or rising to the level of legal fault?"); In re *Finisar Corp. Deriv. Litig.*, 542 F. Supp. 2d 980, 995 (N.D. Cal. 2008) ("[P]laintiffs' complaint is devoid of any factual allegations of which directors approved which [challenged transaction] and whether the directors knew [of the transaction's wrongful nature]."). Accordingly, Plaintiffs' attempts to hold the board personally liable for the Company's off-label marketing of Botox® do not excuse their failure to make a demand on the board.

### B. The Complaint Also Does Not Allege Particularized Facts Showing That Allergan's Directors Face a Substantial Likelihood of Liability Sufficient to Excuse Demand on Other Claims

Unable to allege facts that directors face personal liability for off-label marketing, Plaintiffs argue that a pre-suit demand was futile because a majority of the current board faces personal liability for disclosure violations and corporate waste.[6] As with the off-label marketing allegations, the Complaint fails to allege any particularized facts about the directors' claimed conduct regarding these theories.

Plaintiffs allege that Allergan's proxy statements violated Section 14(a) of the Securities and Exchange Act of 1934 because they failed to disclose that the Company was engaging in off-label marketing. (*See* Consolidated Compl. ¶¶ 150, 118.) As an initial matter, Allergan would generally not have a duty to assume that its marketing practices were illegal and then disclose this "fact." *See, e.g.,* In re *Teledyne Defense Contracting Deriv. Litig.*, 849 F. Supp. 1369, 1382 (C.D. Cal.

---

[6] The Complaint does not attempt to allege that demand is excused because the board faces a substantial likelihood of liability for the insider trading allegations. Nor could it. These allegations only affect two members of the twelve member board, and Plaintiffs offer no reason why the rest of the board has a conflict of interest with respect to these claims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 21 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1993) (dismissing 14(a) disclosure allegations because "the proxy rules simply do
not require management to accuse itself of antisocial or illegal policies," and
directors "need not confess guilt to involvement in criminal conduct and breaches of
fiduciary duties of care when such charges have not yet been brought, let alone
proven").  In any event the Complaint's allegations of a Section 14(a) violation
provide no basis to impose personal liability on board members because the
Complaint does not allege specific facts showing that the board members
themselves wrote the proxy statement disclosures or knew that those disclosures
were false when issued.  As discussed *infra*, conclusory allegations of participation
cannot be enough to establish demand futility.  Furthermore, merely signing
company filings is insufficient to create a substantial likelihood of liability for
disclosure violations.  In re *Computer Scis. Corp. Deriv. Litig.*, No. 06-5288, 2007
WL 1321715, at *9 (C.D. Cal. Mar. 26, 2007) ("[A] Complaint cannot establish a
'substantial likelihood' of director liability that excuses demand by merely making
conclusory allegations that a director disseminated financial statements he knew to
be false."); *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("The Board's execution
of [the company's] financial reports, without more, is insufficient to create an
inference that the directors had actual or constructive notice of any illegality.").
This conclusory pleading is insufficient as a matter of law to establish demand
futility.

Plaintiffs' allegations in support of their waste claim related to the
compensation paid to Allergan's executive officers also fail to establish a substantial
likelihood of liability.  (*See* Consolidated Compl. ¶ 167.)  Bootstrapping their
allegations that the board is liable for off-label marketing, Plaintiffs claim that the
board is also personally liable for the Company's resulting fines and legal costs –
and also the compensation paid to the Company's CEO – which Plaintiffs claim
resulted from actionable corporate waste.  However, Plaintiffs fail to demonstrate
that the board lacked any business judgment or any good faith attempt to fulfill its

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 22 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

duties and accepted unreasonable consideration for the exchange of corporate assets sufficient to excuse demand for waste allegations.  *See Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996) ("In the absence of facts casting a legitimate shadow over the exercise of business judgment reflected in compensation decisions, a court, acting responsibly, ought not to subject a corporation to the risk, expense and delay of derivative litigation, simply because a shareholder asserts, even sincerely, the belief and judgment that the corporation wasted corporate funds by paying far too much.").  Similar to their failure to allege particularized allegations for off-label marketing, Plaintiffs provide no factual allegations supporting their claim that the board lacked any business judgment approving the CEO's compensation, or any facts about the board's processes (*see* Consolidated Compl. ¶ 143) to suggest that the directors acted in bad faith or received some improper benefit in connection with that agreement.  *See* In re *Lear Corp. S'holder Litig.*, 967 A.2d 640, 657 (Del. Ch. 2008) (stating that the concept of waste is "designed to smoke out shady, bad faith deals," not a "license for judicial scrutiny of arm's length bargains").

     For all of Plaintiffs' claims of "participation," their conclusory allegations in no way comply with the requirement that the Complaint set forth particularized facts demonstrating which, how, why and when directors were knowingly involved in any wrongdoing.  Having failed to identify any improper conduct by the board, Plaintiffs of course are unable to demonstrate that the board undertook the alleged actions with the level of bad faith necessary to find board liability.  *See, e.g.*, In re *Finisar Corp. Deriv. Litig.*, No. 06-7660, 2009 WL 3072882, at *13 (N.D. Cal. Sept. 22, 2009) ("*Finisar II*") (dismissing demand futility allegations because plaintiffs failed to plead facts suggesting conscious wrongdoing on the part of the board).

     Consequently, Plaintiffs also cannot demonstrate that the alleged affirmative acts undertaken by the board would not be protected by the business judgment rule, the "presumption that in making a business decision the directors of a corporation

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 23 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812.  *See also Finisar II*, 2009 WL 3072882, at *14 ("[P]laintiffs have not sufficiently alleged that the board was involved in [the alleged wrongdoing], so their allegations regarding lack of business judgment necessarily fail.").  In short, Plaintiffs have failed to plead demand futility under either the *Rales* or the *Aronson* test.

## C.   Plaintiffs' Generic Allegations of Director Interest and Non-Independence Are Insufficient to Excuse Demand

Aside from their conclusory allegations the board members have liability for off-label marketing, disclosure violations, and waste, Plaintiffs' offer boilerplate allegations that are insufficient to establish that directors were interested in the challenged transactions or unable to maintain their independence in evaluating potential litigation.  A director is only "interested" in a challenged transaction when he or she "receive[s] a personal financial benefit from the transaction which is not equally shared by the shareholders." *Rales*, 634 A.2d at 936; *see also* In re *Sagent*, 278 F. Supp. 2d at 1087.  Directors lack independence when particularized facts "'show that the Board is either dominated by an officer or director who is the proponent of the challenged transaction or that the Board is so under his influence that its discretion is 'sterilize[d].'"  In re *Sagent*, 278 F. Supp. 2d at 1088 (internal citation omitted).  Where the vast majority of board members are outside directors, the makeup of the board supports the presumption that a majority of the board is disinterested and independent.  *See* In re *W. Nat'l Corp. S'holders Litig.*, No. 15927, 2000 WL 710192, at *15 (Del. Ch. May 22, 2000).  Here, Plaintiffs' boilerplate allegations are insufficient to rebut the presumption of independence.  Plaintiffs fail to (1) allege any conflict affected a majority of the board and, moreover, only present generic, discredited allegations of director interest, including: (2) Pyott's role and compensation as both officer and director (*see* Consolidated Compl. ¶¶ 142-44), (3) Herbert's former role as Allergan officer and Lavigne and Boyer's former roles at

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047                                    - 24 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

1   Genentech, Inc. (*see id* at ¶¶ 145-46), and (4) Allergan's litigation strategy in a

2   declaratory judgment action (*see id.* at ¶ 151).

3        1.   <u>Plaintiffs Fail to Allege Any Alleged Conflict Affected a</u>

4             <u>Majority of the Board</u>

5        First and foremost, Plaintiffs fail to allege any director interest impacted the

6   board majority.  Even if Plaintiffs established a disabling interest for one director,

7   which they do not, general allegations of "domination and control" are insufficient

8   to impute the conflict to the entire twelve-member board.  *See Scimeca v. Kim*,

9   No. 06-0562, 2007 WL 7087065, at *8 (D. Ariz. Aug. 29, 2007) (holding the

10  complaint must allege that the purported controlling person had "the direct or

11  indirect unilateral power to decide whether the director continues to receive a

12  benefit upon which the director is so dependent or is of such subjective material

13  importance that its threatened loss might create a reason to question whether the

14  director is able to consider the corporate merits of the demand objectively") (internal

15  citation omitted).  Plaintiffs fail to establish the other directors lack independence

16  because they are beholden to an interested director or so under his influence that

17  their discretion would be sterilized. *Jones*, 503 F. Supp. 2d at 1338 (citing *Rales*,

18  634 A.2d at 936); *see also Baca*, 2010 WL 2812712, at *8 (rejecting demand futility

19  allegations based on four members of a ten person board).

20        2.   <u>Plaintiffs' Allegations About the CEO Do Not Excuse Demand</u>

21        In addition to failing to plead control, Plaintiffs do not demonstrate director

22  interest as a matter of law.  Plaintiffs argue that the entire board is conflicted by

23  virtue of David Pyott's dual role as CEO and Chairman of the board.  (Consolidated

24  Compl. ¶¶ 142, 144, 148.)  Conclusory allegations that directors are interested

25  because of one director's compensation and position are insufficient to excuse

26  demand. *See, e.g.*, *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on*

27  *other grounds by Brehm*, 746 A.2d 244 (holding that disqualifying interest cannot be

28  pled merely on the basis of allegations that directors are compensated for their

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 25 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

services); *Fagin v. Gilmartin*, 432 F.3d 276, 283 (3d Cir. 2005) ("The fact that a director is also an officer, without more, is insufficient to establish the director's interest or lack of independence.").

### 3.   Plaintiffs' Allegations About the Board Members' Business Connections Do Not Excuse Demand

Conclusory allegations that directors are not independent because they have certain prior business relationships also fail to excuse demand.  Plaintiffs' allegations that Herbert is interested and lacks independence because he was formerly Allergan's CEO (Consolidated Compl. ¶ 145), or that Lavigne and Boyer lack independence because they worked together at Genentech, Inc. (*id.* at ¶ 146), are mere allegations of personal or business relationships insufficient to overcome the presumption of director independence or disinterestedness.  *See, e.g.*, In re *Dow Chem. Co. Deriv. Litig.*, No. 4349, 2010 WL 66769, at *9 (Del. Ch. Jan. 11, 2010) ("That directors of one company are also colleagues at another institution does not mean that they will not or cannot exercise their own business judgment with regard to the disputed transaction."); In re *Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1198 (N.D. Cal. 2007) ("Nor is the naked assertion of a previous business relationship sufficient to overcome the presumption of a director's independence.").

### 4.   Plaintiffs' Allegations About the Company's Litigation Positions Do Not Excuse Demand

Finally, Plaintiffs offer conclusory allegations that directors are not independent because the Company asserted a First Amendment argument in separate proceedings, which are also insufficient to excuse demand.  (*See* Consolidated Compl. ¶ 151.)  As with Plaintiffs' other allegations, the Complaint fails to specify which directors contributed to or approved the Company's litigation strategy, which is fatal to the demand futility allegations.  *See Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1113-14 (D. Del. 1985) (rejecting that a company's defense of a government agency lawsuit could excuse demand where the complaint was silent

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 26 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

about whether it was the board's decision to contest the action).  Moreover, the Company's strategies in other litigations are irrelevant to the demand futility inquiry in this litigation as a matter of law.  *See Decker v. Clausen*, 15 Del. J. Corp. L. 1022, 1028, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) (holding that demand futility allegation that directors are conflicted "because they are defending related litigation is without merit"); *see also Allison*, 604 F. Supp. at 1114 ("It would not be inconsistent or illogical for GM to contest that the corporation is liable in pending litigation and later, or even simultaneously, sue the defendant directors for breach of fiduciary duty.").  Nor do Plaintiffs here explain how the Company's defense strategy in a regulatory action prejudices the board's ability to evaluate its own liability for related conduct.  Accordingly, the demand futility allegations fail to demonstrate director interest or non-independence sufficient to excuse demand.

## IV.   CONCLUSION

For the foregoing reasons, Allergan respectfully requests that the Court grant the motion to dismiss for failure to plead demand futility.

DATED:  December 8, 2010

IRELL & MANELLA LLP
JOHN C. HUESTON
DANIEL P. LEFLER
LILLIE A. WERNER


By:   /s/   John C. Hueston
       JOHN C. HUESTON
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199
jhueston@irell.com
dlefler@irell.com
lwerner@irell.com

Counsel for Nominal Defendant Allergan, Inc.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2350047

- 27 -

NOMINAL DEFENDANT ALLERGAN, INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS