IRELL & MANELLA LLP
John C. Hueston (164921)
jhueston@irell.com
Daniel P. Lefler (151253)
dlefler@irell.com
Lillie A. Werner (261250)
lwerner@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

Attorneys for Nominal
Defendant Allergan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re ALLERGAN, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. SACV10-01352-DOC (MLGx)<br><br>**NOMINAL DEFENDANT ALLERGAN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS REPLY TO ITS MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date:    February 28, 2011<br>Time:    8:30 a.m.<br>Ctrm:    9D<br>Judge:   Hon. David O. Carter |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

NOMINAL DEFENDANT ALLERGAN, INC.'S
REPLY IN SUPPORT OF MOTION TO DISMISS

1

## TABLE OF CONTENTS

2
Page

3   I.     INTRODUCTION ..................................................................................1

4   II.    ARGUMENT ........................................................................................3

5          A.     THE COMPLAINT'S CONCLUSORY ALLEGATIONS
                  ABOUT THE BOARD'S PARTICIPATION IN THE
6                 COMPANY CONDUCT ARE INSUFFICIENT TO
                  PLEAD DEMAND FUTILITY FOR ANY ALLEGED
7                 AFFIRMATIVE BOARD CONDUCT ...................................4

8                 1.     The Complaint's Allegations Of Misconduct At
                         Allergan Do Not Equate To Allegations Of
9                        Misconduct By The Board Members Personally.....................5

10                2.     The Complaint's Failure To Allege Board
                         Participation In Or Knowledge Of Wrongdoing Is
11                       Fatal To All Of Plaintiffs' Claims.................................8

12         B.     THE COMPLAINT DOES NOT PLEAD
                  PARTICULARIZED FACTS THAT WOULD SUBJECT
13                BOARD MEMBERS TO A SUBSTANTIAL
                  LIKELIHOOD OF PERSONAL LIABILITY ON A
14                FAILURE OF OVERSIGHT THEORY...............................10

15                1.     The Complaint Fails To Offer Non-Conclusory
                         Allegations That The Board Violated Its Oversight
16                       Duties ................................................................11

17                2.     The Complaint Fails To Allege Facts About Red
                         Flags Reaching The Board .......................................12

18
                  3.     Plaintiffs' References To Inapposite Case Law
19                       HighlightsThe Deficiencies In Their Complaint .....................13

20         C.     THE COMPLAINT DOES NOT PLEAD
                  PARTICULARIZED FACTS SHOWING THAT ANY
21                ALLEGED CONFLICT AFFECTED A MAJORITY OF
                  INDIVIDUAL BOARD MEMBERS .................................16

22
    III.   CONCLUSION ...................................................................17
23
24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                                    - i -

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Beam ex rel. Martha Stewart Living Omnimedia Inc. v. Stewart*,
    845 A.2d 1040 (Del. 2004)..............................................................................3

*Brown v. Moll*,
    No. C 09-05881, 2010 WL 4704372 (N.D. Cal. Nov. 12, 2010).............7, 12

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)............................................................4, 11, 12

*Erath v. Xidex Corp.*,
    No. CIV-89-198, 1991 WL 338322 (D. Ariz. Feb. 7, 1991) .........................8

*Ferre v. McGrath*,
    No. 06 Civ. 1684, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ..................7

*Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981)..................................................9

*Graham v. Allis-Chalmers Mfg. Co.*,
    188 A.2d 125 (Del. 1963)...............................................................................4

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996)..............................................................................3

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) ...............................................................11, 13

*Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*,
    No. CV 06-6935, 2007 WL 5255035 (C.D. Cal. Aug. 23, 2007).............9, 10

*In re Abbott Labs. Deriv. S'holders Litig.*,
    325 F.3d 795 (7th Cir. 2003)...........................................................13, 14, 15

*In re Baxter Int'l, Inc.*,
    654 A.2d 1268 (Del. Ch. 1995) ......................................................................4

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996)........................................................10, 11, 12

*In re E.F. Hutton Banking Practices Litig.*,
    634 F. Supp. 265 (S.D.N.Y. 1986)...............................................................16

*In re Fannie Mae Deriv. Litig.*,
    503 F. Supp. 2d 9 (D.D.C. 2007) .................................................................15

*In re Finisar Corp. Deriv. Litig.*,
    542 F. Supp. 2d 980 (N.D. Cal. 2008) ...........................................................7

*In re Intel Corp. Deriv. Litig.*,
    621 F. Supp. 2d 165 (D. Del. 2009) .......................................................14, 15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

Page(s)

*In re Pfizer Inc. S'holder Deriv. Litig.,*
    722 F. Supp. 2d 453 (S.D.N.Y. 2010)..........................................................15

*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999)....................................................................15

*In re Teledyne Def. Contracting Deriv. Litig.,*
    849 F. Supp. 1369 (C.D. Cal. 1993)............................................................9

*In re Veeco Instruments, Inc., Sec. Litig.,*
    434 F. Supp. 2d 267 (S.D.N.Y. 2006)....................................................7, 14

*In re Verifone Holdings, Inc. S'holder Deriv. Litig.,*
    No. C 07-06347, 2009 WL 1458233 (N.D. Cal. May 26, 2009) ...................9

*Jones ex rel. CSK Auto Corp. v. Jenkins,*
    503 F. Supp. 2d 1325 (D. Ariz. 2007).........................................7, 12, 14, 16

*King ex rel. Cephalon Inc. v. Baldino,*
    No. 09-3834, 2010 WL 5078008 (3d Cir. Dec. 14, 2010) ....................3, 5, 6

*King v. Baldino,*
    648 F. Supp. 2d 609 (D. Del. 2009) ........................................................5, 16

*Louisiana Municipal Police Employees' Ret. Sys. v. Pyott, et al.,*
    Civil Action No. 5795-VCL (Del. Ch. filed Sept. 3, 2010) ......................10

*Matter of McLinn,* 739 F.2d 1395 (9th Cir. 1984)..........................................9

*McSparran v. Larson,*
    No. 04-C-0041, 2006 WL 2052057 (N.D. Ill. May 3, 2006) .......................14

*New York City Employees' Ret. Sys. v. Jobs,*
    593 F.3d 1018 (9th Cir. 2010)....................................................................8

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993)...........................................................................16

*Sampson v. Robinson,*
    Nos. 07Civ. 6890(PAC), 07 Civ. 5867, 2008 WL 3884386
    (S.D.N.Y. Aug. 20, 2008).........................................................................14

*Scimeca v. Kim,*
    No. CV 06-0562, 2007 WL 7087065 (D. Ariz. Aug. 29, 2007) .................16

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
    911 A.2d 362 (Del. 2006)......................................................................4, 10

*White v. Panic,*
    783 A.2d 543 (Del. 2001)............................................................................2

Page(s)

*Wood v. Baum,*
    953 A.2d 136 (Del. 2008)..................................................................................9

*Zimmerman ex rel. Priceline.com, Inc. v. Braddock,*
    No. Civ.A 18473-NC, 2002 WL 31926608 (Del. Ch. Dec. 20,
    2002)............................................................................................................13

**<u>Rules</u>**

Delaware General Corporation Law Section 102(b)(7) ...........................................3

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  **I.     INTRODUCTION**

2          Plaintiffs agree that the outcome of this Motion turns on whether the

3  Complaint alleges particularized facts giving rise to a significant threat of personal

4  liability for the majority of Allergan's current directors (the "Board").  (*See* Pls.'

5  Opp. to Nom. Def. Allergan's Mot. to Dismiss Jud. Proceedings ("Opp.") at 2, 38-

6  39, 48, 50.)  The disagreement is about whether the Complaint meets this standard.

7          Perhaps the best proof that it does not is Plaintiffs' reliance in the Opposition

8  on a factual theory that is not alleged in the Complaint.  Specifically, Plaintiffs argue

9  that:

10         the Director Defendants adopted the violation of federal law [that is,

11         off-label marketing of Botox] as a commercial strategy and gambled

12         (with stockholders' money) that the consequences would be

13         inconsequential.  They were wrong, and they must now be held

14         accountable for that decision.  The business judgment rule does not

15         protect bad-faith decisions, and it prohibits a director's decision to

16         embrace an illegitimate business strategy in the hope that the profit

17         will ultimately exceed the cost of the fallout.

18  (Opp. at 3.)  Obviously, if Allergan's Board had made a conscious decision to

19  violate federal law – *i.e.*, engage in illegal off-label marketing – in the hope of

20  getting away with it, a significant threat of personal liability would exist.  Plaintiffs'

21  problem is that this notion is simply rhetoric that is unsupported by any factual

22  allegation in the Complaint.

23         Plainly stated, nowhere does the Complaint allege facts showing that the

24  Allergan Board made a conscious "decision to embrace an illegitimate business

25  strategy in the hope that the profit will ultimately exceed the cost of the fallout."

26  (*Id.*)  There is no allegation that management ever proposed such a strategy, let

27  alone that the Board considered and approved it.  If the Board had done such a thing

28  it is hard to imagine that the federal government would not have taken action

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

- 1 -

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

personally against the directors and/or barred Allergan from future participation in

government programs – neither of which occurred.  The Complaint thus rests not on

factual allegations, but rather on the invalid premise that the directors "must have"

personal exposure based on Allergan's settlement with the federal government.  The

case law, however, flatly refutes this premise.  To allege facts giving rise to a

significant threat of personal liability, a complaint must tie the directors personally

to the alleged wrongdoing.  Careless inferences and unwarranted rhetoric do not

suffice.

Unable to allege that the directors personally participated in illegal off-label

marketing, Plaintiffs argue that certain warning letters issued by the FDA somehow

give rise to a significant threat of personal liability.  As Allergan pointed out in its

moving papers, however, the mere fact of the letters does not give rise to Board

liability; a failure to address them properly theoretically could.  The Complaint,

however, alleges no facts whatsoever about the Board's interaction with the letters –

not even how or when the Board was told about them – let alone specific facts that

would support claims that the Board's response was legally insufficient.  On the

contrary, the very newspaper articles Plaintiffs have submitted to the Court reflect

Allergan's responses to the FDA objections.[1]  They therefore provide no support for

a claim of directorial neglect.

Plaintiffs' protestations to the contrary notwithstanding, alleging demand

futility is hard.  The "heightened pleading requirements to excuse pre-suit demand in

derivative suits," *White v. Panic*, 783 A.2d 543, 546 (Del. 2001), are designed to

protect corporations – and their non-litigious stockholders – from litigation that does

not, in the board's judgment, advance corporate interests.  Only in the unusual case

where a majority of the board has a disabling conflict of interest may a self-selected

---

[1] *See* Plaintiffs' Request for Judicial Notice, Ex. H at 309 ("Company officials said Allergan had stopped using most of the materials cited by the FDA, and any remaining materials have been pulled."); Ex. B at 4 ("Allergan spokeswoman Christine Cassiano said company executives 'believe we can easily address the FDA's requests with minor changes.'")

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                   - 2 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1   stockholder (and its contingent fee counsel) usurp the decision-making authority of

2   the board, which, after all, is elected by the stockholders.  The Complaint here does

3   not come close to meeting the high standards to plead demand futility and, as a

4   result, this case should be dismissed.

5   **II.    ARGUMENT**

6           Plaintiffs fail to meet their burden of pleading particularized facts

7   demonstrating that a majority of the individual Board members face a substantial

8   likelihood of personal liability.  Pleading particularized facts requires the Complaint

9   to "identify which individual director defendants breached his or her fiduciary

10  duties, and when those duties were breached."  *King ex rel. Cephalon Inc. v. Baldino*

11  ("*King II*"), No. 09-3834, 2010 WL 5078008, at *2 (3d Cir. Dec. 14, 2010)

12  (affirming dismissal of complaint based on directors' alleged participation in or

13  failure to prevent off-label marketing where complaint failed to specify individual

14  directors' conduct).  The Complaint here lacks these relevant facts. [2]

15          Plaintiffs admit that the relevant inquiry is whether directors face a substantial

16  likelihood of liability, (*see* Opp. at 2, 38-39, 48, 50), but then incongruously assert

17  that Allergan's exculpatory clause that limits directors' personal liability under

18  Delaware General Corporation Law Section 102(b)(7) for breaches of the duty of

19  care is a "red herring" (Opp. at 53).  Plaintiffs' own cases recognize that when

20  companies employ such limitations, "the risk of liability does not disable [directors]

21  from considering a demand fairly unless particularized pleading permits the court to

22  conclude that there is a substantial likelihood that their conduct falls outside the

23

24          [2] As Plaintiffs admit, the so-called "reasonable doubt" standard applicable to
      the demand futility inquiry only applies "where the [demand futility] claim is not

25   based on mere suspicions or stated solely in conclusory terms."  *Grimes v. Donald*,
      673 A.2d 1207, 1217 (Del. 1996).  (*See also* Opp. at 39.)  Courts routinely reject

26   "that our use of the phrases 'reason to doubt' and 'reasonable belief' in *Grimes* has
      somehow watered down the pleading threshold set forth in our jurisprudence.

27   Nothing in *Grimes* was intended to weaken the traditional, objective reasonable
      doubt standard to be applied to the pleading threshold."  *Beam ex rel. Martha*

28   *Stewart Living Omnimedia Inc. v. Stewart*, 845 A.2d 1040, 1050 n.26 (Del. 2004)
      (citation omitted).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                          - 3 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
                                                                          IN SUPPORT OF MOTION TO DISMISS

exemption." *In re Baxter Int'l, Inc.*, 654 A.2d 1268, 1270 (Del. Ch. 1995); *see also Desimone v. Barrows*, 924 A.2d 908, 945 (Del. Ch. 2007) (dismissing complaint for, *inter alia*, failure to plead particularized facts demonstrating Board knowledge "because in light of [the company's] exculpatory charter provision, a scienter-based standard for liability applies in determining whether any director faces a threat of personal liability").

Because Plaintiffs' Complaint fails to set forth particularized facts that the Board faces a substantial likelihood of liability for non-exculpated claims, Plaintiffs attempt to minimize their burden and recast their actual allegations. However, no argument in their Opposition can change the fact that the Complaint's conclusory allegations about the Board's alleged affirmative conduct, liability based on a failure of oversight, and individual Board members' conflicts are insufficient to withstand a motion to dismiss.

**A.   THE COMPLAINT'S CONCLUSORY ALLEGATIONS ABOUT THE BOARD'S PARTICIPATION IN THE COMPANY CONDUCT ARE INSUFFICIENT TO PLEAD DEMAND FUTILITY FOR ANY ALLEGED AFFIRMATIVE BOARD CONDUCT**

Plaintiffs cannot impute liability to Board members by virtue of Company conduct. Company conduct, even when it turns out to be ill-advised or even illegal, will not be imputed to individual board members and subject them to personal liability. Board members do not face individual liability just because their company committed wrongdoing. *See, e.g.*, *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 373 (Del. 2006) (granting motion to dismiss where "plaintiffs' complaint seeks to equate a bad outcome with bad faith. The lacuna in the plaintiffs' argument is a failure to recognize that the directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both."); *Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 131 (Del. 1963) (recognizing

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                      - 4 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
                                                                         IN SUPPORT OF MOTION TO DISMISS

1  that directors are not automatically liable for their company's conduct); *King v.*
2  *Baldino* ("*King I*"), 648 F. Supp. 2d 609, 623 (D. Del. 2009) (dismissing complaint
3  based on similar allegations of board liability for company off-label marketing
4  where "[a] significant problem with plaintiff's complaint is the failure to identify
5  which individual director defendants breached his or her fiduciary duties, and when
6  those duties were breached"), *aff'd*, 2010 WL 5078008 (3d Cir. Dec. 14, 2010).

7
8  **1.    The Complaint's Allegations Of Misconduct At Allergan Do Not Equate To Allegations Of Misconduct By The Board Members Personally**

9      A cornerstone of Plaintiffs' Opposition is their argument that the Allergan
10  Board consciously chose to pursue an illegal off-label marketing scheme in the hope
11  that the Company would either not be caught or that the benefits of the scheme
12  would outweigh the costs.  (Opp. at 3.)  The Complaint, however, alleges no facts
13  that support this wholly conclusory assertion.  It does not allege that such a scheme
14  was ever even presented to the Board, let alone approved by it.  Nor do Plaintiffs
15  have any explanation for why, if the alleged off-label marketing problems were
16  condoned at the Company's highest levels, the federal government chose not to
17  pursue claims against any of the Company's directors or to debar Allergan from
18  further government business.

19      In the Opposition, Plaintiffs systematically and categorically attempt to recast
20  their allegations of <u>Allergan's</u> conduct as allegations about <u>Board</u> members' conduct.
21  For example, Plaintiffs claim that the Settlement Agreement entered into by
22  Allergan on August 31, 2010, "addresses defendants' conduct from January 1, 2001
23  through December 31, 2008," (Opp. at 11), where the actual document makes
24  absolutely no references to the Company's Board members personally (*see* Dkt.
25  No. 49 at 6-36).  Indeed, Plaintiffs' arguments that the Complaint contains
26  allegations about directors' conduct are dispelled by a simple reading of the
27  Complaint.  In many cases, it appears that Plaintiffs took allegations about the
28  Company, and merely substituted the words "Board" or "Defendants" for

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2370877                                    - 5 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1   "Allergan."  For example, below are some representative recharacterizations of

2   Plaintiffs' actual pleadings in their Opposition.

| COMPLAINT | OPPOSITION |
|---|---|
| "In a confidential response dated Sept. 16, 2005, **Allergan** said its internal database contained 436 'serious adverse event' reports related to Botox."  (Compl. ¶ 107.) | "In a confidential response to the French government dated September 16, 2005, **defendants** admitted that Allergan's own internal database contained 436 'serious adverse event' reports related to the use of Botox."  (Opp. at 9 (citing Compl. ¶ 107).) |
| "**Allergan's** systematic disregard of the laws was widespread and blatant."  (Compl. ¶ 7.) | "**[T]he Board's** systematic disregard of the law was conscious and blatant."  (Opp. at 9 (citing Compl. ¶ 7).) |
| "**Allergan** doubled the size of its support staff assisting doctors in obtaining payment for off-label Botox use, implemented Company-wide initiatives to expand Botox's off-label use, which included coordinated efforts by three different divisions in the Company, created allegedly 'independent' educational organizations that promoted the off-label use of Botox, and paid doctors to attend elaborate dinners and retreats focused on off-label uses for Botox."  (Compl. ¶ 7.) | "**Defendants** effectuated their scheme by doubling the size of the Company's support staff; assisting doctors in obtaining payment for off-label Botox use; implementing Company-wide initiatives to expand Botox's off-label use, which included coordinated efforts by three different divisions in the Company; creating allegedly 'independent' educational organizations that promoted the off-label use of Botox; and paying doctors to attend elaborate dinners and retreats focused on off-label uses for Botox."  (Opp. at 18 n.16 (citing Compl. ¶ 7).) |
| "[S]ince 2003, the FDA has sent **the Company** at least three warning letters complaining about the marketing practices at the Company . . ." (Compl. ¶ 7.)  "**Allergan** became aware of European reports of toxin spread . . .  [the French government] sent a letter to **Allergan** alerting the Company of reports that botulinum toxin had spread . . .  In a confidential response dated Sept. 16, 2005, **Allergan** said its internal database contained 436 'serious adverse event' reports related to Botox."  (Compl. ¶ 107.) | Describing "numerous instances in which **the Board** was informed of legal compliance violations concerning the unlawful marketing of Allergan drugs."  (Opp. at 18 (including Compl. ¶¶ 7, 107 in citation).) |
| "**Allergan** made it a top corporate priority to maximize sales of far more lucrative off-label uses that were not approved by FDA." (Compl. ¶ 17.) | "**Allergan's directors** . . . made off-label marketing of Botox a top priority of the Company."  (Opp. at 33 n.28 (including Compl. ¶ 17 in citation).) |

24   This flaw is fatal to their demand futility allegations because alleged wrongdoing by

25   someone within the Company does not equate to the personal wrongdoing by

26   directors that is required to plead demand futility.  *See King II*, 2010 WL 5078008 at

27   *2 (affirming dismissal on demand futility grounds where the complaint's

28   allegations "all involve the *company's* marketing and sales practices.  [Plaintiff]

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

- 6 -

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1   does not allege any specific connection between any of those practices and the

2   *board*." (emphasis in original)).

3        Relying on these allegations about Allergan's conduct, the Opposition cannot

4   point to any specific facts connecting individual directors to the underlying conduct.

5   Instead, Plaintiffs only allege that directors must have been responsible for the

6   problems because they served on the Audit or Corporate Governance Committees.

7   (*E.g.*, Compl. ¶¶ 139-40.)  (*See* Opp. at 50 ("Lavigne, Gallagher, Ray, Hudson and

8   Ryan Face a Substantial Likelihood of Liability for Their Conduct on the Audit

9   Committee"), at 52 ("Boyer, Ingram, Dunsire, Jones and Schaeffer Face a

10   Substantial Likelihood of Liability for Their Conduct on the Corporate Governance

11   Committee").  However, it is well-settled that Plaintiffs cannot establish demand

12   futility based on directors' committee memberships alone.  *See, e.g.*, *Jones ex rel.*

13   *CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1334 (D. Ariz. 2007); *Brown v.*

14   *Moll*, No. C 09-05881, 2010 WL 4704372, at *4 (N.D. Cal. Nov. 12, 2010)

15   (rejecting that audit committee membership was sufficient to impute knowledge or

16   participation in the wrongdoing and dismissing complaint where "Plaintiff has not

17   alleged *facts* to support his conclusion that these outside directors knew of or even

18   had reason to know of [the company's problems at issue]"); *In re Finisar Corp.*

19   *Deriv. Litig.*, 542 F. Supp. 2d 980, 995 (N.D. Cal. 2008) (granting dismissal where

20   complaint failed to set forth specific facts about individual directors' conduct).[3]  As

21   a result, Plaintiffs' fiduciary duty claims should be dismissed for failure to excuse

22   demand.

23

24        [3] As the Court in *Ferre v. McGrath* recognized, where a complaint "contains
only the wholly conclusory allegation that the defendants failed to prevent and

25   correct [the company's] allegedly illegal activities and improper financial statements
. . . the case is radically at variance with *Veeco* [*In re Veeco Instruments, Inc., Sec.*

26   *Litig.*, 434 F. Supp. 2d 267 (S.D.N.Y. 2006), cited by Plaintiffs, and other cases
excusing demand], where the pleading contained particularized factual allegations

27   (not just conclusory assertions) about the defendant directors' actual knowledge of,
and inaction in the face of, extensive corporate wrongdoing."  No. 06 Civ. 1684,

28   2007 WL 1180650, at *8-9 (S.D.N.Y. Feb. 16, 2007) (dismissing complaint on
demand futility grounds).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877              - 7 -                     NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

## 2. The Complaint's Failure To Allege Board Participation In Or Knowledge Of Wrongdoing Is Fatal To All Of Plaintiffs' Claims

Similarly, because the Complaint fails to demonstrate the Board was involved in personal wrongdoing, the Opposition cannot rehabilitate Plaintiffs' deficient claims that necessarily depend on a violation of the Board's fiduciary duties.  As detailed in greater depth in the Individual Defendants' Motion to Dismiss, the Complaint does not plead facts suggesting that the Board faces a substantial likelihood of liability for federal securities claims.  (*See* Dkt. No. 51 at 9-19.)  To state a claim under Section 14(a) of the Securities Exchange Act, Plaintiffs "must establish that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (citation and internal quotation marks omitted).[4]  But here, Plaintiffs have not alleged particular facts showing that the Board faces liability for any actionable material misrepresentation or omission.

Instead, Plaintiffs merely offer conclusory allegations as to the alleged omissions' materiality and deficiency.  Plaintiffs fail to address how or why the 2008, 2009, and 2010 proxy statements are "misleading" in light of the preceding March 3, 2008 press release and subsequent public filings announcing the FDA investigation into Botox® therapeutic off-label marketing practices and Allergan's significant legal expenditures to investigate the problems and mount a defense against the Government.  (*See* Individual Defendants' Request for Judicial Notice, Ex. C.)

---

[4] Meanwhile, liability under Section 29(b) requires an underlying securities violation.  *Erath v. Xidex Corp.*, No. CIV-89-198, 1991 WL 338322, at *16 (D. Ariz. Feb. 7, 1991) (holding that dismissal of Securities Act claims means "plaintiff is left with no violation of the Act or rules or regulations thereunder on which to predicate recovery under § 29(b)").  Accordingly, this parasitic Section 29 claim fails because Plaintiffs' Section 14(a) claim fails.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

- 8 -

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1    In fact, Plaintiffs assert alleged "omissions" that are not required, as a matter

2  of law, to be disclosed.  "[T]he proxy rules simply do not require management to

3  accuse itself of antisocial or illegal policies" or to "confess guilt to involvement in

4  criminal conduct and breaches of fiduciary duties of care when such charges have

5  not yet been brought, let alone proven."  *In re Teledyne Def. Contracting Deriv.*

6  *Litig.*, 849 F. Supp. 1369, 1382 (C.D. Cal. 1993) (dismissing Section 14(a)

7  disclosure allegations).  Accordingly, the Board faces no personal liability because

8  Allergan's proxy statements did not need to disclose Plaintiffs' views that "the

9  financial and operating metrics disclosed in the Proxy Statements were the result of

10  widespread criminal misconduct within Allergan that the Board was duty-bound to

11  prevent" or that the Board was failing in "critical aspects of the Board's

12  responsibilities and activities—such as the Board's obligation to assure compliance

13  with applicable drug marketing laws and regulations."  (Compl. ¶¶ 117-18.)  Even if

14  it were true, these are not actionable "omissions" giving rise to liability.  *Teledyne*,

15  849 F. Supp. at 1382; *Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981) (holding

16  that unproven allegations of mismanagement are not material or otherwise required

17  to be disclosed under federal securities laws), *overruled on other grounds by Matter*

18  *of McLinn*, 739 F.2d 1395 (9th Cir. 1984).

19    Moreover, to excuse demand based on disclosure allegations, Plaintiffs must

20  plead "particularized facts about what the directors knew about the SEC filings and

21  other public statements before or when they were issued."  *In re Verifone Holdings,*

22  *Inc. S'holder Deriv. Litig.*, No. C 07-06347, 2009 WL 1458233, at *8 (N.D. Cal.

23  May 26, 2009); *Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*, No. CV

24  06-6935, 2007 WL 5255035, at *7 (C.D. Cal. Aug. 23, 2007) (dismissing Section

25  14(a) disclosure allegations for failure to plead demand futility); *see also Wood v.*

26  *Baum*, 953 A.2d 136 (Del. 2008) (dismissing disclosure allegations for failure to

27  plead demand futility where the complaint did not set forth particularized facts

28  showing the directors knew the underlying conduct was illegal or knew the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

- 9 -

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

disclosures were false).  Here, however, the Complaint fails to plead facts that the Board was aware of the alleged misstatements.  Bald allegations that Audit Committee members face a substantial likelihood of liability by virtue of their disclosure duties (Opp. at 51) are insufficient to impute knowledge of the alleged inaccuracies or liability for disclosure violations.  *Hawaii Laborers*, 2007 WL 5255035 at \*7 (rejecting that Audit Committee membership is sufficient to subject board members to liability for allegedly misleading disclosures).  Accordingly, the Complaint fails to establish that the Board faces a substantial likelihood of liability based on participation in alleged securities violations.[5]

### B.   THE COMPLAINT DOES NOT PLEAD PARTICULARIZED FACTS THAT WOULD SUBJECT BOARD MEMBERS TO A SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY ON A FAILURE OF OVERSIGHT THEORY

Unable to actually allege any personal wrongdoing by Board members, Plaintiffs argue that the directors face a substantial likelihood of liability on an alleged failure to supervise theory.  Because this theory of liability – known in the Delaware corporate parlance as a "*Caremark*" claim – is described as "'possibly the most difficult theory of liability in corporation law upon which a plaintiff might hope to win a judgment,'" *Stone*, 911 A.2d at 372 (quoting *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)), Plaintiffs attempt to retreat from the *Caremark* label in the Opposition.  (Opp. at 33 n.28, 49.)[6]  But Plaintiffs cannot have it both ways: if they want to argue demand futility on a failure of oversight theory, they must meet the analysis required under *Caremark* standards.

---

[5] Similarly, absent liability for failing to disclose material non-public information, Defendants cannot face liability for insider trading allegations.  (*See* Compl. ¶¶ 176-80, 183-86.)

[6] Plaintiffs in the related action in Delaware Chancery Court, *Louisiana Municipal Police Employees' Ret. Sys. v. Pyott, et al.*, Civil Action No. 5795-VCL (Del. Ch. filed Sept. 3, 2010), also argued that they had not pled *Caremark* claims. (*See* Dkt. No. 58, Intervention Hr'g Tr. 18:20 – 19:12.)  The Delaware Court, however, rejected this argument and held that "there is no doubt this is a Caremark case.  No question." (Hr'g Tr. 52:18 – 19; *see also id.* 18:20 – 19:12.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                - 10 -                 NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
                                                              IN SUPPORT OF MOTION TO DISMISS

### 1. The Complaint Fails To Offer Non-Conclusory Allegations That The Board Violated Its Oversight Duties

The Opposition tries to disavow from the *Caremark* label for good reason – the Complaint's conclusory allegations foreclose oversight liability.  Plaintiffs' "conclusory complaint is empty of the kind of fact pleading that is critical to [pleading demand futility on this theory], such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." *Guttman v. Huang*, 823 A.2d 492, 506-07 (Del. Ch. 2003).[7]  The Complaint admits the Company had an audit committee and functioning internal controls, and pleads no facts about the Board's actual receipt of red flags as is necessary to support a claim of reckless disregard.

In their Complaint, Plaintiffs plead no particularized factual allegations of deficient internal controls.  In fact, all the Complaint says about internal controls is that: "At all relevant time[s], the Company maintained robust internal controls and financial reporting systems . . . [and] the controls functioned as designed."  (Compl. ¶ 141.)  Then, in their Opposition, Plaintiffs about-face and argue Audit Committee members face a substantial likelihood of liability for the failure to design and implement adequate internal controls.  (Opp. at 51.)  Plaintiffs attempt to evade their own pleading to conclude that, because Allergan faced civil and criminal liability, internal controls must have failed; however, this inference is impermissible under the law.  "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940.

---

[7] The Delaware Court also observed how almost all *Caremark* claims fail when plaintiffs have not first used the Section 220 process before filing suit (Intervention Hr'g Tr. 53:6 – 9).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

cv-01352-DOC -MLG   Document 59   Filed 02/08/11   Page 17 of 22   Page ID #:2093

## 2.   The Complaint Fails To Allege Facts About Red Flags Reaching The Board

The Complaint pleads no particularized factual allegations that the Board itself received notice of alleged red flags.  Plaintiffs attempt to meet their pleading burden with the protest that the Board could not have helped but known about the marketing departments' questionable activities.  (*See* Opp. at 47 n.39.)[8]  Such empty arguments have been specifically rejected by courts evaluating demand futility allegations.  It is well-established that boilerplate allegations a director "knew or should have known problems" because the issues were "of critical importance" are conclusory and insufficient to impute knowledge or excuse demand.  *E.g.*, *Brown*, 2010 WL 4704372 at *3; *Jones*, 503 F. Supp. 2d at 1337 ("Courts have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's 'core' business." (citation omitted)).

Plaintiffs' allegations about FDA warning letters are insufficient.  Plaintiffs note that the Company received FDA warning letters (*see, e.g.*, Compl. ¶ 106), but FDA letters in and of themselves do not establish personal liability for Board members.  Plaintiffs do not allege any facts whatsoever in the Complaint about the Board's role (if any) in responding to the FDA's concerns – let alone specific facts that would establish liability under *Caremark* standards.  Oddly, Plaintiffs attempt to supplement the record by citation to news articles that are not referenced in the

---

[8] Plaintiffs also mischaracterize Allergan's arguments demonstrating that the Complaint fails to adequately allege the Board members face a substantial likelihood of liability for a *Caremark* claim.  (Opp. at 41 n.33.)  Allergan need not demonstrate the Board "did not know" about the Company's conduct to defeat demand (*see id.*); it is Plaintiffs' pleading burden to allege facts suggesting that both the Board was aware of the alleged wrongdoing and that they failed to take appropriate action thereafter.  *Desimone*, 924 A.2d at 940 ("[I]n order to state a viable *Caremark* claim, and to predicate a substantial likelihood of director liability on it, a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed.").  The Complaint here fails to allege the elements necessary to excuse demand on a *Caremark* theory.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2370877                                              - 12 -                         NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1  Complaint.  (*See, e.g.*, Opp. at 7, 21, 31, 34, 44.)[9]  This is odd because these sources

2  demonstrate that the Company took FDA complaints seriously and immediately

3  remediated any identified concerns.[10]  Accordingly, far from supporting Plaintiffs'

4  argument, these sources undercut it.

### 3.  Plaintiffs' References To Inapposite Case Law Highlight The Deficiencies In Their Complaint

7  Plaintiffs' citations to out-of-circuit, inapposite authority do not aid them in

8  overcoming the strictures of Delaware law.  (*See* Opp. at 43-48.)  Plaintiffs rely on

9  outlier examples where out-of-circuit trial courts found demand excused after

10  plaintiffs alleged extreme circumstances under which directors knowingly

11  disregarded their companies' compliance failures and illegal activities.  But rather

12  than buttress Plaintiffs' arguments here, these cases reinforce why the instant

13  Complaint fails to plead demand futility.

14  For example, Plaintiffs here fail to allege the particularized facts in *In re*

15  *Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795 (7th Cir. 2003), demonstrating

16  the Board actually received red flags about problems (*see* Opp. at 43).  *See Abbott*

17  *Labs*, 325 F.3d at 808.  Thus, the finding in *Abbott Labs* that the Board could be

18  liable for its failure to prevent wrongdoing has no applicability here.  The *Abbott*

19  *Labs* complaint contained particularized allegations demonstrating that the

20  individual board members had specific notice of the underlying issues giving rise to

21  _____

22  [9] Such materials, of course, are not properly part of the record.  *Guttman*, 823
A.2d at 499; *see also Zimmerman ex rel. Priceline.com, Inc. v. Braddock*, No. Civ.A
23  18473-NC, 2002 WL 31926608, at *7 & n.53 (Del. Ch. Dec. 20, 2002) ("In deciding
whether demand is excused, [courts are] limited to those particularized facts alleged
in the Complaint, not those set forth only in the briefs.").

24  [10] For example, Plaintiffs' Exhibit H (which, like the other news articles, is
25  not properly before the Court) described that "Allergan had stopped using most of
the materials cited by the FDA, and any remaining materials have been pulled."
26  Similarly, Exhibit J referenced a Company statement regarding an Allergan acne
product ad that was the subject of FDA concern, which was "discontinued earlier
27  this year and has been replaced by a new ad."  *See also* Exhibit K (noting acne
product where "Allergan has said that the offending ad was discontinued earlier in
28  2009 and was replaced with another ad that addresses the key concerns in the FDA
letter").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

company liability, but failed to take corrective action.  But here, "unlike *In re Abbott*, there is no indication that government agencies have specifically reached out to individual board members to apprise them of problems within the company."  *See In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 177 (D. Del. 2009); *see also Sampson v. Robinson*, Nos. 07Civ. 6890(PAC), 07 Civ. 5867, 2008 WL 3884386, at *7 (S.D.N.Y. Aug. 20, 2008) (observing that "*Abbott Labs* is Plaintiff's strongest case, but it is clearly distinguishable" because the complaint pled specific facts in support of director awareness); *McSparran v. Larson*, No. 04-C-0041, 2006 WL 2052057, at *5 (N.D. Ill. May 3, 2006) (distinguishing *Abbott Labs* and affirming dismissal of fiduciary duty claims for failure to plead demand futility where plaintiffs failed to demonstrate red flags reached the board).[11]  The warning letters in *Abbott Labs*, unlike those at issue here, were alleged to have reached individual board members, actually concerned the quality control issues subjecting the company to liability, and accompanied FDA inspections and FDA meetings with board members.  *See Abbott Labs*, 325 F.3d at 808.  In contrast, here Plaintiffs cite unrelated warning letters dealing with other Botox® products and other marketing issues (*see* Compl. ¶ 79 (referencing 2001 letter re Botox® clinical benefits), ¶ 80 (referencing 2003 letter re Botox® cosmetic advertisements)) and offer no allegations that the letters were the subject of Board attention or what the Board did in response.  Accordingly, the case is easily distinguishable,[12] and highlights why the instant Complaint fails to plead demand futility.

---

[11] Similarly, Plaintiffs' citation to *Veeco*, 434 F. Supp. 2d at 267, is unavailing.  The *Veeco* complaint contained particularized facts demonstrating that the board was aware of the accounting issues.  However, here, like in *Jones*, which distinguishes *Veeco* on this point, Plaintiffs merely allege that the Company knew and the directors should have known about the problems.  *See Jones*, 503 F. Supp. 2d at 1337 (dismissing complaint based on conclusory allegations of imputed knowledge where "[c]ourts have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's 'core' business" (citation omitted)).

[12] In addition to being distinguishable on its facts, *Abbott Labs* has been heavily criticized for its logic and its holding.  Federal courts have criticized the decision on its misapplication of Delaware law, and decline to follow *Abbott Labs*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                                    - 14 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1    Likewise, the Southern District of New York's decision in *In re Pfizer Inc.*

2   *S'holder Deriv. Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010), is inapposite because

3   the decision turned on easily distinguishable facts.  (*But see* Opp. at 45-46.)  In

4   *Pfizer*, the company had a history of the off-label marketing at issue, the board was

5   operating under two separate Corporate Integrity Agreements ("CIAs") creating

6   special oversight responsibilities, and the board offered "repeated promises to

7   closely monitor and prevent such misconduct."  722 F. Supp. 2d at 461.  Moreover,

8   "the Complaint detail[ed] at great length a large number of reports made to members

9   of the board" showing "they all knew of Pfizer's continued misconduct and chose to

10   disregard it."  *Id.* at 460; *see also id.* at 460-61 (noting that "[m]any of these

11   disturbing reports were received during the same time that the board was obligated

12   by the 2002 and 2004 CIAs to pay special attention to these very problems").  Thus,

13   unlike here, *Pfizer* plaintiffs alleged that the board (not just its company) actually

14   received repeated and on-point notices of the off-label marketing issues.

15    *Pfizer* also presented a distinct legal circumstance.  The company's CIAs

16   "imposed affirmative obligations on Pfizer's board that **went well beyond the basic**

17   **fiduciary duties required by Delaware law**."  *Id.* at 461 (emphasis added).

18   Allergan directors, however, had no such heightened duties and thus Plaintiffs must

19   rebut the presumption of the business judgment rule to excuse demand.  *See In re*

20   *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999).  Accordingly,

21   this factually and legally distinct case is of little help to Plaintiffs here.

22    Moreover, it is important to note that the *Pfizer* Court never said the

23   company's directors should have been on notice about the off-label marketing

24   because of sales numbers alone.  (*But see* Opp. at 30-31 (arguing that Botox® sales

25   ————————————————————
     *See, e.g.*, *In re Intel Corp.*, 621 F. Supp. 2d at 173 (declining to apply *Abbott Labs*
26   because "the Seventh Circuit's interpretation of Illinois law was not a faithful
     application of Delaware law"); *In re Fannie Mae Deriv. Litig.*, 503 F. Supp. 2d 9, 18
27   n.6 (D.D.C. 2007) ("Plaintiffs assert that this Court should apply the standard used
     by the Seventh Circuit in [*Abbott Labs*].  However, because the Seventh Circuit
28   applied Illinois state law, that case is not applicable [] where Delaware law
     controls.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                    - 15 -                    NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
                                                                     IN SUPPORT OF MOTION TO DISMISS

1    numbers somehow put the Board on notice of off-label marketing).)  In *King I*,

2    however, another case addressing off-label marketing, the court squarely addressed

3    this issue and rejected that sales numbers could serve as a red flag alerting the board

4    to the underlying off-label marketing.  *See* 648 F. Supp. 2d at 624-25.  The *King*

5    Court recognized that the fact of off-label sales alone does not demonstrate off-label

6    marketing by the company.  *Id.*; *see also In re E.F. Hutton Banking Practices Litig.*,

7    634 F. Supp. 265, 268, 271 (S.D.N.Y. 1986) (rejecting demand futility allegations

8    that the board "knew or should have known of the existence of the [] scheme due to

9    their receipt of monthly summaries of operation which reflected profits too high to

10   have been legitimate").

11        Accordingly, the Complaint fails to plead demand futility based on a failure

12   of oversight claim and Plaintiffs' Opposition cannot help them survive a motion to

13   dismiss.

14   **C.    THE COMPLAINT DOES NOT PLEAD PARTICULARIZED FACTS SHOWING THAT ANY ALLEGED CONFLICT**

15   **AFFECTED A MAJORITY OF INDIVIDUAL BOARD MEMBERS**

16

17        Plaintiffs fail to allege whether and how any director interest impacts the

18   majority of individual Board members.  Plaintiffs' allegations about the CEO are

19   insufficient alone.  (*See* Opp. at 53.)  Even if Plaintiffs established a disabling

20   interest for one director, which they do not, general allegations of "domination and

21   control" are insufficient to impute the conflict to the entire twelve-member Board.

22   *See Scimeca v. Kim*, No. CV 06-0562, 2007 WL 7087065, at *8 (D. Ariz. Aug. 29,

23   2007) (holding the complaint must allege that the purported controlling person

24   exercised such power that the other directors cannot objectively consider the

25   corporate merits of the demand).  Plaintiffs fail to establish the other directors lack

26   independence because they are beholden to an interested director or so under his

27   influence that their discretion would be sterilized.  *See Jones*, 503 F. Supp. 2d at

28   1338; *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).  Plaintiffs fail to dispute

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877

- 16 -

NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS

1   this in their Opposition.  Accordingly, even if one member (like officer Board
2   member Pyott) is potentially interested, this does not excuse demand on the other
3   Board members.
4        As a result, Plaintiffs' Complaint does not plead any disabling interest
5   sufficient to excuse demand and withstand a motion to dismiss.

## III.    CONCLUSION

7        For the foregoing reasons, Allergan respectfully requests that the Court grant
8   Allergan's motion to dismiss the Complaint for failure to plead demand futility.

DATED:  February 8, 2011              IRELL & MANELLA LLP
                                      JOHN C. HUESTON
                                      DANIEL P. LEFLER
                                      LILLIE A. WERNER


                                      By:   /s/   John C. Hueston
                                                  JOHN C. HUESTON

                                      Counsel for Nominal Defendant
                                      Allergan, Inc.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2370877                                - 17 -          NOMINAL DEFENDANT ALLERGAN, INC.'S REPLY
                                                       IN SUPPORT OF MOTION TO DISMISS