**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-01352 DOC (MLGx)                                  Date: April 12, 2011

Title: IN RE ALLERGAN, INC., SHAREHOLDER DERIVATIVE LITIGATION

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Julie Barrera                                                          Not Present   
Courtroom Clerk                                                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                  NONE PRESENT

PROCEEDING (IN CHAMBERS):         ORDER GRANTING MOTIONS TO DISMISS

      Before the Court is Nominal Defendant Allergan, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Complaint ("Nominal Defendant's Motion to Dismiss") (Docket 47) and the Individual Defendants' Motion to Dismiss Plaintiff's Consolidated Complaint ("Individual Defendants' Motion to Dismiss") (Docket 51). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers, the Court GRANTS Nominal Defendant's and Individual Defendants' Motions to Dismiss.

    I.    BACKGROUND

      This is a shareholder derivative suit. Shareholder Plaintiffs ("Plaintiffs") bring this action on behalf of nominal Defendant Allergan, Inc, ("Allergan" or the "Company") against its entire Board of Directors ("Board") and its Chief Executive Officer, David E.I. Pyott ("Defendant Pyott") (Pyott and the Board collectively referred to as "Director Defendants"). Consolidated Complaint ("CC") (Docket 39) at ¶ 1. Plaintiffs allege that Director Defendants knowingly caused Allergan to engage in an illegal marketing and promotion scheme for its most important product, Botox, and certain other drugs. *Id.* at ¶ 2. Plaintiffs allege that Director Defendants were notified of their improper practices on several occasions, but nonetheless continued to misbrand Botox and certain other drugs for unapproved uses. *Id.* at ¶ 6. Plaintiffs aver that all of Director Defendants' conduct occurred without the shareholders' knowledge.

On September 1, 2010, the U.S. Department of Justice ("DOJ") announced a $600 million sanction to resolve civil and criminal cases regarding Allergan's promotion of Botox for uses not approved by the Federal Drug Administration ("FDA"). CC ¶ 2. The DOJ subsequently pursued action against Allergan in federal court. *Id*. at ¶ 14. On October 5, 2010, Allergan entered a guilty plea and agreed to pay a criminal fine of $375 million for its alleged illegal marketing of Botox. *Id*.

Plaintiffs seek damages for this $375 million judgement due its alleged illegal marketing of Botox, as well as recovery for other damages allegedly caused by Director Defendants' actions, for a total of $600 million in damages. Plaintiffs further request that the Court order Allergan to take all necessary actions to reform and improve its corporate governance to comply with applicable laws.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Id.* at 1968. In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id*. Moreover, under a 12(b)(6) motion analysis, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri*, 901 F.2d at 699.

### B. Demand Futility Under Delaware Law

Under Fed. R. Civ. P. 23.1, a plaintiff seeking to initiate a derivative action is required to "plead with particularity either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort was made to demand action from the board." *Kanter v. Barella*, 489 F.3d 180, 176 (3d Cir. 2007). The pleading "must comply with stringent requirements of factual particularity that differ substantially from the permissive notice

pleadings governed solely by [Fed. R. Civ. P. 8]." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading. On the other hand, the pleader is not required to plead evidence. What the pleader must set forth are particularized factual statements that are essential to the claim." *Id*. A complaint that is full of "conclusory language . . . does not comply with these fundamental pleading mandates." *Id*.

"Rule 23.1 does not establish the circumstances under which demand would have been futile." *In re Silicon Graphics, Inc. Sec. Litig* ., 183 F.3d 970, 989-90 (9th Cir. 1999) (citing Fed. R. Civ. P. 23.1) (*abrogation recognized on other grounds by Simmonds v. Credit Suisse Securities (USA) LLC*, 2011 WL 135693, at *11 (9th Cir. 2011)). To determine demand futility standards, courts look to the law of the state of incorporation. *Id*. at 990. In this case, Allergan is incorporated in the State of Delaware, CC ¶ 26; therefore, the Court applies Delaware law to determine whether Plaintiffs have adequately plead demand futility.

The Delaware Supreme Court has held that demand on a board is futile if there is a substantial likelihood that a company's directors would face personal liability for the conduct complained of in the demand. *See Wood*, 953 A.2d at 144, n. 11 (stating that a "reasonable doubt that a majority of directors is incapable of considering demand should only be found where 'a substantial likelihood of personal liability exists.'") (quoting *Aronson*, 473 A.2d at 814; *Rales*, 634 A.2d at 936).

Delaware law recognizes two tests that may be applied to determine whether a demand on a board would be futile due to the likelihood of personal liability on the part of the directors. The first test, established by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), applies when a plaintiff is challenging a "*decision* of the board of directors." *Id*. at 814 (emphasis added). The second test, established by the Delaware Supreme Court in *Rales v. Blasband,* 634 A.2d 927 (Del.1993), applies when the derivative action is based on a board's *inaction* or a violation of the board's oversight duties. *See Stone ex rel. AmSouth Bancorporation v. Ritter,* 911 A.2d 362, 367 (Del. 2006) ("The standards for determining demand futility *in the absence of a business decision* are set forth in *Rales v. Blasband.*") (internal quotations omitted); *see also In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 170 (D. Del. 2009) (stating "'where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties,' the trial court must apply the *Rales* test." (quoting *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008)). In *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), the Delaware Supreme Court held that demand futility under the *Rales* standard can be based on allegations of a board's inaction in the face of "red flags" suggesting that the company's internal controls are inadequate and that these inadequacies give rise to substantial risk of illegal activity occurring. *Intel*, 621 F. Supp. 2d at 174; *see also King v. Baldino*, 648 F. Supp. 2d 609, 623 (D. Del. 2009) *aff'd sub nom. King ex rel. Cephalon Inc. v. Baldino*, 09-3834, 2010 WL 5078008 (3d Cir. Dec. 14, 2010).

### III.    DISCUSSION

In this case, Plaintiffs argue that the Board faced a substantial likelihood of personal liability and that any demand on them would have been futile. Plaintiffs advance three theories to explain how the conduct complained of in this case subjected the Director Defendants to a significant risk of personal liability: (1) the Director Defendants are liable under an oversight liability theory, under the analysis explained in *Caremark*; (2) the Director Defendants were not disinterested and independent and thus subject to liability under the test set forth in *Rales*; and (3) the Director Defendants did not exercise valid business judgment in making board decisions, much like the board member defendants in *Aronson*.

### A.    Oversight Liability Theory under *Caremark*

The bulk of Plaintiffs' demand futility arguments rest on the theory of liability articulated by the Delaware Supreme Court in *Caremark*. In order to plead demand futility under a *Caremark* theory, a plaintiff "must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or material harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed." *King*, 648 F. Supp. 2d at 621. A plaintiff may satisfy this pleading burden by alleging "particular facts which demonstrate that the directors 'ignored red flags indicating misconduct in defiance of their duties.'" *Id.*

Claims under *Caremark* are carefully scrutinized. The Delaware Supreme Court has stated that this theory of oversight liability "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967.

#### 1.    Plaintiffs Alleged "Red Flags" Are Not Sufficient

In the CC, Plaintiffs allege that Director Defendants "could not help but know about the illegal marketing activity at the Company due to its scope and pervasiveness at Allergan." CC ¶ 103. To support this contention, Plaintiffs allege two "red flags" that supposedly gave Director Defendants notice of the illegal off-label marketing. Plaintiffs first "red flag" asserts that due to the FDA's limited approved indications, it "was impossible for the Company to hit" such a high volume of sales "without significant off-label sales." *Id.* at ¶ 103. This assertion fails for two reasons. First, Plaintiffs incorrectly equate off-label *sales* with off-label *marketing*. The Plaintiffs themselves recognize that it is the off-label marketing of an FDA approved drug that is illegal, not the off-label sale. *See id.* at ¶ 4. Plaintiffs fail to plead any facts showing that the Board's knowledge of alleged off-label *sales* provided notice to the Director Defendants of the alleged illegal off-label *marketing*. Instead, Plaintiffs rely solely on the assertion that the Director Defendants should have inferred the use of illegal marketing due to the high number of sales. Courts have deemed such allegations insufficient for purposes of establishing demand futility. *See King*, 648 F. Supp. 2d at 624 (stating that an "increase [in sales of a drug] does not lead to the conclusion that the increase in sales was due to illegal activity by [defendant] employees which the Board, or those actually serving on the Board at the time, consciously ignored. . . .

The court determines, therefore, that plaintiff has not alleged particularized facts supporting his contention that the increase sales of [the drug] raised a red flag warning the Board of illegal sales activities . . ..").

Plaintiffs' second purported "red flag" indicating that Director Defendants should have known about the illegal marketing is based on the allegation that the board "was repeatedly made aware of the improper conduct occurring at the Company through" warning letters sent by the FDA. CC ¶ 134. This assertion also fails. Plaintiffs do allege the existence of various letters from the FDA regarding Allergan's allegedly misleading promotional activities. *See id.* at ¶¶ 79-80, 106. Plaintiffs, however, fail to provide particular supporting facts indicating that these letters were sufficient to put the Director Defendants on notice of Allergan's illegal marketing of off-label uses for Botox. For example, Plaintiffs fail to allege which, if any, Director Defendants actually received notice of Botox's alleged illegal off-label marketing through the letters from the FDA on August 22, 2001, and June 23, 2003. *See id.* at ¶¶ 79-80. Plaintiffs do allege that Defendant Pyott received two letters from the FDA in September 2005 and August 2009 regarding false or misleading advertisements regarding two other Allergan drugs – Lumigan and ACZONE. *See id.* at ¶ 106. Plaintiffs, however, fail to allege how these letters in any way implicate the illegal off-label marketing of Botox – the activity which ultimately lead to the Settlement Agreement at issue here.

2. <u>Plaintiffs Have Not Adequately Alleged that the Board Ignored Their Duties</u>

Even if the Plaintiffs had shown that its alleged red flags put the Director Defendants on notice of the illegal marketing of Botox, Plaintiffs fail to plausibly allege that the Director Defendants took no steps in a good faith effort to prevent or remedy the situation. Plaintiffs conclusorily claim that Director Defendants "consciously ignored the information" of the wrongdoings that ultimately led to extensive legal violations. CC ¶¶ 137-38. Plaintiffs, however, fail to allege facts with particularly in support of this contention. Plaintiffs even contradict this contention by pleading that some of the Defendants actually enacted policies attempting to push compliance with FDA regulations concerning the marketing of off-label uses for its drugs. *See id.* at ¶¶ 75-76. As such, Plaintiffs have failed to plead that the Director Defendants ignored alleged "red flags" in defiance of their duties.

B. **Disinterested and Independent Analysis under *Rales***

Plaintiffs' second theory of director liability is grounded in the allegations that the Director Defendants would not have exercised independent and disinterested business judgment in responding to a demand. *See Rales*, 634 A.2d at 934. A court applying the analysis from *Rales* first considers "'whether the underlying conduct complained of in the complaint . . . renders any of the board members 'interested.'" *King*, 648 F. Supp. 2d at 617 (quoting *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003)). Second, if a court determines that any of the board members are interested, the court next considers "'whether any of the other members of the board are compromised in their ability

to act independently of the directors found to be interested.'" *Id*. (quoting *Guttman*, 823 A.2d at 501-02). Finally, "[i]f a majority of the board is impartial under [the] initial analysis," the court must then "consider whether the complaint sets forth particularized facts that plead a non-exculpated claim of breach of fiduciary duty against a majority of the board, thereby stripping away their first-blush veneer of impartiality." *Id*. (quoting *Guttman*, 823 A.2d at 502).

1. <u>Whether any of the Director Defendants are "Interested"</u>

In order to for the Plaintiffs to establish that the Director Defendants are interested for demand futility purposes under *Rales*, Plaintiffs must plead facts showing that Director Defendants received "benefit from [the alleged conduct] that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 812). Director interest also exists "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id*. "In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Id*.

Plaintiffs' CC does not adequately allege that the Director Defendants are "interested" under the analysis set forth in *Rales*. Plaintiffs offer conclusory allegations regarding the Director Defendants' interest in the conduct alleged. CC ¶¶ 140-50. Plaintiffs, however, allege no specific facts in support of these contentions. Plaintiffs merely predicate their claims of director interest and lack of independence on the grounds that the Director Defendants were part of the Company board during the time in which Allergan was allegedly involved in illegal off-label marketing. Nowhere in the complaint do the Plaintiffs allege actual facts showing that any of the Director Defendants received a benefit from the alleged illegal conduct that was "not equally shared by the stockholders." *Rales*, 634 A.2d at 936. Therefore, Plaintiffs have failed to establish that the Director Defendants were "interested" for the purposes of demand futility.

2. <u>Whether any of the Director Defendants Lack "Independence"</u>

Even if the Court were to find that Plaintiffs adequately alleged the "interestedness" of certain Board members, Plaintiffs' demand futility allegations would still be insufficient. As previously stated, in order to establish demand futility, Plaintiffs must show that other members of the board "are compromised in their ability to act independently of the directors found to be interested." *Guttman*, 823 A.2d at 501-02. A plaintiff satisfies this pleading standard by alleging facts showing that a director's conduct is based on "extraneous considerations or influence" from the director deemed to be interested, rather than the "corporate merits of the subject matter before the board." *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 816).

Plaintiffs fail to assert particular facts to support the allegations that any of the Director Defendants lack independence from one another. Plaintiffs merely allege, in conclusory fashion, that

the Director Defendants lack independence due to their roles as board members during the time Allergan was allegedly involved in conduct leading to extensive legal violations. These allegations, devoid of reference to particular facts, are insufficient for purposes of establishing the existence of "extraneous considerations or influences" as required under *Rales*. *Rales*, 634 A.2d at 969. Moreover, Plaintiffs fail to assert that the alleged board conduct was not based on the "corporate merits of the subject matter before the board." *Id*. Therefore, Plaintiffs have failed to plead that none of the Director Defendants could be independent from any director alleged to be "interested."

### C.  Exercise of Business Judgment Analysis under *Aronson*

Although the bulk of Plaintiffs' claims are grounded in the Director Defendants' inaction, thereby implicating analysis under *Rales*, Plaintiffs' CC also invokes the *Aronson* standard by arguing that the Director Defendants "affirmatively adopted" a business strategy leading to violations of the law. *See* CC ¶ 132. As previously stated, *Aronson* applies when a shareholder is challenging "a *decision* of the board of directors." *Rales,* 634 A.2d 927, 933 (Del. 1993) (emphasis in original). Under *Aronson*, a court evaluates whether, under the particularized facts alleged, a reasonable doubt is created: (1) that the directors are disinterested and independent; *or* (2) that the challenged action was otherwise the result of a valid exercise of business judgment. *Aronson*, 473 A .2d at 812; *see also Rales,* 634 A.2d at 932 n.6. As also explained above, Plaintiffs have failed to plead particular facts creating a reasonable doubt that the Director Defendants were disinterested and independent; therefore, the Court now focuses on the second instance creating liability under *Aronson* – that the challenged action was not the result of a valid exercise of business judgment.

Plaintiffs' claim that the Director Defendants are liable under a failure to exercise valid business judgment theory because the board "affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread violations of applicable law."  CC ¶ 132. This allegation is based on the claim that "violations of the applicable law occurred . . . at every level of the Company as a direct result of the Board's decision to embrace a policy of calculated legal violations." *Id*. at ¶ 133. Plaintiffs, however, fail to support this contention with supporting facts to show that such a board decision actually existed. Nowhere in the complaint do the Plaintiffs allege facts with particularity that suggest that the Director Defendants actually made a *decision* to embrace a policy supporting the illegal use of off-label marketing. In fact, Plaintiffs claim that some of the Director Defendants did the opposite by enacting policies prohibiting the promotion of off-label uses of drugs. *See id*. at ¶¶ 75-76. The only decisions alleged in the complaint are those ambiguously claimed by the Company itself. *See id*. at ¶ 82 ("Allergan promoted Botox . . ."); *id*. at ¶ 82 ("Allergan aggressively promoted Botox for unapproved uses . . ."); *id*. ¶ 83 ("Allergan also leveraged . . . doctors in off-label specialties . . ."). Courts have held that allegations of a decision by the Company itself does not adequately plead a lack of business judgment by the individual directors. *See King*, 648 F. Supp. 2d at 623-24 (finding plaintiff's allegations insufficient for purposes of claiming demand futility because the complaint broadly alleged the actions of the "defendants" and not the individual Board members themselves); *see also In re Computer Sciences Corp. Derivative Litig.*, 244 F.R.D. 580, 590 (C.D. Cal.

2007) (stating that "a plaintiff cannot show that a director, or a whole board, is interested . . . because the board . . . failed to oversee subordinates who engaged in the questioned transactions") (quoting *Rales*, 634 A.2d at 934 n.9).  Plaintiffs' allegations are therefore insufficiently particular to trigger an inference of director liability due to an invalid exercise of business judgment.

## IV.    DISPOSITION

For the foregoing reasons, the Court GRANTS Director Defendants' and Nominal Defendant's Motions to Dismiss.  Plaintiff's claims are DISMISSED WITH LEAVE TO AMEND.  Plaintiffs shall file any amended complaint by May 9, 2011.

The Clerk shall serve this minute order on all parties to the action.