**B.  Demand Is Excused Because a Majority of the Board Faces
a Substantial Likelihood of Liability and Is Not
Disinterested and Independent**

207.  Even if knowingly presiding over multiple violations of applicable law were somehow entitled to the presumption of the business judgment rule (which it is not), demand is also futile and excused because a majority of the Board is not disinterested.

208.  Each of the Director Defendants was a member of Allergan's Board during some or all of the misconduct alleged herein.  As set forth herein, each of the Director Defendants was aware of the illegal Botox off-label sales and marketing scheme by virtue of among other things:  (a) the long-running nature of the wrongdoing; (b) Defendants' respective tenures on the Board and Committees, which were designed to monitor and ensure Allergan's compliance with federal laws and regulations; (c) Defendants' creation of strategies to maximize off-label sales of Botox; (d) ████████████████████████████████████████
███████████████████████████████████████████████
█████████ and (e) Defendants' signing of Company filings (including Annual Reports on Form 10-K) that acknowledged extensive and lengthy investigations into business practices across different products.  In fact, as alleged in the DOJ's Criminal Information and the several Civil *Qui Tam* Actions, and consistent with strategic plans generally implemented by boards of public companies, the Company's off-label sales and marketing scheme was a Board-reviewed and approved decision.  As a result of the Individual Defendants' misconduct, Allergan has been forced to admit that the wrongful scheme occurred, at a minimum, during the period from 2000 through 2005.

209.  Each of the Director Defendants was aware of, participated in and approved the wrongs alleged herein.  Thus, they have knowingly chosen not to exercise the fiduciary duties of loyalty, good faith, independence and candor owed to the Company, and not to protect Allergan or rectify the illegal practices complained of herein.  Each of the Director Defendants has therefore approved of and continues to

- 71 -

640138_1

1   participate in a course of corporate misconduct that includes approving and/or
2   condoning the illegal conduct and practices described herein. Each of the Director
3   Defendants had the ability and/or opportunity to prevent these practices. As members
4   of the Board, the Director Defendants are responsible for overseeing the Company's
5   compliance with legal requirements. Therefore, all of the Director Defendants are
6   liable for not ensuring that the officers and employees of the Company did not expose
7   the Company to unnecessary risk. Because the Director Defendants are liable for
8   approving and directing the illegal conduct described herein, demand would be futile.
9        210.   Defendants Boyer, Dunsire, Gallagher, Herbert, Hudson, Ingram, Jones,
10  Lavigne, Pyott, Ray, Ryan and Schaeffer cannot impartially consider a demand
11  because they face a substantial likelihood of liability. All of the current members of
12  the Board have served since at least 2006, the time period covered by the Company's
13  settlement. Of these directors, only two, Dunsire and Hudson, began their service
14  after 2005. Therefore, Defendants Pyott, Lavigne, Boyer, Gallagher, Herbert, Ingram,
15  Jones, Ray, Ryan and Schaeffer all served on the Board during the height of the
16  wrongdoing alleged herein. As explained herein, and pointed out by the DOJ, the
17  decision to engage in the illegal sales was a "top corporate priorit[y]." The scope and
18  length of the wrongdoing is overwhelming. As explained herein, these Director
19  Defendants were awash in red flags alerting them to the Company's illegal marketing
20  activities. The Director Defendants were required to act upon this information that
21  came to them about the illegal off-label marketing practices to protect the Company
22  from continued legal violations being committed in its name. Rather than doing so,
23  the Director Defendants, in violation of their legal obligations, consciously ignored
24  the information presented to them and about which they were otherwise made aware
25  concerning the Company's extensive legal violations. As a result, Defendants Boyer,
26  Dunsire, Gallagher, Herbert, Hudson, Ingram, Jones, Lavigne, Pyott, Ray, Ryan and
27  Schaeffer face a substantial likelihood of liability for their conduct. Demand is
28  therefore excused.

- 72 -

211.   Defendants Boyer, Ingram, Dunsire, Jones and Schaeffer each served on the Corporate Governance Committee at the time of the wrongdoing complained of herein.   The Corporate Governance Committee Charter charges these Director Defendants with reviewing reports from management regarding compliance-related matters affecting the Company and providing general oversight of Allergan.   In particular, the Corporate Governance Committee Charter states that the members of the Committee "regularly receive[] comprehensive reports from management regarding compliance-related matters affecting the Corporation and provide[] general compliance oversight to the Corporation." This is further supported by Board meeting minutes produced in this action.   Defendants Boyer, Ingram, Dunsire, Jones and Schaeffer's failure to act in accordance with their duties in good faith is a breach of their duty of loyalty and subjects them to a substantial likelihood of liability. Accordingly, demand is excused on Defendants Boyer, Ingram, Dunsire, Jones and Schaeffer. The Director Defendants serving on the Corporate Governance Committee are therefore incapable of impartially responding to a demand.

212.   Director Defendants Lavigne, Gallagher, Ray, Hudson and Ryan all served on the Audit and Finance Committee at the time of the wrongdoing complained of herein.   As members of the Audit and Finance Committee, these directors had heightened duties to ensure the Company's compliance with applicable laws and regulations and implement effective internal controls. Because Defendants Lavigne, Gallagher, Ray, Hudson and Ryan had an affirmative duty to ensure that the Company maintained adequate internal controls over financial reporting and the integrity of the Company's financial statements and failed to do so, they breached their fiduciary obligations due to the Company.   These breaches subject them to a substantial likelihood of liability.   Therefore, demand on Defendants Lavigne, Gallagher, Ray, Hudson and Ryan is excused as futile because these Director Defendants on the Audit and Finance Committee are incapable of impartially responding to a demand.

640138_1

213.   Director Defendants Ingram, Lavigne, Ryan and Dunsire all served on the Science and Technology Committee at the time of the wrongdoing complained of herein.  As members of the Science and Technology Committee and by virtue of the Charter for this Committee as set forth above, these directors had direct knowledge and oversight of the programs described herein to research off-label uses of Botox. Accordingly, demand on Director Defendants Ingram, Lavigne, Ryan and Dunsire is excused as futile because these Defendants are incapable of impartially responding to a demand.

214.   At all relevant times, the Company maintained robust internal controls and financial reporting systems.  Indeed, Defendants never reported any failure or deficiency in these controls and reporting systems.  On the contrary, the controls functioned as designed, and the Director Defendants received timely information concerning Allergan's financial performance, sales and earnings, projected and actual results, and actual and contingent risk facing Allergan's business, including the off-label marketing of Botox.

215.   ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████

216.   Director Defendant Pyott is the Company's current CEO and has been since 1998, the entire time the off-label marketing scheme has occurred at Allergan. As CEO of the Company, Pyott runs the daily operations of Allergan.  The DOJ pointed out that it was one of the Company's top priorities to expand the use of Botox and to use off-label marketing as a tool to accomplish that expansion.  The Company could not have created this top priority without the approval of its CEO, Pyott. Therefore, Pyott is responsible for the Company's lack of adequate internal controls

640138_1

1  and violations of applicable law and faces a substantial likelihood of liability, raising a
2  reasonable doubt about whether he could impartially consider a demand.  Moreover,
3  the revenues derived from the off-label marketing of Botox increased the total
4  revenues and thereby increased the compensation of Defendant Pyott as CEO of the
5  Company.  Because the increased revenue resulted in the increased compensation of
6  Pyott, which he would be required to disgorge, Pyott cannot impartially consider a
7  demand.

8      217.  According to the Committee's Charter, the Compensation Committee is
9  responsible for approving the CEO's compensation.  In 2009, Director Defendant
10  Pyott received over $1.3 million in base salary from Allergan – placing him in the
11  98th percentile in salary among peer executives.  The Compensation Committee is
12  comprised of Defendants Gallagher, Hudson, Schaeffer, Ingram and Ray.  As the
13  members of the Compensation Committee singularly control approval of Pyott's
14  compensation, Pyott will not institute or support an action against Defendants
15  Gallagher, Hudson, Schaeffer, Ingram and Ray.  Pyott is dependent on the conflicted
16  directors referenced herein for his substantial remuneration, and to institute or support
17  an action against them would jeopardize his own compensation.  Thus, demand on
18  Pyott is futile.  Furthermore, because the Compensation Committee members
19  (Gallagher, Hudson, Schaeffer, Ingram and Ray) approved the exorbitant salary to
20  Pyott when they knew of the illegal conduct in which the Individual Defendants were
21  collectively causing Allergan to engage, the Compensation Committee members are
22  incapable of impartially considering a demand.

23      218.  Additionally, Defendant Pyott became Chairman of the Board in 2001
24  and also served as President from January 1998 until February 2006.  Thus, Pyott is
25  well versed on the applicable laws and regulations distinguishing between lawful sales
26  and marketing practices and illegal off-label promotions.  It was on his watch that
27  Allergan engaged in the long-running illegal scheme detailed herein.  Thus, a
28  reasonable doubt is raised that Defendant Pyott is disinterested and independent,

- 75 -

640138_1

rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

219. Similarly, Defendant Herbert is interested and lacks independence. Herbert is a founder of Allergan, served as the Company's CEO for 30 years and has served as Chairman of Allergan's Board continuously since 1977. Thus, a reasonable doubt is raised that Defendant Herbert is disinterested and independent, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

220. Defendants Lavigne and Boyer are also interested and lack independence. Lavigne and Boyer worked together at Genentech, Inc. Lavigne, a member of Allergan's Board since 2005, served as Genentech's Executive Vice President and CFO from March 1997 through March 2005. Similarly, Boyer is a founder of Genentech and served as a company director from 1976 through 2009. Thus, a reasonable doubt exists that Defendants Boyer and Lavigne are disinterested and independent of each other, rendering them incapable of impartially considering a demand to commence and vigorously prosecute this action.

221. Director Defendants Pyott and Dunsire are also interested and lack independence. Pyott and Dunsire were each employed during an overlapping two year period in 1996 and 1997 as executives of Novartis AG. Dunsire was Novartis AG's Senior Vice President, Head of North American Oncology Operations from July 2000 to July 2005, and Vice President, Oncology Business Unit from August 1996 to June 2000. Pyott served as a Head of the Nutrition Division of Novartis AG from 1995 to December 1997.

222. Director Defendants Herbert, Ryan and Schaeffer are also interested and lack independence. Herbert, Ryan and Schaeffer each have a current and ongoing relationship through the University of Southern California ("USC"). Herbert is a Life Trustee of USC. Ryan has been a member of the USC faculty since 1974, served as Dean of the Keck School of Medicine at USC from 1991-2004, served as chair of the

640138_1

1  USC Ophthalmology Department from 1974-1995, and is the current President of the

2  USC-affiliated Doheny Eye Institute. Ryan is also a Grace and Emery Beardsley

3  Professor of Ophthalmology at the Keck School of Medicine at USC. Schaeffer has

4  been a Judge Widney Professor and Chair at USC since 2008. "Gifts" from Schaeffer

5  were used to open USC's Leonard D. Schaeffer Center for Health Policy and

6  Economics.

7      223.   All the Director Defendants, including each member of the Board, face a

8  substantial likelihood of liability arising from their violation of the federal securities

9  laws in connection with their issuance of the Proxy Statements. The Proxy Statements

10 constituted solicitations by the Director Defendants, as applicable, for which they may

11 be held personally liable under the federal securities laws. As set forth herein, the

12 Proxy Statements were materially inaccurate and incomplete, which caused significant

13 harm to the Company.  As a result, the Director Defendants bear a substantial

14 likelihood of liability for violations of the federal securities laws, are hopelessly

15 conflicted and not disinterested with respect to such claims and are fundamentally

16 disabled from impartially considering a demand to impose liability on themselves for

17 violating their own statutory disclosure obligations.

18     224.   The Director Defendants are likewise conflicted and unable to pursue the

19 Company's claims against the Officer Defendant (*i.e.*, Pyott). Any effort to directly

20 prosecute such claims against the Officer Defendant for his direct role in the

21 violations of applicable law carried out in Allergan's name would necessarily expose

22 the Board's own culpability for the very same conduct. In other words, given that the

23 Board was required to be regularly informed concerning the Company's compliance

24 or non-compliance with applicable laws and the consent decree, any effort by the

25 Director Defendants to hold the Officer Defendant liable would lead the Officer

26 Defendant to defend on the ground that his own conduct was consistent with corporate

27 policy and practice, as established and by and known to the Board.

28

640138_1

225.   Moreover, the acts complained of constitute violations of the fiduciary duties owed by Allergan's officers and directors, and these acts are incapable of ratification.  Despite having knowledge of the claims and causes of action raised by Plaintiffs, the current Board has failed and refused to seek to recover on behalf of Allergan for any of the wrongdoing alleged by Plaintiffs herein.

226.   Each of the Director Defendants authorized and/or permitted the improper statements disseminated by Allergan directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the improper statements, and are principal beneficiaries of the wrongdoing alleged herein and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

227.   Further, upon information and belief, each of the Director Defendants authorized the filing by Allergan on October 1, 2009 of a civil action in the United States District Court for the District of Columbia captioned *Allergan, Inc. v. United States of America, et al.*, Case No. 1:09-cv-01879 (D.D.C. Oct. 1, 2009) (the "*Allergan Declaratory Relief Action*").   The *Allergan Declaratory Relief Action* sought a declaratory judgment and injunctive relief against the United States of America, the FDA, Dr. Margaret Hamburg (Commissioner of the FDA) and Kathleen Sebelius (Secretary of the U.S. Department of Health and Human Services) (collectively, the "*Allergan Declaratory Relief Action Defendants*"), alleging that the regulatory scheme of the FDCA, as enforced by the FDA (and the remaining *Allergan Declaratory Relief Action Defendants*) violates Allergan's First Amendment rights.  In addition to filing the *Allergan Declaratory Relief Action*, Allergan litigated the action by filing a Motion for Preliminary Injunction on October 1, 2009 ("*PI Motion*") and, on January 15, 2010, filed a Cross-Motion for Summary Judgment and Opposition to Motion to Dismiss or for Summary Judgment ("*Cross-SJ Motion*").  As a condition of the civil and criminal settlements, Allergan was required to dismiss the *Allergan Declaratory Relief Action* with prejudice.   However, the filing of the *Allergan*

640138_1

1    *Declaratory Relief Action* and the active litigation of the action via the *PI Motion* and

2    the *Cross-SJ Motion* establish that the Director Defendants are hostile to the claims

3    that Allergan's conduct in engaging in off-label marketing of Botox was a violation of

4    the FDCA and applicable law.  Indeed, in the *Allergan Criminal Memo*, Allergan (via

5    the Individual Defendants) affirmatively states its continuing and adverse position that

6    it "believes the declaratory action [*i.e.*, the *Allergan Declaratory Relief Action*] had

7    merit."  Accordingly, the Director Defendants have evidenced their hostility to the

8    allegations that off-label marketing of Botox (or any other pharmaceutical product) is

9    a violation of the FDCA and other applicable law.  As such, each of the Director

10    Defendants is incapable of impartially considering a demand to institute this action on

11    Allergan's behalf.

12        228.   In addition, Plaintiffs have not made any demand on the shareholders of

13    Allergan to institute this action since such demand would be a futile and useless act

14    for at least the following reasons:

15            (a)     Allergan is a publicly held company with over 307 million shares

16    outstanding and thousands of shareholders; and

17            (b)     making a demand on such a number of shareholders would be

18    impossible because Plaintiffs have no way of finding out the names, addresses or

19    phone numbers of shareholders.

20        229.   Allergan's public investors had no reason to know of the Individual

21    Defendants' breaches of their fiduciary duties until at least September 1, 2010, when

22    the DOJ announced the civil and criminal settlements.

23        230.   Finally, as fiduciaries of Allergan and its public shareholders, Defendants

24    cannot rely on any limitations defense where they withheld from Allergan's public

25    shareholders the facts that give rise to the claims asserted herein.

26

27

28

- 79 -

640138_1

# COUNT I

### Against All Defendants
### For Violation of Section 29(b) of the Exchange Act

231.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

232.   The employment and compensation contracts identified herein, including the 2008 Incentive Award Plan, and all stock and options contracts entered by the Company, were entered in violation of the Exchange Act and rules prescribed thereunder, including Rule 10b-5. The employment and compensation contracts were authorized by Defendants pursuant to the false and misleading Proxy Statements and other materially false statements, omissions and/or schemes or practices that acted as a fraud upon Allergan. There is contractual privity between Allergan and the recipients of the employment and compensation contracts. Allergan and its public investors are in the class of persons the Exchange Act was designed to protect.

233.   Accordingly, Defendants' employment and compensation contracts, including the benefits received via the 2008 Incentive Award Plan, must be rescinded and the remaining option contracts and restricted stock units issued pursuant to the 2008 Incentive Award Plan deemed void.

# COUNT II

### Against the Individual Defendants
### For Breach of Fiduciary Duty and/or
### Aiding and Abetting Breach of Fiduciary Duty

234.   Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

235.   The wrongful conduct alleged herein (including the Covered Conduct and Criminal Conduct) was continuous, connected and ongoing throughout the relevant time period. The wrongful conduct resulted in continuous, connected and ongoing harm to the Company.

640138_1

236.   As alleged in detail herein, the Individual Defendants, by reason of their positions as officers and directors of Allergan and because of their ability to control the business and corporate affairs of Allergan, owed Allergan fiduciary obligations of good faith and loyalty and were and are required to use their utmost ability to control and manage Allergan in a fair, just, honest and equitable manner.

237.   The Individual Defendants violated their fiduciary duties of loyalty and good faith by failing in their enumerated duties, which caused the violations of federal law (including the Covered Conduct and Criminal Conduct) that led to the civil and criminal settlements of $600 million.

238.   The Individual Defendants further violated their fiduciary duty of loyalty by permitting a Company-wide business strategy which involved various violations of state and federal law, including the Covered Conduct and the Criminal Conduct.

239.   As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages as alleged herein.

240.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

## COUNT III

### Against All Defendants
### For Waste of Corporate Assets

241.   Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

242.   The wrongful conduct alleged herein (including the Covered Conduct and Criminal Conduct) was continuous, connected and ongoing throughout the relevant time period.  The wrongful conduct resulted in continuous, connected and ongoing harm to the Company.

243.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by: (a) failing to maintain sufficient internal controls over the Company's marketing and sales process; (b) failing to properly consider the interests

- 81 -

640138_1

1  of the Company and its public shareholders; (c) failing to conduct proper supervision;
2  (d) paying undeserved incentive compensation to certain of its executive officers; and
3  (e) incurring hundreds of millions of dollars of legal liability and/or legal costs to
4  defend Defendants' unlawful actions.

5      244.   As a result of the waste of corporate assets, the Individual Defendants are
6  liable to the Company.

7      245.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

8                              **COUNT IV**
9                          **Against All Defendants**
                          **For Unjust Enrichment**
10
11     246.   Plaintiffs incorporate by reference and reallege each and every allegation
    set forth above as though fully set forth herein.
12
13     247.   The wrongful conduct alleged herein (including the Covered Conduct and
    Criminal Conduct) was continuous, connected and ongoing throughout the applicable
14
    time period.  The wrongful conduct resulted in continuous, connected and ongoing
15
    harm to the Company.
16
17     248.   By their wrongful acts and omissions, the Individual Defendants were
18  unjustly enriched at the expense of and to the detriment of Allergan.  The Individual
    Defendants were unjustly enriched as a result of the compensation and director
19
    remuneration they received while breaching fiduciary duties owed to Allergan.
20
21     249.   Plaintiffs, as shareholders and representatives of Allergan, seek
22  restitution from these Defendants, and each of them, and seek an order of this Court
    disgorging all profits, benefits and other compensation obtained by these Defendants,
23
    and each of them, from their wrongful conduct and fiduciary breaches.
24
25     250.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

26
27
28

640138_1

- 82 -

# COUNT V

### Against the Insider Selling Defendants
### For Violations of California Corporations Code
### Sections 25402 and 25502.5

251.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

252.   At the time the Insider Selling Defendants sold their Allergan common stock as set forth herein, by reason of their high executive and/or directorship positions with Allergan, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts concerning the Covered Conduct in which the Individual Defendants caused Allergan to engage.  The Insider Selling Defendants collectively sold more than $93 million worth of their personally held Allergan stock while in possession of these materially adverse, nonpublic facts.

253.   At the time of the Insider Selling Defendants' stock sales, the materially adverse facts detailed herein and in the Covered Conduct was information not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Allergan shares at that time.

254.   The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse, nonpublic information concerning the Covered Conduct and thus sold their Allergan common stock in California in violation of California Corporations Code §25402.

255.   Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Allergan for damages in an amount up to three times the difference between the price at which Allergan common stock was sold by the Insider Selling Defendants, and each of them, and the market value which that Allergan common stock would have had at the time of the sale if the information (*i.e.*, the Covered Conduct) known to the Insider Selling Defendants, and each of

640138_1

them, had been publicly disseminated prior to that time and a reasonable time had
elapsed for the market to absorb the information.

256.   At all relevant times, Allergan's common stock has been held by more
than 500 shareholders of record.  Allergan has assets in excess of $7 million.

257.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

## COUNT VI

### Against the Insider Selling Defendants
### For Breach of Fiduciary Duties for Insider Selling
### and Misappropriation of Information

258.   Plaintiffs incorporate by reference and reallege each and every allegation
set forth above as though fully set forth herein.

259.   At the time of the stock sales set forth herein, the Insider Selling
Defendants knew the adverse, nonpublic information about the Covered Conduct, as
described above, and sold Allergan common stock on the basis of such information.

260.   The adverse, nonpublic information about the Covered Conduct
described above was proprietary nonpublic information concerning Allergan's
compliance with legal and regulatory requirements, its fiscal condition and future
business prospects.   Such information was a proprietary asset belonging to the
Company that the Insider Selling Defendants used for their own benefit when they
sold their Allergan common stock as set forth herein.

261.   At the time of the Allergan stock sales alleged herein, the Insider Selling
Defendants knew they were causing Allergan to engage in the Covered Conduct.  The
Insider Selling Defendants' sales of their personal Allergan stock while in possession
and control of this material, nonpublic adverse information was a breach of their
fiduciary duties of good faith, honesty and loyalty.

262.   Due to the fact that the use of the Company's proprietary information for
their own gain constitutes a breach of the fiduciary duties owed to Allergan and its
shareholders by the Insider Selling Defendants, the Company is entitled to the

- 84 -

640138_1

1  imposition of a constructive trust on any profits obtained by the Insider Selling
2  Defendants as a result of their stock sales.

3      263.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

4                              **COUNT VII**

5                         **Against All Defendants**
                     **For Breach of Fiduciary Duty in Violation of**
6                   **California Corporations Code Section 309**

7      264.   Plaintiffs incorporate by reference and reallege each and every allegation
8  contained above as though fully set forth herein.

9      265.   The wrongful conduct alleged herein (including the Covered Conduct and
10 Criminal Conduct) was continuous, connected and ongoing throughout the relevant
11 time period.  The wrongful conduct resulted in continuous, connected and ongoing
12 harm to the Company.

13     266.   As alleged in detail herein, Defendants, by reason of their positions as
14 officers and directors of Allergan and because of their ability to control the business
15 and corporate affairs of Allergan, owed Allergan fiduciary obligations of good faith
16 and loyalty and were and are required to use their utmost ability to control and
17 manage Allergan in a fair, just, honest and equitable manner.

18     267.   Defendants violated their fiduciary duties of loyalty and good faith by
19 failing in their enumerated duties, which caused the violations of federal law
20 (including the Covered Conduct and Criminal Conduct) that led to the civil and
21 criminal settlements of $600 million.

22     268.   Defendants further violated their fiduciary duty of loyalty by permitting a
23 Company-wide business strategy that involved various violations of federal law,
24 including the Covered Conduct and the Criminal Conduct.

25     269.   As a direct and proximate result of Defendants' foregoing breaches of
26 fiduciary duty, the Company has suffered significant damages, as alleged herein.

27     270.   Plaintiffs, on behalf of Allergan, have no adequate remedy at law.

28
                                    - 85 -
640138_1

## COUNT VIII

**Against the Proxy Defendants**
**For Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9**
**Promulgated Thereunder, Based upon Material Misstatements in and**
**Omissions from Allergan's Proxy Statements**

271.   Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

272.   The Proxy Defendants caused Allergan to issue the Proxy Statements to solicit shareholder votes for the election of directors and, with respect to the 2008 Proxy Statement, for approval of the 2008 Incentive Award Plan.

273.   As alleged in detail above, these Proxy Statements contained materially inaccurate and incomplete disclosures, including by omitting to disclose:

(a)   the extent to which the Company's financial results depended on the Company's off-label marketing of Botox, which exposed the Company and its shareholders to tremendous regulatory, reputational and financial risk;

(b)   the nature of the Board's performance of its duties under the charters of the Board's various committees, including the reason for the then-current directors' decision to allow continued off-label and otherwise improper marketing despite the risks to the Company, its shareholders or its patients; and

(c)   the numerous instances in which the Board was informed of legal compliance violations, including the Covered Conduct and Criminal Conduct, concerning the unlawful marketing of Allergan drugs.

274.   The inaccuracies and omissions in each of the Proxy Statements concerned matters of material importance to the Company and were material to shareholders in response to the solicitations embodied in each Proxy Statement. The Proxy Statements were an essential link in Defendants' conscious disregard for Allergan's known illegal sales and promotion practices, as disclosure of the truth to shareholders would have brought an end to the shareholders' endorsement of the

- 86 -

640138_1

1  Proxy Defendants as fiduciaries and termination of the Company's compensation
2  policies.

3       275.  The Proxy Defendants' failure to include these material facts in the Proxy
4  Statements rendered the Proxy Statements materially inaccurate and incomplete, in
5  violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

6       276.  As a direct and proximate result of the issuance of the materially
7  inaccurate and incomplete Proxy Statements, Allergan suffered direct and significant
8  damages in the form of, *inter alia*, the perpetuation of the widespread misconduct (*i.e.*,
9  the Covered Conduct and Criminal Conduct) committed in the Company's name,
10  substantial fines and penalties inflicted on the Company for this misconduct and
11  substantial additional liabilities related to the Civil *Qui Tam* Actions, the Criminal
12  Action, and other lawsuits and investigations, as well as significant expenses related
13  thereto.  The Company was also directly damaged by the enactment of the 2008
14  Incentive Award Plan, which enactment was likewise solicited by the materially
15  inaccurate and incomplete 2008 Proxy Statement.  Accordingly, the harm to the
16  Company includes:

17       (a)  the $600 million (plus any applicable interest) paid in connection
18  with the civil and criminal settlements;

19       (b)  damages and the costs of legal expenses to defend against the
20  widespread illegal conduct in which Defendants caused Allergan to engage, including
21  the conduct giving rise to the Civil *Qui Tam* Actions, the Criminal Action and other
22  suits and investigations relating to the Covered Conduct and Criminal Conduct; and

23       (c)  loss of Allergan's market value due to its loss of reputation and
24  goodwill.

25       277.  In connection with the improper acts alleged under this Count, the Proxy
26  Defendants, directly or indirectly, used the means and instrumentalities of interstate
27  commerce, including, but not limited to, the United States mail, interstate telephone
28  communications or the facilities of a national securities exchange.

640138_1

1    278.   This Count is only alleged against the Proxy Defendants as to those

2    Proxy Statements that were issued during their terms as directors on the Board.

3    **PRAYER FOR RELIEF**

4    WHEREFORE, Plaintiffs demand judgment as follows:

5    A.   Against all Defendants and in favor of the Company for the amount of

6    damages sustained by the Company as a result of the Individual Defendants' breaches

7    of fiduciary duties, waste of corporate assets and unjust enrichment;

8    B.   Directing Allergan to take all necessary actions to reform and improve its

9    corporate governance and internal procedures to comply with applicable laws and to

10   protect Allergan and its shareholders from repeating the damaging events described

11   herein, including, but not limited to, putting forward for shareholder vote resolutions

12   for amendments to the Company's Bylaws or Articles of Incorporation and taking

13   such other action as may be necessary to place before shareholders for a vote the

14   following Corporate Governance Policies:

15   1.   A proposal to strengthen the Board's supervision of operations and

16   develop and implement procedures for greater shareholder input into the policies and

17   guidelines of the Board;

18   2.   A provision to permit the shareholders of Allergan to nominate at

19   least three candidates for election to the Board;

20   3.   A proposal to ensure the accuracy of the qualifications of

21   Allergan's directors, executives and other employees; and

22   4.   A proposal to strengthen Allergan's internal controls over its

23   marketing and sales processes;

24   C.   An order invalidating the election of directors to the Board approved

25   based on the misleading Proxy Statements;

26   D.   An order invalidating the authorization of the 2008 Incentive Award Plan

27   approved based on the misleading 2008 Proxy Statement;

28

640138_1

- 88 -

1       E.      Extraordinary equitable and/or injunctive relief as permitted by law,

2 equity and state statutory provisions sued hereunder, including attaching, impounding,

3 imposing a constructive trust on or otherwise restricting Defendants' assets so as to

4 assure that Plaintiffs on behalf of Allergan have an effective remedy;

5       F.      Awarding to Allergan restitution from Defendants, and each of them, and

6 ordering disgorgement of all profits, benefits and other compensation obtained by

7 Defendants;

8       G.      Awarding to Plaintiffs reasonable attorneys' fees, consultant fees, expert

9 fees, costs and expenses; and

10       H.      Granting such other and further relief as the Court deems just and proper.

11                                 **JURY DEMAND**

12       Plaintiffs demand a trial by jury.

13 DATED: July 11, 2011              ROBBINS GELLER RUDMAN

14                                           & DOWD LLP
                                        AELISH M. BAIG

15

16

17                                      AELISH M. BAIG

18                                      Post Montgomery Center
                                     One Montgomery Street, Suite 1800

19                                      San Francisco, CA 94104
                                     Telephone: 415/288-4545

20                                      415/288-4534 (fax)

21                                      ROBBINS GELLER RUDMAN
                                     & DOWD LLP

22                                      DARREN J. ROBBINS
                                     TRAVIS E. DOWNS III

23                                      DAVID W. MITCHELL
                                     BENNY C. GOODMAN III

24                                      BRIAN O. O'MARA
                                     655 West Broadway, Suite 1900

25                                      San Diego, CA 92101
                                     Telephone: 619/231-1058

26                                      619/231-7423 (fax)

27

28

640138_1

1

2                ROBBINS UMEDA LLP
BRIAN J. ROBBINS
3                FELIPE J. ARROYO
ARSHAN AMIRI
4                600 B Street, Suite 1900
San Diego, CA  92101
5                Telephone:  619/525-3990
619/525-3991 (fax)

6                THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
7                12707 High Bluff Drive, Suite 200
San Diego, CA  92130
8                Telephone:  858/794-1441
858/794-1450 (fax)

9

10              THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
11             BRETT D. STECKER
JEFFREY J. CIARLANTO
12             121 N. Wayne Avenue, Suite 100
Wayne, PA  19087
13             Telephone:  610/225-2677
610/225-2678 (fax)

14             Co-Lead Counsel for Plaintiffs

15             SUGARMAN & SUSSKIND
ROBERT SUGARMAN
16             PEDRO A. HERRERA
100 Miracle Mile, Suite 300
17             Coral Gables, FL  33134
Telephone:  305/529-2801
18             305/447-8115 (fax)

19             Additional Counsel for Plaintiffs

20

21

22

23

24

25

26

27

28

640138_1

- 90 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, AELISH M. BAIG, hereby declare as follows:

I am associated with the law firm of Robbins Geller Rudman & Dowd LLP, counsel for plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

I make this Verification because plaintiffs are absent from the County of San Francisco where I maintain my office.

Executed this 11th day of July, 2011 at San Francisco, California.

_____
                    AELISH M. BAIG

640138_1

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, California 94104.

2.      That on July 27, 2011, declarant served the FIRST AMENDED VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS, VIOLATIONS OF CALIFORNIA CORPORATIONS CODE, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 27, 2011, at San Francisco, California.

_____
DEBORAH R. DASH

- 92 -

640138_1

ALLERGAN DERIVATIVE
Service List - 7/27/2011   (10-0184)
Page 1 of 2

**Counsel For Defendant(s)**

John C. Hueston
Daniel P. Lefler
Lillie A. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
 310/277-1010
 310/203-7199 (Fax)


**Counsel For Plaintiff(s)**

| | |
|---|---|
| Debra S. Goodman<br>Law Office of Debra S. Goodman P.C.<br>1301 Skippack Pike, Suite 7A #133<br>Blue Bell, PA  19422<br> 610/277-6057<br> 484/231-1922 (Fax) | William C. Wright<br>Leopold Kuvin P.A.<br>2925 PGA Blvd., Suite 200<br>Palm Beach Gardens, FL  33410<br> 561/515-1400<br> 561/515-1401 (Fax) |
| Travis E. Downs III<br>David W. Mitchell<br>Benny C. Goodman III<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br> 619/231-1058<br> 619/231-7423 (Fax) | Brian J. Robbins<br>Felipe J. Arroyo<br>Arshan  Amiri<br>Robbins Umeda LLP<br>600 B Street, Suite 1900<br>San Diego, CA  92101<br> 619/525-3990<br> 619/525-3991 (Fax) |
| Robert A. Sugarman<br>Pedro A. Herrera<br>Sugarman & Susskind<br>100 Miracle Mile, Suite 300<br>Coral Gables, FL  33134<br> 305/529-2801<br> 305/447-8115 (Fax) | Kip B. Shuman<br>Rusty E. Glenn<br>The Shuman Law Firm<br>885 Arapahoe Avenue<br>Boulder, CO  80302<br> 303/861-3003<br> 303/484-4886 (Fax) |

ALLERGAN DERIVATIVE
Service List - 7/27/2011    (10-0184)
Page 2 of  2

Kathleen A. Herkenhoff
The Weiser Law Firm, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA  92130
   858/794-1441
   858/794-1450(Fax)

Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
The Weiser Law Firm, P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA  19087
   610/225-2677
   610/225-2678(Fax)

**Courtesy Copy**

Jeffrey H. Reeves
Kristopher P. Diulio
Wayne W. Smith
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612-4412
   949/451-3800
   949/451-4220(Fax)