# EXHIBIT D



November 3, 2010

**VIA FEDERAL EXPRESS**

Allergan, Inc.
c/o David E.I. Pyott, Chairman
Board of Directors
2525 Dupont Drive
Irvine, CA 92612

Re: *Demand for Inspection of Books and Records of Allergan, Inc. Pursuant to 8 Del. C. § 220*

Dear Mr. Pyott:

I write on behalf of U.F.C.W. Local 1776 & Participating Employers Pension Fund ("UFCW Fund"), a beneficial owner of Allergan, Inc. ("Allergan" or the "Company") common stock. Attached to this letter as Exhibit "A" is a true and correct copy of the most recent brokerage account statement reflecting UFCW Fund's beneficial ownership of Company stock. Attached to this letter as Exhibit "B" is a true and correct copy of the Special Power of Attorney authorizing me and my counsel, Egan Young, Shepherd, Finkelman, Miller & Shah, LLP, and Rigrodsky & Long, P.A., to act on behalf of UFCW Fund in connection with this demand. Attached to this letter as "Exhibit C" is a true and correct copy of the Verification of Regina Reardon.

I hereby demand, pursuant to Section 220 of the Delaware General Corporation Law, that Allergan immediately make the following books, records, and documents[1] available for inspection and copying during the usual hours of business:

1. All Board Materials[2] concerning the Company's sales, marketing, or branding of BOTOX for both Food and Drug Administration ("FDA") approved and "off-label" uses,

---

[1] The term "documents" as used herein is to be construed as broadly as possible under the Rules of the Delaware Court of Chancery, and includes, without limitation, any and all correspondence concerning the demanded categories, whether sent via mail, facsimile, electronic communication, or otherwise.

[2] The term "Board Materials" as used herein means all documents concerning, related to, provided at, considered at, discussed at, or prepared or disseminated in connection with any meeting of the Company's Board of Directors or any regular or specially created committee thereof (including, without limitation, the Audit and Finance, Corporate Governance,

{W0042398.DOC} 526 Township line Road Suite 100 | Blue Bell PA 19422 | Office: 215 367.5151 | Fax: 215 367.5155 | Web: www.eganyoung.com
*Egan Young is an association of professional corporations.

EXHIBIT D, PAGE 44

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 2

conditions, and dosages, including, but not limited to, the establishment, modification, implementation, and/or oversight[3] of any sales, marketing, or branding programs, campaigns, strategies, or the like, including, but not limited to, the:

      a.    Promotion of BOTOX for the FDA approved treatment of strabismus, blepharospasm, cervical dystonia, primary axillary hyperhidrosis, and increased muscle stiffness in the elbow, wrist and finger muscles in adults with upper-limb spasticity;

      b.    Promotion of BOTOX for off-label or unapproved uses through, among other ways, false and fraudulent statements to physicians regarding BOTOX's efficacy, made through Allergan's salesmen and medical liaisons, Continuing Medical Education programs funded by Allergan, off-label injection training sessions funded by Allergan, articles published in journals and magazines that were written in whole or in part by Allergan employees, and websites funded and controlled by Allergan;

      c.    Promotion of BOTOX for off-label or unapproved uses by training physicians to miscode and alter records on claims forms to ensure payment by Medicare, Medicaid, and other federal health care programs;

      d.    Promotion of BOTOX for off-label or unapproved uses by providing physicians with "value added support services," including individual patient audits, that would facilitate third party reimbursement payments, maximize payments to doctors, and encourage additional sales of BOTOX;

      e.    Promotion of BOTOX for off-label or unapproved uses by providing kickbacks to physicians;

      f.    Promotion of BOTOX for off-label or unapproved uses by making false statements to Medicare and other federal health care program contractors to impact coverage determinations;

      g.    Promotion of BOTOX for off-label or unapproved uses by paying doctors to attend Advisory Boards, promotional dinners, or to tout Botox's efficacy for off-label uses;

---

Organization and Compensation, and Science & Technology Committees), including all presentations, board packages, recordings, agendas, summaries, memoranda, transcripts, notes, minutes of meetings, drafts of minutes of meetings, exhibits distributed at meetings, summaries of meetings, or resolutions.

[3] The term "oversight" shall include, without limitation, oversight by the Company's Board of Directors, or any committee thereof (including the Company's Audit and Finance, Corporate Governance, Organization and Compensation, and Science & Technology Committees).

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 3

    h. Promotion of BOTOX for off-label or unapproved uses by lobbying healthcare payers to expand coverage for off-label uses;

    i. Promotion of BOTOX by creating and funding organizations to promote off-label uses of BOTOX;

    j. Promotion of BOTOX by providing selective discounts to doctors who predominantly treated off-label conditions;

    k. Promotion of BOTOX for off-label or unapproved uses by other "mechanisms of action";

    l. Promotion of BOTOX to medical specialists who did not customarily treat patients with any of the conditions that BOTOX was approved to treat, including headache clinics, anesthesiologists, pain specialists, and pediatricians;

    m. Promotion of BOTOX by encouraging doctors to diagnose headache and pain as symptoms of its on-label cervical dystonia indication and other approved indications;

    n. Promotion of BOTOX for the treatment of pain;

    o. Promotion of BOTOX for the treatment of headaches, including chronic migraine headache, episodic migraine headache, tension type headache, and post-whiplash headache;

    p. Promotion of BOTOX for the treatment of spasticity;

    q. Promotion of BOTOX for the treatment of juvenile cerebral palsy;

    r. Promotion of BOTOX for the treatment of lower back pain;

    s. Promotion of BOTOX for the treatment of tennis elbow;

    t. Promotion of BOTOX for the treatment of temporomandibular joint disorder (TMJ);

    u. Promotion of BOTOX for the treatment of arthritis;

    v. Promotion of BOTOX for the treatment of enlarged prostate;

    w. Promotion of BOTOX for the treatment of overactive bladder; and

    x. Promotion of BOTOX for the treatment of incontinence due to neurogenic bladder.

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 4

Documents responsive to this request further include, but are not limited to, all Board Materials concerning the Company's efforts to ensure compliance with all applicable Federal and State laws and regulations concerning the marketing and sale of BOTOX. The demanded inspection for Item No. 1 is for all books, records, and documents within the Company's possession, custody, and control for the period from January 1, 2001, through December 31, 2008.

2.  All Board Materials concerning, but not limited to, the following studies or documents regarding BOTOX:

   a. The Phase II and Phase III clinical trials to investigate the potential use of BOTOX to treat various forms of headache;

   b. FDA's review of the efficacy and safety of BOTOX;

   c. FDA approval letters for BOTOX;

   d. Documents regarding FDA warnings of and future black box labeling of BOTOX; and

   e. All documents concerning pharmocovigilance from January 1, 2001 to the present, including but not limited to safety summaries and subsequent corrective and preventive actions relating thereto.

3.  To the extent not identified above, all Board Materials concerning the investigation and settlement of the matters described in subparagraphs (a) through (c) below:

   a. *United States ex rel. Lang v. Allergan, Inc.*, Civ. No. 1:07-cv-1288-WSD (N.D. Ga.);

   b. *United States ex rel. Beilfuss v. Allergan, Inc.*, Civ. No. 1:08-cv-1883-WSD (N.D. Ga.); and

   c. *United States ex rel. Hallivis v. Allergan, Inc.*, Civ. No. 1:09-cv-3434-WSD (N.D. Ga.).

Documents responsive to this request include, but are not limited to, all Board Materials (including documents reviewed or discussed by the Board) provided directly or indirectly to any entity of the United States Government in connection with the investigation, litigation, defense, or settlement of the preceding matters, including the "Corporate Integrity Agreement" that was a condition precedent to the settlement of the matters described above.

4.  All Board Materials concerning, discussing, or relating in any way to the Settlement Agreement entered into by and among the United States of America, acting through the United States Department of Justice ("DOJ") and the United States Attorney's Office for the Northern District of Georgia and on behalf of the Office of Inspector General of the United

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 5

States Department of Health and Human Services ("OIG-HHS"), the TRICARE Management Activity ("TMA"), the United States Office of Personnel Management ("OPM"), the United States Department of Veterans Affairs ("VA"), and Office of Workers' Compensation Programs of the United States Department of Labor ("DOL-OWCP"); Relators identified in the cases listed in the preceding paragraph; and Allergan, through their authorized representatives (the "Settlement Agreement").

5. All Board Materials concerning the Company's compliance, or efforts to comply, with the Settlement Agreement.

6. All documents reflecting or embodying any procedures, protocols, or controls (whether at Allergan or any of its subsidiaries) created, designed, or intended to ensure compliance with the Food, Drug and Cosmetic Act ("FDCA"); the Social Security Act (including the Medicaid Program); or the "Other Federal Health Care Programs" as defined on page 3 of the Settlement Agreement. The demanded inspection for Item No. 6 is for all books, records, and documents within the Company's possession, custody, and control for the period of January 1, 2001, through the present.

7. All Board Materials concerning the Corporate Integrity Agreement (the "CIA") entered into between the OIG-HHS and Allergan on or around August 30, 2010.

8. To the extent not identified above, all Board Materials concerning compliance with the CIA. Documents responsive to this request include, but are not limited to, all Board Materials concerning the Compliance Program to be implemented in connection with the CIA, the Code of Conduct identified in Section III.B.1 of the CIA, and the Promotional and Product Related Functions mandated by the CIA.

The purposes for the demand inspection are:

1. To investigate potential wrongdoing, mismanagement, and breaches of fiduciary duties by the members of the Company's Board of Directors or others in connection with the events, circumstances, and transactions described above;

2. To assess the ability of the Company's Board of Directors to consider impartially a demand for action (including a request for permission to file a derivative lawsuit on the Company's behalf) related to the items described in this demand; and

3. To take appropriate action in the event the members of the Company's Board of Directors did not properly discharge their fiduciary duties, including the preparation and filing of a shareholder derivative lawsuit, if appropriate.

Under Delaware law, it is "well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection." *Freund v. Lucent Techs., Inc.*, C.A. No. 18893, 2003 Del. Ch. LEXIS 3, at *9 (Del. Ch. Jan. 9, 2003). *See also Thomas & Betts*

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 6

*Corp. v. Leviton Mfg.*, 681 A.2d 1026, 1031 (Del. 1996). This is especially the case where, as here, the primary purpose is reasonably related to the demanding party's interests as a stockholder, and where credible bases exist from which it can be inferred that mismanagement may have occurred. *See Marmon v. Arbinet-Thexchange, Inc.*, C.A. No. 20092, 2004 Del. Ch. LEXIS 44, at *11 (Del. Ch. Apr. 28, 2004) (citing *Thomas & Betts*, 681 A.2d at 1026).

Specific instances from which inferences of mismanagement can be drawn are plentiful, including without limitation the following:

- On September 1, 2010, DOJ announced that Allergan had "agreed to plead guilty and pay $600 million to resolve its criminal and civil liability arising from the company's unlawful promotion of its biological product, Botox Therapeudic, for uses not approved as safe and effective by the [FDA]";

- As part of the settlement, Allergan agreed to plead guilty to violating the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(a) and 333(a)(1), in connection with the introduction into interstate commerce of a misbranded drug, BOTOX, and also consented to a criminal fine and forfeiture totaling $375 million;

- As part of the civil settlement, Allergan agreed to pay a fine of $225 million to the federal government and certain Medicare participating states to settle three *qui tam* actions alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the United States intervened in two of the three actions) as well as separate state actions brought on similar grounds; and

- As a condition precedent to the settlement of the claims, Allergan entered into the CIA, which requires, among other things, that: Allergan maintain a Chief Compliance Officer and a U.S. Compliance Committee; the Company's Board of Directors review and oversee matters related to compliance with Federal health care program requirements, FDA requirements, and the obligations of the CIA; the Board meet at least quarterly to review and oversee Allergan's Compliance Program; the Board adopt a signed resolution for each Reporting Period summarizing its review and oversight of matters relating to Allergan's compliance with Federal health care program requirements, FDA requirements, and the obligations of the CIA; and certain Allergan employees monitor and oversee activities within their areas of authority and annually certify that the applicable Allergan component is compliant with Federal health care program requirements, FDA requirements, and the obligations of the CIA.

An additional purpose to those stated above is to take appropriate action in the event that the Company's Board did not properly discharge its duties. This purpose, of course, relates to a stockholder's decision about how to act in the event the demanded inspection reveals impropriety or actionable conduct. Possible courses of conduct include making a demand on the Company's Board of Directors to take action or initiating litigation against or on the Company's

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 7

behalf. Both of these possible courses of action are well within a stockholder's rights under Delaware law, and thus, gathering information for this purpose is proper. Moreover, "the Delaware Supreme Court has made it clear that it is the public policy of this State to encourage stockholders to utilize Section 220 before filing a derivative action . . . in order to meet the heightened pleading requirement of Court of Chancery Rule 23.1." *Freund*, 2003 Del. Ch. LEXIS 3, at *13. In fact, both the Supreme Court and the Court of Chancery have repeatedly urged prospective plaintiffs to use the "tools at hand," such as books and records requests, to obtain information to support their claims and to avoid dismissal for failure to state a claim. *See, e.g., White v. Panic*, 783 A.2d 543, 549 n.15 (Del. 2001).

I hereby affirm that the purposes for the demanded inspection as set forth above constitute a true and accurate statement of the reasons UFCW Fund desires to review the demanded books, records, and documents and that such demand is made in good faith. These purposes are both proper and reasonably related to UFCW Fund's interest as a stockholder of the Company.

Please contact me immediately for the review of the demanded books and records: Egan Young, 526 Township Line Rd, Ste. 100, Blue Bell, PA 19422, telephone 215-367-5151, facsimimle 215-367-5143, Attention: Eric L. Young, Esquire.

In the event that the Company does not respond to this letter or fails to permit inspection and copying of the demanded documents within five business days from the date of receipt of this demand, we will seek appropriate relief to the fullest extent permitted under the law.

Sincerely,

*Eric L. Young*

SWORN TO AND SUBSCRIBED
before me this 5 day of November, 2010.

_Frances M. Subbio_
Notary Public

My Commission Expires: ___

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Frances M. Subbio, Notary Public
Plymouth Township, Montgomery County
My commission expires August 24, 2013

Encl.

cc w/enclosures BY HAND DELIVERY:

The Prentice-Hall Corporation System, Inc.

{W0042390.DOC.}

EXHIBIT D, PAGE 50

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 8

    2711 Centerville Road, Suite 400
    Wilmington, DE 19808

cc w/enclosures by E-Mail PDF:

  Lesley E. Weaver, Esq.
  Seth D. Rigrodsky, Esq.
  Kenneth J. Nachbar, Esq.
  Wayne W. Smith Esq.
  Cathy L. Reese, Esq.

# EXHIBIT

# "A"

EXHIBIT D, PAGE 52

**UNITED FOOD & COMMER-
CIAL WORKERS DELAWARE
VALLEY PNSN FND 6-1-67**

OCTOBER 1 - OCTOBER 31, 2010
ACCOUNT NUMBER:

## Additional information

|  | THIS PERIOD | THIS YEAR |
|---|---|---|
| Gross proceeds | 0.00 | |

## Portfolio detail

### Cash and Sweep Balances

Money Market Mutual Fund - Funds seek to preserve a value at $1.00 per share, but it is possible to lose money by investing in these funds. Investments in money market funds are not bank deposits and are not insured by the FDIC or any other government agency. They are instead covered by SIPC. Estimated Annual Yield on money market funds, when available, reflects the current estimated yield for the Interest Period dates displayed. For more complete information, including fees, expenses and risks, please request a prospectus from Your Financial Advisor.

| DESCRIPTION | % OF ACCOUNT | CURRENT MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED CURRENT YIELD |
|---|---|---|---|---|
| Interest Period 10/01/10 - 10/31/10 | | | | |
| Total Cash and Sweep Balances | | | | |

## Stocks, options & ETFs

### Stocks and ETFs

| DESCRIPTION | % OF ACCOUNT | QUANTITY | ADJ PRICE/ ORIG PRICE | ADJ COST/ ORIG COST | CURRENT PRICE | CURRENT MARKET VALUE | UNREALIZED GAIN/LOSS | ESTIMATED ANNUAL INCOME | ESTIMATED ANNUAL YIELD (%) |
|---|---|---|---|---|---|---|---|---|---|
| ALLERGAN INC AGN Acquired UNKNOWN S | 1.60 | 4,000 | 3.66 | 14,645.32 | 72.4100 | 289,640.00 | 274,994.68 | 800.00 | 0.27 |

EXHIBIT D, PAGE 5

# EXHIBIT

# "B"

EXHIBIT D, PAGE 54

## SPECIAL POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that U.F.C.W. Local 1776 & Participating Employers Pension Fund ("UFCW Fund"), does hereby make, constitute, and appoint; Eric L. Young, Esq., Egan Young, 526 Township Line Rd, Ste. 100, Blue Bell, PA 19422, Lesley E. Weaver, Esq., Shepherd, Finkelman, Miller & Shah, LLP, 199 Fremont Street 20th Floor, San Francisco, CA 94105-2255, and Seth D. Rigrodsky, Esq., Rigrodsky & Long, P.A., 919 North Market Street, Suite 980, Wilmington, Delaware, 19801, and any person designated by them, to act as true and lawful attorney-in-fact for UFCW Fund, in its name, place, and stead, jointly and severally, in all matters regarding the examination of the books and records of Allergan, Inc. ("Allergan" or the "Company) including, but not limited to: (i) demanding inspection of books and records of Allergan on the UFCW Fund's behalf as a stockholder of the Company as said attorneys deem appropriate, (ii) reviewing and/or copying any documents received in connection with any such books and records demand made on the UFCW Fund's behalf as a stockholder of Allergan, and (iii) giving and granting unto said attorneys full power and authority to perform all and every act and thing whatsoever requisite, necessary, and proper to be done in and without the premises, as fully, to all intents and purposes as they might or could do, with full power of substitution and revocation, hereby ratifying and confirming all that the UFCW Fund's attorneys or the substitute shall lawfully do or cause to be done.

The rights, powers, and authority of said attorneys shall remain in full force and effect until UFCW Fund tenders a written notice of termination.

IN WITNESS HEREOF, I have hereunto set my hand as of November 3rd, 2010.

*Regina D. Reardon*
Regina Reardon
Fund Administrator

EXHIBIT D, PAGE 55