# EXHIBIT Q


Get our new FREE iPad app now

**PHARMACEUTICALS**   October 2, 2009, 2:57PM EST

## Allergan Sues FDA over Ban on Off-Label Marketing of Botox
The drugmaker's unprecedented lawsuit contends that the FDA's ban on off-label marketing violates the company's free speech rights

By Arlene Weintraub

Under federal law, drug companies cannot market their products "off label," for the treatment of conditions that have not been approved by the U.S. Food & Drug Administration. Now one bold company is challenging that regulation.

Allergan (AGN), which makes the famed wrinkle-remover Botox, filed an unprecedented lawsuit Oct. 1 in Washington, D.C., alleging that the U.S. government's ban on off-label marketing violates its First Amendment rights to free speech. The federal suit argues that the ban represents a violation of both commercial free speech and free speech in general. No other pharmaceutical or device company has filed a suit specifically about off-label laws.

For Irvine (Calif.)-based Allergan, the lawsuit seems like a matter of necessity. Botox, which is derived from botulinum toxin, is approved to smooth wrinkles, as well as to treat a variety of muscle disorders. But some of the product's $1.3 billion in annual sales come from off-label prescriptions, to treat everything from migraine headaches to juvenile cerebral palsy. In September, the FDA instructed Allergan to implement what the agency refers to as Risk Evaluation & Mitigation Strategies (REMS), a program that specifically requires the company to discuss some off-label prescribing guidelines with doctors.

The FDA's mandate put Allergan in a bind. Executives feel that to fully comply with the REMS program, they must continue to update physicians on the latest data about Botox, even if that information pertains to off-label uses. After all, it is perfectly legal for physicians to prescribe drugs off label, and analysts estimate that up to a third of Botox revenues come from such uses. The company does not estimate how much of Botox sales come from off-label use, but it does disclose that half of sales are from cosmetic use and the other half from medical use.

### DRUG MARKETING PENALTIES A GENUINE CONCERN
However, if the company speaks openly about off-label use, it's conceivable the U.S. Justice Dept. could file a suit against Allergan for off-label marketing. "The government is allowing drugs to be used off label but at the same time not allowing companies to proactively provide information about it," gripes Douglas Ingram, executive vice-president and chief administration officer for Allergan. "That doesn't serve public health."

Allergan has good reason to worry about getting into trouble: Over the last several years the government has stepped up its efforts to penalize companies that market their drugs illegally. On Sept. 2, Pfizer (PFE) paid a $2.3 billion settlement to the Justice Dept. to settle charges that it improperly promoted four products, including its painkillers Bextra and Lyrica. It was the biggest health-care fraud settlement in history, and the latest in a string of penalties levied against drug companies of all sizes.

Allergan has never received an off-label violation or warning about any drug, but Botox is a target of intense government scrutiny nonetheless. In April, the FDA required Allergan and other makers of botulinum-based products to add "black box" warnings to their labels, alerting patients that if the toxin spreads far beyond the injection site, it could cause rare but potentially fatal side effects such as swallowing and breathing difficulties. The adverse events have not been observed in patients that get Botox to smooth wrinkles, but Allergan had to slap warnings on both the cosmetic and medical versions of the product anyway. The REMS program requires Allergan to issue medication guides and other materials to doctors about the risk. "All of that material touches on off-label uses," Ingram says. "We ought to be able to provide even more robust information about that."

### STUDY: FINES HIT A COMPANY'S MARKET VALUE
New research suggests that when companies get in trouble for off-label marketing, the financial pain they suffer can be more than modest penalties. The Justice Dept. fines—most of which are in the tens of millions of dollars—are often brushed off as "rounding errors" or "the cost of doing business." But professors from Emory University and the University of Pennsylvania's Wharton School studied the fallout of 170 FDA warning letters citing improper marketing practices, and found they had a major impact on shareholders. In a paper scheduled to be published in the November issue of the *Journal of Marketing*, they write that these incidents cause "significant negative abnormal returns," amounting to a 1% drop in market value. That translated to an $86 million loss of shareholder wealth on average. Negative marketing-related events, they wrote, "have no immediate impact on cash flows but garner a quick investor response."

Allergan's Ingram hopes the company's suit will result in better regulations pertaining to off-label marketing. He says he can envision a scenario in which the FDA would require companies to provide scientific evidence that off-label uses are safe and effective before they promote them. Any company that can't do that would have to design its own trials to prove it—with the ultimate goal of getting the new indication onto the label. Allergan is currently testing Botox for several conditions that are now considered off-label, including chronic migraines and overactive bladder. "We're not seeking to diminish the FDA's authority," Ingram says. "Nothing about this [lawsuit] should empower companies to speak about their drugs falsely."

Weintraub is a senior writer for BusinessWeek's Science & Technology department.


SAVE 85% OFF HOME DELIVERY   ORDER NOW

EXHIBIT Q, PAGE 219