# EXHIBIT R



<< Return to Allergan drops FDA lawsuit as part of off-label settlement

# Allergan drops FDA lawsuit as part of off-label settlement

Ben Comer, Matthew Arnold
September 02 2010
Before Allergan could begin settlement negotiations with the Department of Justice (DOJ) – which ended with an agreement to pay $600 million on Wednesday – DOJ required the Botox manufacturer to first withdraw a First Amendment lawsuit against the FDA filed last October.

The lawsuit, which challenged current FDA policy on the distribution of truthful information about a product, off-label or no, raised eyebrows across the industry. "With this lawsuit, we sought to gain better clarity regarding the rights of prescription drug companies to proactively share truthful scientific and medical information with the medical community, to assist physicians in evaluating the risks and benefits if they choose to use Botox off-label to treat certain forms of spasticity," said Caroline Van Hove, an Allergan spokesperson, in an email.

As part of the Risk Evaluation and Mitigation Strategies (REMS) for Botox, Allergan is required to provide information about the safe use of its product, and that means engaging in off-label discussions, since Botox is widely used off-label, the company argued in a complaint filed last year. "It's disappointing that the court was not afforded an opportunity to hear and rule on these important First Amendment issues," said Van Hove. "The government made dismissal…a mandatory condition of our global settlement."

In the past, FDA's primary response to issues regarding the provision of off-label information, according to John Kamp, executive director of the Coalition for Healthcare Communication, goes something like this: If a drug works for an off-label use, and especially if it has become the standard of care for that use, why not do the clinical work and get the indication? "The trouble is that initiating new clinical trials for a new indication doesn't always make good business sense," said Kamp. "If a drug is getting close to the end of its exclusivity, at the end of the day, the cost of clinical testing outweighs any future sales that may come from a new indication."

As part of the settlement, Allergan pleaded guilty to marketing Botox Therapeutic (not Botox Cosmetic, the wrinkle fix) for unapproved conditions including headache, pain, spasticity and juvenile cerebral palsy. Among other things, the government said Allergan "exploited its on-label cervical dystonia indication to grow off-label pain and headache sales" through a 2003 initiative developed as a "rescue strategy" meant to safeguard against poor clinical trials performance for those indications. "As part of this initiative, Allergan claimed that cervical dystonia was 'underdiagnosed' and that doctors could diagnose cervical dystonia based on headache and pain symptoms, even when the doctor 'doesn't see any cervical dystonia,'" said DOJ.

The firm also targeted docs who typically treat patients with off-label conditions, doubling the size of its reimbursement team to assist docs in obtaining payment for off-label injections and holding workshops to teach docs and their staffs how to bill for off-label uses.

"The FDA had approved therapeutic uses of Botox for only four rare conditions, yet Allergan made it a top

EXHIBIT R, PAGE 220

Case 8:10-cv-01352-DOC -MLG   Document 89-18   Filed 09/02/11   Page 3 of 3   Page ID #:3025

corporate priority to maximize sales of far more lucrative off-label uses that were not approved by FDA," said Sally Yates, US Attorney for the Northern District of Georgia, in a statement.

Allergan will pay a criminal fine and forfeiture of $375 million along with a civil settlement with the federal government and states of $225 million.

The settlement also places Allergan under a five-year corporate integrity agreement stipulating that:

- Allergan's Board of Directors or a committee thereof must meet quarterly to review and oversee the company's compliance program
- High-level management, including corporate vice presidents of relevant business units, must complete annual compliance certification
- Allergan must notify healthcare professionals of the settlement and establish a mechanism through which they can report improper promotion by Allergan reps to Allergan or FDA
- The company must post payments to physicians, including speaker and consultant fees
- Both the company and an independent review organization must review a variety of promotional activities, including field-based ones like speaker programs as well as those controlled by headquarters, such as consulting, publication research and grants activities

EXHIBIT R, PAGE 221