IRELL & MANELLA LLP
John C. Hueston (164921)
jhueston@irell.com
Daniel P. Lefler (151253)
dlefler@irell.com
Lillie A. Werner (261250)
lwerner@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

Attorneys for Nominal Defendant Allergan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re ALLERGAN, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. SACV10-01352-DOC (MLGx)<br><br>**DECLARATION OF LILLIE A. WERNER AND EXHIBITS IN SUPPORT OF NOMINAL DEFENDANT ALLERGAN, INC.'S OPPOSITION TO PLAINTIFFS' "MOTION TO COMPEL"**<br><br>Date:    October 17, 2011<br>Time:    8:30 a.m.<br>Ctrm:    9D<br>Judge:   Hon. David O. Carter |

## DECLARATION OF LILLIE A. WERNER

I, Lillie A. Werner, declare as follows:

1.      I am an attorney admitted to practice in the Central District of California.  I am an associate at Irell & Manella LLP, and counsel of record for nominal defendant Allergan, Inc. ("Allergan") in this action.  This declaration is submitted in support of Allergan's Opposition to Plaintiffs' "Motion to Compel" Production of Documents from Allergan, Inc.'s June 2011 Privilege Log.  I have personal knowledge of the facts set forth herein and, if called to testify, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Lillie A. Werner to Aelish Baig, dated May 23, 2011.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an email from Lillie A. Werner to Aelish Baig, dated May 27, 2011.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of a letter from Lillie A Werner to Aelish Baig, Kathleen A. Herkenhoff, and Shane P. Sanders, dated July 27, 2011.

5.      Allergan and U.F.C.W. Local 1776 & Participating Employers Pension Fund (hereinafter, the "Delaware Shareholder") litigated the scope of Allergan's document production pursuant to Delaware General Corporations Code Section 220 (the "220 Production"), including whether the documents were appropriately redacted or withheld as attorney-client privileged or attorney work product, and whether any exceptions to privilege applied such as the *Garner* fiduciary exception.

6.      On May 26, 2011, Allergan and the Delaware Shareholder participated in a telephonic conference before the Hon. J. Travis Laster, Vice Chancellor of The Court of Chancery of the State of Delaware.  Before the telephonic conference, the Delaware Shareholder requested a production of additional documents.  During the hearing, Vice Chancellor Laster denied the request and ruled that "this 220 case is done.  It's over.  My order was the final order.  Allergan has complied with it."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2491806

- 1 -

DECLARATION OF
LILLIE A. WERNER AND EXHIBITS

7.     On July 28, 2011, counsel for Plaintiffs and Allergan met and conferred telephonically regarding Plaintiffs' request that Allergan alter the scope of the 220 Production.  Allergan would not agree to Plaintiffs' request.  After the call, Plaintiffs made no subsequent contact with Allergan to discuss the preparation of a joint stipulation or inform Allergan that Plaintiffs would be filing a "motion to compel."

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 21, 2011, in Los Angeles, California.


DATED:  September 21, 2011            IRELL & MANELLA LLP
                                     LILLIE A. WERNER


                                     By:   /s/  Lillie A. Werner
                                            LILLIE A. WERNER
                                     1800 Avenue of the Stars, Suite 900
                                     Los Angeles, CA  90067
                                     Telephone:  (310) 277-1010
                                     Facsimile:  (310) 203-7199
                                     lwerner@irell.com

                                     Counsel for Nominal Defendant
                                     Allergan, Inc.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2491806                          - 2 -                    DECLARATION OF
                                                   LILLIE A. WERNER AND EXHIBITS

# EXHIBIT 1

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7912
FACSIMILE (310) 556-5210
LWerner@irell.com

May 23, 2011

**VIA E-MAIL**

Aelish Baig, Esq.
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Email: AelishB@rgrdlaw.com

Re:  *In re Allergan, Inc. Shareholder Derivative Action*
United States District Court, Southern District of California, Southern Division
Master File No. SACV-10-01352-DOC (MLGx)

Dear Ms. Baig,

I write in response to your letter from Friday afternoon.

Last week, your firm suggested for the first time that the parties to the above-referenced action agree to continue your June 8, 2011 deadline for filing an Amended Complaint so that you could pursue a books-and-records demand under Section 220 of the Delaware General Corporations Law.  As you are aware, Allergan has already made a Section 220 production concerning the subject matter of your lawsuit pursuant to a demand made last year by another Allergan shareholder.  The scope of Allergan's production has already been litigated, and the Delaware Chancery Court heard argument and issued its decisions on disputed matters last month.

Your client, of course, could have chosen to pursue a Section 220 demand before filing its lawsuit.  Its decision not to do so forced Allergan and the individual defendants to incur the expense of responding to your initial complaint.  As you know, Judge Carter dismissed that complaint on demand futility grounds.

Notwithstanding your client's tactical choices, we told you by telephone on Friday afternoon that subject to the execution of an appropriate confidentiality and non-waiver agreement, Allergan would promptly produce to you at your costs the same documents that have been produced in response to the preexisting Section 220 demand in exchange for your client's agreement not to pursue a separate books-and-records demand, and subject to agreement on a mutually agreeable schedule for the filing of your Amended Complaint and briefing schedule for responsive motions.  In our discussions on Friday, we proposed a schedule under which Allergan would make its production by May 27, 2011, you would file your Amended Complaint by June 27, 2011, and defendants would respond to the Amended Complaint by July 29, 2011.  Since your client faces the Court-ordered June 8 deadline

2435511

IRELL & MANELLA LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Aelish Baig, Esq.
May 23, 2011
Page 2


(which has already been extended once at your client's request), your firm will need to secure Court approval for a revised schedule, which defendants will not oppose.[1]

Your letter from Friday afternoon requests detailed information concerning the scope of Allergan's Section 220 production so that you can decide whether to proceed along these lines. In response, attached are copies of (1) the books-and-records demand served by the other Allergan shareholder and (2) Allergan's initial written response. In addition to the search described in Allergan's initial response, additional documents were produced pursuant to additional meet-and-confer discussions and pursuant to judicial rulings. In total, the Section 220 production numbers 6,438 pages. Allergan is not inclined to provide you with the other materials requested in your letter. The point of our offer to you is that we will provide you promptly with the fruits of the labor of the other Allergan shareholder provided that the Company avoids the expense and inconvenience of a separate Section 220 demand from your client. We have no interest in arguing with you about whether additional materials will or should be provided. The information we are making available to you should be sufficient for you to make your decision.

If your client wants to proceed along the lines we have discussed, please let us know as soon as possible and we will promptly send you a draft confidentiality and non-waiver agreement to review and execute before coordinating the document production.

Sincerely,

/s/

Lillie A. Werner

LAW
Attachments

cc:     John Hueston, Esq.


---

[1] Consistent with applicable case law, *see King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1152 (Del. 2011), we also requested that your client pay defendants' legal fees in connection with the initial motions to dismiss. Your client declined.

2435511



November 3, 2010

<span style="font-variant: small-caps">**Via Federal Express**</span>

Allergan, Inc.
c/o David E.I. Pyott, Chairman
Board of Directors
2525 Dupont Drive
Irvine, CA 92612

Re:  *Demand for Inspection of Books and Records of Allergan, Inc.*
      *Pursuant to 8 Del. C. § 220*

Dear Mr. Pyott:

I write on behalf of U.F.C.W. Local 1776 & Participating Employers Pension Fund ("UFCW Fund"), a beneficial owner of Allergan, Inc. ("Allergan" or the "Company") common stock. Attached to this letter as Exhibit "A" is a true and correct copy of the most recent brokerage account statement reflecting UFCW Fund's beneficial ownership of Company stock. Attached to this letter as Exhibit "B" is a true and correct copy of the Special Power of Attorney authorizing me and my counsel, Egan Young, Shepherd, Finkelman, Miller & Shah, LLP, and Rigrodsky & Long, P.A., to act on behalf of UFCW Fund in connection with this demand. Attached to this letter as "Exhibit C" is a true and correct copy of the Verification of Regina Reardon.

I hereby demand, pursuant to Section 220 of the Delaware General Corporation Law, that Allergan immediately make the following books, records, and documents[1] available for inspection and copying during the usual hours of business:

1.      All Board Materials[2] concerning the Company's sales, marketing, or branding of BOTOX for both Food and Drug Administration ("FDA") approved and "off-label" uses,

---

[1] The term "documents" as used herein is to be construed as broadly as possible under the Rules of the Delaware Court of Chancery, and includes, without limitation, any and all correspondence concerning the demanded categories, whether sent via mail, facsimile, electronic communication, or otherwise.

[2] The term "Board Materials" as used herein means all documents concerning, related to, provided at, considered at, discussed at, or prepared or disseminated in connection with any meeting of the Company's Board of Directors or any regular or specially created committee thereof (including, without limitation, the Audit and Finance, Corporate Governance,

5290 Township Line Road Suite 100  |  Blue Bell PA 19422  |  Office: 215 367.5151  |  Fax: 215 367.5143  |  Web: www.eganyoung.com

*Egan Young is an association of professional corporations.*

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 2

conditions, and dosages, including, but not limited to, the establishment, modification, implementation, and/or oversight[3] of any sales, marketing, or branding programs, campaigns, strategies, or the like, including, but not limited to, the:

     a.    Promotion of BOTOX for the FDA approved treatment of strabismus, blepharospasm, cervical dystonia, primary axillary hyperhidrosis, and increased muscle stiffness in the elbow, wrist and finger muscles in adults with upper-limb spasticity;

     b.    Promotion of BOTOX for off-label or unapproved uses through, among other ways, false and fraudulent statements to physicians regarding BOTOX's efficacy, made through Allergan's salesmen and medical liaisons, Continuing Medical Education programs funded by Allergan, off-label injection training sessions funded by Allergan, articles published in journals and magazines that were written in whole or in part by Allergan employees, and websites funded and controlled by Allergan;

     c.    Promotion of BOTOX for off-label or unapproved uses by training physicians to miscode and alter records on claims forms to ensure payment by Medicare, Medicaid, and other federal health care programs;

     d.    Promotion of BOTOX for off-label or unapproved uses by providing physicians with "value added support services," including individual patient audits, that would facilitate third party reimbursement payments, maximize payments to doctors, and encourage additional sales of BOTOX;

     e.    Promotion of BOTOX for off-label or unapproved uses by providing kickbacks to physicians;

     f.    Promotion of BOTOX for off-label or unapproved uses by making false statements to Medicare and other federal health care program contractors to impact coverage determinations;

     g.    Promotion of BOTOX for off-label or unapproved uses by paying doctors to attend Advisory Boards, promotional dinners, or to tout Botox's efficacy for off-label uses;

---

Organization and Compensation, and Science & Technology Committees), including all presentations, board packages, recordings, agendas, summaries, memoranda, transcripts, notes, minutes of meetings, drafts of minutes of meetings, exhibits distributed at meetings, summaries of meetings, or resolutions.

[3] The term "oversight" shall include, without limitation, oversight by the Company's Board of Directors, or any committee thereof (including the Company's Audit and Finance, Corporate Governance, Organization and Compensation, and Science & Technology Committees).

{W0042390.DOC.}

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 3

h.    Promotion of BOTOX for off-label or unapproved uses by lobbying healthcare payers to expand coverage for off-label uses;

i.    Promotion of BOTOX by creating and funding organizations to promote off-label uses of BOTOX;

j.    Promotion of BOTOX by providing selective discounts to doctors who predominantly treated off-label conditions;

k.    Promotion of BOTOX for off-label or unapproved uses by other "mechanisms of action";

l.    Promotion of BOTOX to medical specialists who did not customarily treat patients with any of the conditions that BOTOX was approved to treat, including headache clinics, anesthesiologists, pain specialists, and pediatricians;

m.    Promotion of BOTOX by encouraging doctors to diagnose headache and pain as symptoms of its on-label cervical dystonia indication and other approved indications;

n.    Promotion of BOTOX for the treatment of pain;

o.    Promotion of BOTOX for the treatment of headaches, including chronic migraine headache, episodic migraine headache, tension type headache, and post-whiplash headache;

p.    Promotion of BOTOX for the treatment of spasticity;

q.    Promotion of BOTOX for the treatment of juvenile cerebral palsy;

r.    Promotion of BOTOX for the treatment of lower back pain;

s.    Promotion of BOTOX for the treatment of tennis elbow;

t.    Promotion of BOTOX for the treatment of temporomandibular joint disorder (TMJ);

u.    Promotion of BOTOX for the treatment of arthritis;

v.    Promotion of BOTOX for the treatment of enlarged prostate;

w.    Promotion of BOTOX for the treatment of overactive bladder; and

x.    Promotion of BOTOX for the treatment of incontinence due to neurogenic bladder.

{W0042390.DOC.}

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 4

Documents responsive to this request further include, but are not limited to, all Board Materials concerning the Company's efforts to ensure compliance with all applicable Federal and State laws and regulations concerning the marketing and sale of BOTOX. The demanded inspection for Item No. 1 is for all books, records, and documents within the Company's possession, custody, and control for the period from January 1, 2001, through December 31, 2008.

2.    All Board Materials concerning, but not limited to, the following studies or documents regarding BOTOX:

      a.    The Phase II and Phase III clinical trials to investigate the potential use of BOTOX to treat various forms of headache;

      b.    FDA's review of the efficacy and safety of BOTOX;

      c.    FDA approval letters for BOTOX;

      d.    Documents regarding FDA warnings of and future black box labeling of BOTOX; and

      e.    All documents concerning pharmocovigilance from January 1, 2001 to the present, including but not limited to safety summaries and subsequent corrective and preventive actions relating thereto.

3.    To the extent not identified above, all Board Materials concerning the investigation and settlement of the matters described in subparagraphs (a) through (c) below:

      a.    *United States ex rel. Lang v. Allergan, Inc.*, Civ. No. 1:07-cv-1288-WSD (N.D. Ga.);

      b.    *United States ex rel. Beilfuss v. Allergan, Inc.*, Civ. No. 1:08-cv-1883-WSD (N.D. Ga.); and

      c.    *United States ex rel. Hallivis v. Allergan, Inc.*, Civ. No. 1:09-cv-3434-WSD (N.D. Ga.).

Documents responsive to this request include, but are not limited to, all Board Materials (including documents reviewed or discussed by the Board) provided directly or indirectly to any entity of the United States Government in connection with the investigation, litigation, defense, or settlement of the preceding matters, including the "Corporate Integrity Agreement" that was a condition precedent to the settlement of the matters described above.

4.    All Board Materials concerning, discussing, or relating in any way to the Settlement Agreement entered into by and among the United States of America, acting through the United States Department of Justice ("DOJ") and the United States Attorney's Office for the Northern District of Georgia and on behalf of the Office of Inspector General of the United

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 5

States Department of Health and Human Services ("OIG-HHS"), the TRICARE Management
Activity ("TMA"), the United States Office of Personnel Management ("OPM"), the United
States Department of Veterans Affairs ("VA"), and Office of Workers' Compensation Programs
of the United States Department of Labor ("DOL-OWCP"); Relators identified in the cases listed
in the preceding paragraph; and Allergan, through their authorized representatives (the
"Settlement Agreement").

     5.     All Board Materials concerning the Company's compliance, or efforts to comply,
with the Settlement Agreement.

     6.     All documents reflecting or embodying any procedures, protocols, or controls
(whether at Allergan or any of its subsidiaries) created, designed, or intended to ensure
compliance with the Food, Drug and Cosmetic Act ("FDCA"); the Social Security Act (including
the Medicaid Program); or the "Other Federal Health Care Programs" as defined on page 3 of the
Settlement Agreement. The demanded inspection for Item No. 6 is for all books, records, and
documents within the Company's possession, custody, and control for the period of January 1,
2001, through the present.

     7.     All Board Materials concerning the Corporate Integrity Agreement (the "CIA")
entered into between the OIG-HHS and Allergan on or around August 30, 2010.

     8.     To the extent not identified above, all Board Materials concerning compliance
with the CIA. Documents responsive to this request include, but are not limited to, all Board
Materials concerning the Compliance Program to be implemented in connection with the CIA,
the Code of Conduct identified in Section III.B.1 of the CIA, and the Promotional and Product
Related Functions mandated by the CIA.

The purposes for the demand inspection are:

     1.     To investigate potential wrongdoing, mismanagement, and breaches of fiduciary
duties by the members of the Company's Board of Directors or others in connection with the
events, circumstances, and transactions described above;

     2.     To assess the ability of the Company's Board of Directors to consider impartially
a demand for action (including a request for permission to file a derivative lawsuit on the
Company's behalf) related to the items described in this demand; and

     3.     To take appropriate action in the event the members of the Company's Board of
Directors did not properly discharge their fiduciary duties, including the preparation and filing of
a shareholder derivative lawsuit, if appropriate.

Under Delaware law, it is "well established that investigation of mismanagement is a
proper purpose for a Section 220 books and records inspection." *Freund v. Lucent Techs., Inc.*,
C.A. No. 18893, 2003 Del. Ch. LEXIS 3, at *9 (Del. Ch. Jan. 9, 2003). *See also Thomas & Betts*

{W0042390.DOC.}

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 6

*Corp. v. Leviton Mfg.*, 681 A.2d 1026, 1031 (Del. 1996). This is especially the case where, as here, the primary purpose is reasonably related to the demanding party's interests as a stockholder, and where credible bases exist from which it can be inferred that mismanagement may have occurred. *See Marmon v. Arbinet-Thexchange, Inc.*, C.A. No. 20092, 2004 Del. Ch. LEXIS 44, at *11 (Del. Ch. Apr. 28, 2004) (citing *Thomas & Betts*, 681 A.2d at 1026).

Specific instances from which inferences of mismanagement can be drawn are plentiful, including without limitation the following:

- On September 1, 2010, DOJ announced that Allergan had "agreed to plead guilty and pay $600 million to resolve its criminal and civil liability arising from the company's unlawful promotion of its biological product, Botox Therapeudic, for uses not approved as safe and effective by the [FDA]";

- As part of the settlement, Allergan agreed to plead guilty to violating the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(a) and 333(a)(1), in connection with the introduction into interstate commerce of a misbranded drug, BOTOX, and also consented to a criminal fine and forfeiture totaling $375 million;

- As part of the civil settlement, Allergan agreed to pay a fine of $225 million to the federal government and certain Medicare participating states to settle three *qui tam* actions alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the United States intervened in two of the three actions) as well as separate state actions brought on similar grounds; and

- As a condition precedent to the settlement of the claims, Allergan entered into the CIA, which requires, among other things, that:   Allergan maintain a Chief Compliance Officer and a U.S. Compliance Committee; the Company's Board of Directors review and oversee matters related to compliance with Federal health care program requirements, FDA requirements, and the obligations of the CIA; the Board meet at least quarterly to review and oversee Allergan's Compliance Program; the Board adopt a signed resolution for each Reporting Period summarizing its review and oversight of matters relating to Allergan's compliance with Federal health care program requirements, FDA requirements, and the obligations of the CIA; and certain Allergan employees monitor and oversee activities within their areas of authority and annually certify that the applicable Allergan component is compliant with Federal health care program requirements, FDA requirements, and the obligations of the CIA.

An additional purpose to those stated above is to take appropriate action in the event that the Company's Board did not properly discharge its duties. This purpose, of course, relates to a stockholder's decision about how to act in the event the demanded inspection reveals impropriety or actionable conduct. Possible courses of conduct include making a demand on the Company's Board of Directors to take action or initiating litigation against or on the Company's

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 7

behalf.  Both of these possible courses of action are well within a stockholder's rights under Delaware law, and thus, gathering information for this purpose is proper.  Moreover, "the Delaware Supreme Court has made it clear that it is the public policy of this State to encourage stockholders to utilize Section 220 before filing a derivative action . . . in order to meet the heightened pleading requirement of Court of Chancery Rule 23.1."  *Freund*, 2003 Del. Ch. LEXIS 3, at *13.  In fact, both the Supreme Court and the Court of Chancery have repeatedly urged prospective plaintiffs to use the "tools at hand," such as books and records requests, to obtain information to support their claims and to avoid dismissal for failure to state a claim.  *See, e.g., White v. Panic*, 783 A.2d 543, 549 n.15 (Del. 2001).

I hereby affirm that the purposes for the demanded inspection as set forth above constitute a true and accurate statement of the reasons UFCW Fund desires to review the demanded books, records, and documents and that such demand is made in good faith.  These purposes are both proper and reasonably related to UFCW Fund's interest as a stockholder of the Company.

Please contact me immediately for the review of the demanded books and records: Egan Young, 526 Township Line Rd, Ste. 100, Blue Bell, PA 19422, telephone 215-367-5151, facsimimle 215-367-5143, Attention: Eric L. Young, Esquire.

In the event that the Company does not respond to this letter or fails to permit inspection and copying of the demanded documents within five business days from the date of receipt of this demand, we will seek appropriate relief to the fullest extent permitted under the law.

Sincerely,

Eric L. Young

SWORN TO AND SUBSCRIBED
before me this 5 day of November, 2010.

Notary Public

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Frances M. Subbio, Notary Public
Plymouth Township, Montgomery County
My commission expires August 24, 2013

Encl.
        cc w/enclosures BY HAND DELIVERY:

        The Prentice-Hall Corporation System, Inc.

{W0042390.DOC.}

Allergan, Inc.
c/o Mr. David E.I. Pyott
November 3, 010
Page 8


      2711 Centerville Road, Suite 400
      Wilmington, DE 19808

cc w/enclosures by E-Mail PDF:

      Lesley E. Weaver, Esq.
      Seth D. Rigrodsky, Esq.
      Kenneth J. Nachbar, Esq.
      Wayne W. Smith Esq.
      Cathy L. Reese, Esq.

# FISH & RICHARDSON P.C.

17TH FLOOR
222 DELAWARE AVENUE
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Cathy L. Reese
302 778-8467

Email
reese@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

November 15, 2010



ATLANTA

BOSTON

DALLAS

DELAWARE

HOUSTON

MUNICH

NEW YORK

SILICON VALLEY

SOUTHERN CALIFORNIA

TWIN CITIES

WASHINGTON, DC

***Via eMail & Fedex***

Eric L. Young, Esquire
EGAN YOUNG
526 Township Line Rd., Ste. 100
Blue Bell PA, 19422
eyoung@eganyoung.com

**Re:    Request to Inspect Books and Records of Allergan, Inc.**

Dear Mr. Young:

We write on behalf of Allergan, Inc. ("Allergan" or the "Company") in response to the letter (the "Demand") pursuant to Section 220 of the Delaware General Corporation Law ("Section 220"), dated November 3, 2010, which was sent via Federal Express and e-mail on November 5, 2010, by you on behalf of U.F.C.W. Local 1776 & Participating Employers Pension Fund ("UFCW Fund").

While the Demand sets forth purported purposes for the demanded inspection of Allergan's documents, we do not agree that the Demand satisfies statutory requirements.  Nevertheless, without waiver of any objections to the Demand, and subject to your execution of an appropriate confidentiality agreement and payment of costs, Allergan is prepared to provide you copies of certain documents as set forth below.

Allergan objects to the Demand on the following grounds (the "General Objections"): (a) the Demand does not set forth a proper purpose under Section 220; (b) certain categories of documents requested in the Demand do not constitute books and records of the Company under Section 220; (c) certain categories of documents requested in the Demand are irrelevant to the stated purposes of the Demand, or are otherwise inappropriate in light of the stated purpose; (d) the requests are overly broad and unduly burdensome; (e) the Demand seeks documents and information that have either been disclosed in the public filings of the Company or are otherwise publicly available; (f) the Demand seeks documents and information that are protected by the attorney-client privilege, the attorney work product doctrine, the

FISH & RICHARDSON P.C.

Eric L. Young, Esquire
November 15, 2010
Page 2

joint defense and common interest privilege, or other applicable privileges; (g) the
time frames set forth in the Demand are overly broad; (h) the Demand seeks evidence
of subsequent remedial measures to establish culpability; (i) the Demand uses vague
and ambiguous terminology, such as the term "promotion" which is subject to
multiple interpretations; and (j) the Demand uses pejorative terms, such as
"kickbacks" and "false and fraudulent statements," that improperly assume
wrongdoing on the part of Allergan and its directors.  Additionally, Allergan notes
that your interests in connection with the subject matter of the Demand are being
protected, according to the alleged class representatives, through the pending class
and derivative litigation in Delaware and California, and Section 220 demands are
improper if they constitute an attempt to replace or end-run discovery in such pending
litigation. *See, e.g., Polygon Global Opportunities Master Fund v. West Corp.,* 2006
WL 2947486, at *5 (Del. Ch. Oct. 12, 2006) ("Section 220 is not intended to supplant
or circumvent discovery proceedings.").  Allergan reserves the right to object to the
Demand on additional grounds.

Allergan further objects to the definition of "Board Materials" as overbroad in
that it purports to require the Company to produce materials including drafts,
summaries, memoranda and notes that are not necessary, essential or sufficient to the
stated purpose.  Allergan also objects to the definition of "Board Materials" to the
extent it encompasses personal documents of corporate officers and directors, which
are not found among the corporation's books and records, and are not generally
subject to inspection under Section 220. *See* Welch, Turezyn, and Saunders, 1 FOLK
ON THE DELAWARE GENERAL CORPORATION LAW § 220.3 (2008) and cases cited
therein.

Subject to and without waiving its objections, Allergan is searching its central
repository of materials to collect responsive, finalized, non-privileged documents of
the Board of Directors (the "Board") or any regular or specially created committee
thereof to comply with the Demand.  This review will be conducted with Allergan's
best understanding of the intent of the vague and ambiguous terms as described
herein.  Subject to the objections in this letter, Allergan will provide copies of any
finalized, non-privileged portions of any documents presented to the Board and
maintained in the Company's central repository of Board materials ("Final Board
Materials") that are responsive to the requests in the Demand, except as limited in the
category-by-category discussion below.  Copies of such Final Board Materials will
only be produced on the condition that UFCW Fund executes an appropriate
confidentiality agreement.  Allergan will circulate a draft confidentiality agreement to
you on or before Friday, November 19, 2010.

FISH & RICHARDSON P.C.

Eric L. Young, Esquire
November 15, 2010
Page 3

Request 1.  UFCW Fund seeks in Request 1 and subparagraphs a through x of
that request Board Materials (as defined in the Demand) concerning the Company's
sales, marketing or branding of BOTOX® (onabotulinumtoxinA) ("BOTOX") for
both Food and Drug Administration ("FDA") approved and "off-label" uses,
conditions, and dosages from January 1, 2001 through December 31, 2008, including,
but not limited to, the establishment, modification, implementation, and/or oversight
(as defined in the Demand) of any sales, marketing, or branding programs,
campaigns, strategies, or the like, including, but not limited to, twenty-four additional
sub-categories of documents related to the promotion of BOTOX, as well as all Board
materials concerning the Company's efforts to ensure compliance with all applicable
Federal and State laws and regulations concerning the marketing and sale of BOTOX.

Allergan objects to this Request to the extent that it uses vague and ambiguous
terms and phrases, including without limitation the following: "sales," "marketing,"
"branding," "promotion," "off-label," "uses," "conditions," "false and fraudulent
statements," "unapproved uses," "value added support services," "providing
kickbacks," "impact coverage determinations," "paying doctors to attend," "lobbying
healthcare payers," "predominately treat off-label conditions," "specialists who did
not customarily treat patients," "encouraging doctors to diagnose headache and pain
as," and "dosages."  Allergan further objects to this Request as it is overly broad and
unduly burdensome to the extent it seeks "all Board Materials concerning the
Company's sales, marketing, or branding of BOTOX for both [FDA] approved and
off-label uses, conditions, and dosages" and "all Board Materials concerning the
Company's efforts to ensure compliance with all applicable Federal and State laws
and regulations concerning the marketing and sale of BOTOX."  Subject to and
without waiving these and the foregoing General Objections, Allergan will provide
copies of the non-privileged Final Board Materials responsive to this request.

Request 2.  UFCW Fund seeks all Board Materials concerning the following
studies or documents regarding BOTOX: (a) the Phase II and Phase III clinical trials
to investigate the potential use of BOTOX to treat various forms of headache; (b)
FDA's review of the efficacy and safety of BOTOX; (c) FDA approval letters for
BOTOX; (d) documents regarding FDA warnings of and future black box labeling of
BOTOX; and (e) all documents concerning pharmacovigilance from January 1, 2001
to the present, including but not limited to safety summaries and subsequent
corrective and preventative actions relating thereto.

Subject to and without waiving the foregoing General Objections, Allergan
will provide copies of the non-privileged Final Board Materials responsive to this
request.

FISH & RICHARDSON P.C.

Eric L. Young, Esquire
November 15, 2010
Page 4

Request 3.  UFCW Fund seeks all Board Materials concerning the
investigation and settlement of the matters described in *United States ex rel. Lang v.
Allergan, Inc.*, Civ. No. 1:07-cv-1288-WSD (N.D. Ga.); *United States ex rel. Beilfuss
v. Allergan, Inc.*, Civ. No. 1:08-cv-1883-WSD (N.D. Ga.); and *United States ex rel.
Hallivis v. Allergan, Inc.*, Civ. No. 1:09-cv-3434-WSD (N.D. Ga.) (collectively, the
"Qui Tam Investigations"), including all Board Materials provided directly or
indirectly to any entity of the United States Government (the "Government") in
connection with the investigation, litigation, defense, or settlement of the preceding
matters, including the "Corporate Integrity Agreement" ("CIA") that was a condition
precedent to the settlement of the matters described above.

Subject to and without waiving the foregoing General Objections, Allergan
will provide copies of the non-privileged Final Board Materials responsive to this
request.

Request 4.  UFCW Fund seeks all Board materials relating to the Settlement
Agreement entered into between the Government and the Company in connection
with the Qui Tam investigations listed in Request 3.

Subject to and without waiving the foregoing General Objections, Allergan
will provide copies of the non-privileged Final Board Materials responsive to this
request.

Request 5.  UFCW Fund seeks all Board Materials concerning the Company's
compliance, or efforts to comply, with the Settlement Agreement.

Allergan objects to this Request to the extent it does not relate to any of the
stated purposes and the Request can only be understood as an improper fishing
expedition.  Subject to and without waiving this and the foregoing General
Objections, Allergan will provide copies of the non-privileged Final Board Materials
that concern the Settlement Agreement.

Request 6.  UFCW Fund seeks all documents reflecting or embodying any
procedures, protocols, or controls (whether at Allergan or any of its subsidiaries)
created, designed, or intended to ensure compliance with the Food, Drug, and
Cosmetic Act ("FDCA"); the Social Security Act (including the Medicaid Program)
("SSA"); or the "Other Federal Health Care Programs" as defined on page 3 of the
Settlement Agreement from January 1, 2001 to present.

The documents requested in Request 6 of the Demand are overbroad when
compared to the stated purposes of the demand.  *See, e.g., Sec. First Corp. v. U.S. Die*

FISH & RICHARDSON P.C.

Eric L. Young, Esquire
November 15, 2010
Page 5

*Casting & Dev. Corp.*, 687 A.2d 563, 569 (Del. 1997) (noting that the requested production should be "circumscribed with rifled precision" to those documents essential to accomplish the articulated purpose for the inspection). For example, you seek *all* documents relating to *all* procedures, protocols, or controls created, designed, or intended to ensure compliance with the FDCA, the SSA, and any "other Federal Health Care Programs" for not only Allergan, but *all* of its subsidiaries, and not for just BOTOX, but purportedly *all* of its products. This is hardly "rifled precision" for your purported investigation of "potential wrongdoing, mismanagement, and breaches of fiduciary duties by the members of the Company's Board" or any other of your stated purposes. Subject to this objection and the General Objections, Allergan will provide copies of the non-privileged Final Board Materials responsive to this request.

Request 7. UFCW Fund seeks all Board Materials concerning the CIA entered into between the Office of Inspector General of the United States Department of Health and Human Service ("OIG-HHS") and Allergan on or around August 30, 2010.

Subject to and without waiving the foregoing General Objections, Allergan will provide copies of the non-privileged Final Board Materials responsive to this request.

Request 8. UFCW Fund seeks all Board Materials concerning compliance with the CIA and concerning the Compliance Program to be implemented in connection with the CIA, the Code of Conduct identified in Section III.B.1 of the CIA, and the Promotional and product Related Functions mandated by the CIA.

Subject to the foregoing General Objections, Allergan does not anticipate providing any materials responsive to Request 8 at this time. Nothing in the Demand suggests that materials responsive to Request 8 relate to any of the stated purposes so the Request can only be understood as an improper fishing expedition.

We will provide you with the Final Board Materials once we have completed our review of Allergan's central repository. The Final Board Materials contain highly sensitive and confidential information relevant to Allergan's business. Accordingly, we will require you to execute a mutually acceptable confidentiality agreement. If you believe there are additional non-objectionable documents that are responsive to your request or believe that you are entitled to additional documents please let me know and we will discuss your requests.

FISH & RICHARDSON P.C.

Eric L. Young, Esquire
November 15, 2010
Page 6

If you have any questions or concerns regarding any of the above, please call me and we can discuss them.

Very truly yours,

Cathy L. Reese

CLR:phb
80103496

cc:     William Scarff, Esq. (via e-mail)
        Wayne Smith, Esq. (via e-mail)
        Ken Nachbar, Esq. (via e-mail)
        Seth Rigrodsky, Esq. (via e-mail)

# EXHIBIT 2

**From:** Werner, Lillie A.
**Sent:** Friday, May 27, 2011 10:23 AM
**To:** 'Aelish Baig'
**Cc:** Hueston, John; 'Diulio, Kristopher P.'
**Subject:** FW: Allergan

Dear Aelish,

To clarify, when we spoke yesterday on the telephone I said that Irell would handle preparing the draft of the stipulation, but that I needed to discuss the terms with defense counsel before we sent you the draft for your review and approval.  As to your second question, all that Plaintiffs requested, and that Allergan agreed to, was Allergan's production of the same set of documents produced in response to UFCW Fund's Section 220 demand (pursuant to an appropriate confidentiality agreement); these books-and-records are all that we are willing to produce.

Please let me know if you would like me to proceed.
Thank you,

LILLIE A. WERNER
Irell & Manella  LLP
1800 Avenue of the Stars Suite 900  |  Los Angeles, CA 90067
310.203.7912 (direct dial)  |  LWerner@irell.com

---

**From:** Aelish Baig [mailto:AelishB@rgrdlaw.com]
**Sent:** Friday, May 27, 2011 9:54 AM
**To:** Werner, Lillie A.
**Subject:** RE: Allergan

Thanks, Lillie. I thought you said yesterday you'd be sending a stip over. Is that still the case?  Also, were there depositions taken as part of that 220 proceeding, and if so, are you agreeing to produce those with the docs?

---

**From:** Werner, Lillie A. [mailto:LWerner@irell.com]
**Sent:** Thursday, May 26, 2011 6:38 PM
**To:** Aelish Baig
**Cc:** 'Diulio, Kristopher P.'; Hueston, John
**Subject:** RE: Allergan

Dear Aelish,

This email is to confirm our conversation from this afternoon.  Yesterday you had asked whether the Delaware Chancery Court was going to order additional document productions in the Section 220 proceedings brought by UFCW Fund, and I informed you that today Vice Chancellor Laster ruled that the Section 220 action initiated by UFCW Fund was closed.   I also informed you that Allergan would not agree to let plaintiffs use the documents at issue in public filings, and would only produce the documents pursuant to a confidentiality agreement under which use of the documents would be restricted to under seal court filings.

Please let us know if you have any additional questions and how you would like to proceed.

Thank you and best regards,

LILLIE A. WERNER

1

Irell & Manella  LLP

1800 Avenue of the Stars Suite 900  |  Los Angeles, CA 90067

310.203.7912 (direct dial)  |  LWerner@irell.com

---

**From:** Aelish Baig [mailto:AelishB@rgrdlaw.com]
**Sent:** Tuesday, May 24, 2011 4:00 PM
**To:** Werner, Lillie A.
**Subject:** Allergan

Dear Lillie,

Further to our discussion of this afternoon, plaintiffs are open to defendants' offer to produce all documents subject to production in the § 220 proceeding, but would like to confirm the following:

1) This agreement would include all documents that have been, or may be in the future, ordered to be produced further to the § 220 proceeding.  In response to my question as to whether there are categories of documents which are still pending a ruling, you mentioned today that there is another discovery hearing this Thursday.  In light of the fact that there may be an additional order or orders forthcoming, we ask that all documents ordered to be produced by the Delaware court in the future also be produced to us without delay, and that the date for amending our complaint be extended to 30 days after you complete your production (which is consistent with your initial proposal to produce documents by May 27, 2011 and have our amended complaint be due June 27, 2011).

2) Nothing in your proposed confidentiality order will preclude plaintiffs from using the documents in a publicly filed amended complaint.

I think so long as we have a meeting of the minds on these two remaining issues, we will have a deal. Please advise.

Thanks,
Aelish

**Aelish Baig**
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Tel 415 288 4545 | Fax 415 288 4534

**Robbins Geller Rudman & Dowd LLP**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

ccmailg.irell.com made the following annotations
--------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

--------------------------------------------------------------------

# EXHIBIT 3

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7912
FACSIMILE (310) 556-5210
LWerner@irell.com

July 27, 2011

### VIA E-MAIL AND U.S. MAIL

Aelish Baig, Esq.
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Email: AelishB@rgrdlaw.com

Shane P. Sanders, Esq.
600 B Street, Suite 1900
San Diego, CA 92101
Email: SSanders@robbinsumeda.com

Kathleen A. Herkenhoff, Esq.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Email: kah@weiserlawfirm.com

Re:  *In re Allergan, Inc. Shareholder Derivative Action*
United States District Court, Southern District of California, Southern Division
Master File No. SACV-10-01352-DOC (MLGx)

Dear Counsel:

I have received Plaintiffs' previous correspondence and Ms. Herkenhoff's letter dated July 26, 2011, and I am disappointed that Plaintiffs refuse to honor the agreement embodied in the parties' June 3, 2011 stipulation. As you know, Plaintiffs approached Allergan shortly before their amended complaint was due, and requested that Allergan stipulate to extend Plaintiffs' deadline for filing an amended complaint and to produce a copy of the Section 220 books-and-records production and privilege log made to another shareholder group (the "220 Production"). Allergan agreed to Plaintiffs' request pursuant to Ms. Baig's explicit oral and written representations that Plaintiffs would accept the 220 Production as is and would waive their right to serve their own Section 220 demand. Plaintiffs now refuse to comply with this agreement.

Plaintiffs demand to meet and confer about their purported concerns concerning Allergan's production. Allergan does not believe that Plaintiffs have a bona fide concern about a "dispute … concerning compliance with the terms of this Stipulation." (June 3, 2011 Stipulation Regarding Allergan, Inc.'s Production of Confidential Books and Records and Briefing Schedule, Dkt. 77, at ¶ 18.) As a show of good faith, however, Allergan is willing to schedule a time to meet and confer with Plaintiffs about their concerns over the 220 Production and about Allergan's response to Plaintiffs' First Amended Complaint.

2469203

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Aelish Baig, Esq.
Shane P. Sanders, Esq.
Kathleen A. Herkenhoff, Esq.
July 27, 2011
Page 2


   Please let me know if and when you would all be available for a telephone call this Thursday, July 28, 2011.

       Sincerely,

       Lillie A. Werner

LAW
cc: John Hueston, Esq. (via e-mail only)

2469203