UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS - 6

CIVIL MINUTES - GENERAL

Case No. SACV 10-1352 DOC (MLGx)          Date: January 17, 2012

Title: IN RE ALLERGAN, INC. SHAREHOLDER DERIVATIVE LITIGATION

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT          NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTION TO DISMISS

       Before the Court is Nominal Defendant Allergan, Inc.'s ("Allergan") Motion to Dismiss Plaintiffs' Consolidated Complaint ("Nominal Defendant's Motion to Dismiss") (Docket 99) and the Directors' ("Director Defendants") Motion to Dismiss Plaintiff's Consolidated Complaint ("Directors' Motion to Dismiss") (Docket 126) (collectively, the "Motions to Dismiss"). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers, the Court GRANTS both Motions to Dismiss.

**I. BACKGROUND**

       The Court and the parties are familiar with the factual background of the case from the first Motion to Dismiss, which the Court granted on April 12, 2011 (Docket 70). For a more detailed recitation of the facts, refer to the Court's previous Order granting the first round of motions to dismiss (Docket 70) ("First MTD Order"). Generally, this is a shareholder derivative suit. Shareholder Plaintiffs ("Plaintiffs") bring this action on behalf of Allergan against the Director Defendants. First Amended Verified Consolidated Complaint ("FAC"), ¶ 1 (Docket 83). Plaintiffs assert violations of §§ 14(a) and 29(b) of the Securities Exchange Act of 1934, breach of fiduciary duty, corporate waste, unjust enrichment, and insider trading. *Id.* Generally, Plaintiffs seek damages and other relief based on the Director Defendants' alleged illegal promotion of Botox for off-label uses not approved by the FDA.

*Id.* The primary issue presented, as in the first round of motions to dismiss, is demand futility.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Id.* at 1968. In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.* Moreover, under a 12(b)(6) motion analysis, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri*, 901 F.2d at 699.

### B. Demand Futility Under Delaware Law

Under Fed. R. Civ. P. 23.1, a plaintiff seeking to initiate a derivative action is required to "plead with particularity either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort was made to demand action from the board." *Kanter v. Barella*, 489 F.3d 180, 176 (3d Cir. 2007). The pleading "must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by [Fed. R. Civ. P. 8]." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading. On the other hand, the pleader is not required to plead evidence. What the pleader must set forth are particularized factual statements that are essential to the claim." *Id.* A complaint that is full of "conclusory language . . . does not comply with these fundamental pleading mandates." *Id.*

"Rule 23.1 does not establish the circumstances under which demand would have been futile." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) (citing Fed. R. Civ. P. 23.1) (*abrogation recognized on other grounds by Simmonds v. Credit Suisse Securities (USA)*

*LLC*, 2011 WL 135693, at *11 (9th Cir. 2011)). To determine demand futility standards, courts look to the law of the state of incorporation. *Id*. at 990. In this case, Allergan is incorporated in the State of Delaware, CC ¶ 26; therefore, the Court applies Delaware law to determine whether Plaintiffs have adequately plead demand futility.

       The Delaware Supreme Court has held that demand on a board is futile if there is a substantial likelihood that a company's directors would face personal liability for the conduct complained of in the demand. *See Wood*, 953 A.2d at 144, n. 11 (stating that a "reasonable doubt that a majority of directors is incapable of considering demand should only be found where 'a substantial likelihood of personal liability exists.'") (quoting *Aronson*, 473 A.2d at 814; *Rales*, 634 A.2d at 936).

       Delaware law recognizes two tests that may be applied to determine whether a demand on a board would be futile due to the likelihood of personal liability on the part of the directors. The first test, established by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), applies when a plaintiff is challenging a "*decision* of the board of directors." *Id*. at 814 (emphasis added). The second test, established by the Delaware Supreme Court in *Rales v. Blasband,* 634 A.2d 927 (Del.1993), applies when the derivative action is based on a board's *inaction* or a violation of the board's oversight duties. *See Stone ex rel. AmSouth Bancorporation v. Ritter,* 911 A.2d 362, 367 (Del. 2006) ("The standards for determining demand futility *in the absence of a business decision* are set forth in *Rales v. Blasband.*") (internal quotations omitted); *see also In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 170 (D. Del. 2009) (stating "'where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties,' the trial court must apply the *Rales* test." (quoting *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008)). In *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), the Delaware Supreme Court held that demand futility under the *Rales* standard can be based on allegations of a board's inaction in the face of "red flags" suggesting that the company's internal controls are inadequate and that these inadequacies give rise to substantial risk of illegal activity occurring. *Intel*, 621 F. Supp. 2d at 174; *see also King v. Baldino*, 648 F. Supp. 2d 609, 623 (D. Del. 2009) *aff'd sub nom. King ex rel. Cephalon Inc. v. Baldino*, 09-3834, 2010 WL 5078008 (3d Cir. Dec. 14, 2010).

### III.    DISCUSSION

       Plaintiffs again argue that any demand on the Board would have been futile. Plaintiffs no longer advance a claim under *Caremark, see* Opposition, 25, such that only two potential theories of liability remain: (1) the Board's alleged failure to take action under *Rales*; and (2) the Director Defendants did not exercise valid business judgment in making an affirmative decision under *Aronson*. Plaintiffs, however, appear to advance the same theory under both tests: "The gravamen of the Complaint is that the Director Defendants consciously caused Allergan to engage in illegal off-label marketing activity for years. . ." Opposition, 15. Both *Aronson* and *Rales* ultimately ask whether the directors are incapable of making an impartial decision regarding litigation." *Rales,* 634 A.2d at 932. Plaintiffs' new allegations do not satisfy this common goal of either test.

Plaintiffs primarily rely on two distinct sets of actions that they allege are not entitled to the protections of business judgment: (1) the Board's approval of strategic plans and other decisions allegedly supporting off-label marketing and (2) the Board's failure to take sufficient action after receiving FDA letters. In the First MTD Order, this Court held that Plaintiffs failed to sufficiently plead facts suggesting the Board made a decision actually supporting off-label marketing. First MTD Order, 7. Rather, Plaintiffs actually pled the opposite, suggesting that Director Defendants enacted policies prohibiting the promotion of off-label uses of drugs. *Id.*

Plaintiffs have failed to allege any additional facts to warrant a different result under either the *Aronson* or *Rales* theory of liability. There is still no evidence of a *decision* by board members to promote the use of off-label marketing, nor are there any facts suggesting that the Directors would be incapable of making an impartial decision concerning litigation. The 1997-2001 Strategic Plan makes no mention of off-label marketing. Plaintiffs' interpretations of the Plan are, at best, a stretch of the imagination. At worst, they are misrepresentations. The Strategic Plan does not have a "number 1" "Top Corporate Priority," as asserted by Plaintiffs. FAC, ¶ 7. Rather, there is a Top Corporate Priorities section containing bullet points, the first of which does not even mention Botox. 1997-2001 Strategic Plan, AGN-UFCW 0003938. Given that the Plan specifically contemplated data collection and approval of new uses, *Id.* at AGN-UFCW 0004023, the fact that the Plan sought to maximize sales for new indications in the future is hardly suspect, as is the "expansion strategy" that Plaintiffs view as a smoking gun. FAC, ¶ 8.

Plaintiffs next argue that the Board's involvement in the "Headache Development" program was impermissible, and yet fail to connect such program to Botox or any prohibited off-label marketing. Opposition, 16. The 2003 presentation mentioned by Plaintiffs had absolutely nothing to do with marketing; rather, it was a clinical presentation regarding Botox's potential efficacy in treating migraines. Exh. W. Plaintiffs go on to allege that Director Defendants oversaw the "Cervical Dystonia/Headache Expansion Initiative" and reported on strong Botox sales in conjunction with CD/pain. Opposition, 17. Yet, CD was an approved FDA use at the time. Directors' Reply, 7. Finally, Plaintiffs' reference to one certain presentation by Dr. Schim impermissibly promoting Botox for off-label uses does not demonstrate any wrongdoing by the Board. Not only was the presentation approved prior to the presentation without the offending slides, but the Directors took appropriate remedial action after learning of the presentation. Directors' Motion, 12-13.

The FDA letters referenced in Plaintiffs' FAC are similarly unavailing. Although Plaintiffs remedied their failure to allege that Directors had read the letters, the content of the letters does not provide sufficient support for Plaintiffs' position. In its last Order, the Court held that Plaintiffs "fail to allege how these letters in any way implicate the illegal off-label marketing of Botox." First MTD Order, 5. Plaintiffs have failed to remedy this failure of the initial Complaint. The only additional letter references Dr. Schim's presentation. As discussed above, the Directors' response to this letter actually proves the opposite of Plaintiffs' point; the Directors were not aware of the problematic slides before the presentation and took appropriate remedial action after learning of Dr.

Schim's impermissible presentation. Directors' Motion, 12-13.

The present case is easily distinguishable from *In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795 (7th Cir. 2003). There, "the directors knew of the violations of law [and] took no steps in an effort to prevent or remedy the situation. . ." *Id.* at 809. That is a far cry from the present facts. Here, when the Directors found out about a violation of the law - in the case of Dr. Schim - they immediately took steps to remedy the situation. There is also no evidence that they supported or knew about violations of the law. This case is also distinguishable from *In re Pfizer Inc. Shareholder Derivative Litigation,* 722 F. Supp. 2d 453 (S.D.N.Y. 2010). There, a prior settlement document explicitly indicated that fraudulent off-label marketing was implemented with the knowledge and approval of senior management. *Id.* at 455-56. As a result of that settlement, Pfizer was forced to implement extremely stringent monitoring requirements, above and beyond that which would be required by a typical corporation. *Id.* at 456, 461. In short, there was a "rather blatant pattern of misconduct by Pfizer" that is missing here. *Id.* at 457.

The Director Defendants are thus disinterested under *Rales* because there is no evidence that they would be subject to a substantial likelihood of liability. *See Ryan v. Gifford,* 918 A.2d 341, 355 (Del. Ch. 2007). There is also no evidence that they have broken the law or acted in any way that would be an invalid exercise of business judgment. *See Aronson,* 473 A.2d at 814. Thus, although Plaintiffs conflate the two tests for demand futility, there is not sufficient evidence under either test that would establish demand futility.

### IV. DISPOSITION

For the aforementioned reasons, the Motions to Dismiss are GRANTED. Plaintiffs' FAC is dismissed WITH PREJUDICE.

The Clerk shall serve this minute order on all parties to the action.